# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

SIDDIQUE ABDULLAH HASAN,
  Fka Carlos Sanders
                                          :
                    Petitioner,                              Case No. 1:03-cv-288

                                          :
        -vs-                                                 District Judge Susan J. Dlott
                                                             Magistrate Judge Michael R. Merz

TODD ISHEE, Warden,
                                          :
                    Respondent.

---

## REPORT AND RECOMMENDATIONS ON THE MERITS;
## DECISION AND ORDER DENYING MOTION FOR RECONSIDERATION

---

On April 11, 1993, inmates at the Southern Ohio Correctional Facility in Lucasville, Ohio,

violently took control of one of the cell block complexes at that facility and held it for eleven days.

Petitioner Siddique Abdullah Hasan (fka Carlos Sanders)[1] petitions this Court for a writ of habeas

corpus, claiming his state court convictions and death sentence for the aggravated murder of

correctional officer Robert Vallandingham during the incident were obtained in violation of his

federal constitutional rights on the following thirty-five grounds:

---

[1]In the record, Hasan is referred to variously as "Hasan" and "Sanders."  For consistency and ease of
reading, and because Hasan's name has been legally changed from Carlos Sanders to Siddique Abdullah Hasan
(Appendix to Return of Writ, Vol. 3-B at 67), this Court will use Hasan's preferred name, "Hasan," throughout this
Report and Recommendations, and will change "Sanders" to "Hasan" when quoting the record without the
customary practice of enclosing the change in brackets.  Citation to opinions in Hasan's state court proceedings,
however, will be as they appear in the official reporters.

**First Ground for Relief**

Petitioner's right to effective assistance of counsel was violated when his trial counsel failed to conduct a voir dire to explore potential racial bias . . . thereby violating Petitioner's rights under the Sixth, Eighth and Fourteenth Amendments.

**Second Ground for Relief**

Trial counsel were ineffective for failing to request the trial court to cure juror exposure to religiously biased and racially charged comments during voir dire in violation of the Sixth, Eighth and Fourteenth Amendments.

**Third Ground for Relief**

Petitioner's venire was skewed in a racial fashion thereby depriving him of his rights to trial by an impartial jury, equal protection, and due process in violation of the Sixth and Fourteenth Amendments.

**Fourth Ground for Relief**

Petitioner's right to effective assistance of counsel was violated when his trial counsel abandoned their claim of grand jury bias, thereby violating Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments.

**Fifth Ground for Relief**

Trial counsel were ineffective when they failed to object to the trial court's failure to hold a <u>Remmer</u> hearing in response to juror exposure to extraneous influences, thereby depriving Petitioner of his rights to a fair trial and due process in violation of the Sixth and Fourteenth Amendments.

**Sixth Ground for Relief**

The trial court erroneously denied a defense request for a jury view in violation of the Sixth and Fourteenth Amendments.

**Seventh Ground for Relief**

Petitioner was deprived of effective assistance of counsel because trial counsel failed to request the removal of a sleeping juror thereby

violating Petitioner's rights under the Sixth, Eighth and Fourteenth Amendments.

**Eighth Ground for Relief**

Trial counsel were ineffective for failing to investigate and present witnesses which [sic] could have affirmatively confronted the state's case that Petitioner orchestrated the 1993 prison riot and ultimately maintained a leadership role throughout its course and ordered the killing of a guard in violation of the Sixth and Fourteenth Amendments.

**Ninth Ground for Relief**

Petitioner's attorney's [sic] were ineffective when they failed to investigate and cross[-]examines [sic] state's witnesses which would have dispelled the state's theory that Petitioner orchestrated the 1993 prison riot and ultimately maintained a leadership role throughout its course and ordered the killing of a guard in violation of the Sixth and Fourteenth Amendments.

**Tenth Ground for Relief**

The trial prosecutors suppressed exculpatory evidence by failing to disclose to trial counsel the change in testimony by numerous inmate witnesses in violation of the Fourteenth Amendment.

**Eleventh Ground for Relief**

Defense counsel were not provided relevant records needed to effectively cross-examine State's witnesses in violation of the Sixth and Fourteenth Amendments.

**Twelfth Ground for Relief**

The trial court erroneously denied Petitioner the right to expert assistance in denying a defense request for assistance in tape analysis in violation of the Sixth and Fourteenth Amendments.

**Thirteenth Ground for Relief**

Petitioner's right to effective assistance of counsel was violated when his trial counsel failed to properly subpoena and authenticate evidence, thereby violating Petitioner's rights under the Sixth, Eighth

and Fourteenth Amendments.

**Fourteenth Ground for Relief**

The trial court erroneously denied Petitioner the opportunity to utilize the tunnel tapes in violation of the Sixth and Fourteenth Amendments.

**Fifteenth Ground for Relief**

Trial counsel were ineffective when they failed to object to the admission of irrelevant and prejudicial evidence during Petitioner's trial which deprived him of due process, a fair trial, and a reliable sentence in violation of the Eighth and Fourteenth Amendments.

**Sixteenth Ground for Relief**

Trial counsel were ineffective when they failed to object to the admission of improper victim impact evidence before Petitioner's jury and failed to object to the trial court's improper consideration of victim opinion evidence in violation of Petitioner's rights as guaranteed by the Fourteenth Amendment.

**Seventeenth Ground for Relief**

Prosecutorial misconduct during Petitioner's culpability phase denied Petitioner his substantive and procedural due process rights to a fair trial and reliable sentence as guaranteed by the Eighth and Fourteenth Amendments.

**Eighteenth Ground for Relief**

Petitioner's right to effective assistance of counsel was violated when his trial counsel conceded guilt in front of the jury, thereby violating Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments.

**Nineteenth Ground for relief**

Appellate counsel were ineffective when they failed to allege as error that Petitioner was denied access to the grand jury testimony to [sic] his alleged co-defendants and alleged co-conspirators in violation of the Fourteenth Amendment.

**Twentieth Ground for Relief**

Petitioner's right to effective assistance of counsel was violated because trial counsel were not adequately prepared for his trial as a result of state interference with their ability to represent Petitioner in violation of the Sixth and Fourteenth Amendments.

**Twenty-first Ground for Relief**

Trial counsel were ineffective when they failed to object to the trial court's instructions that improperly deprived Petitioner of a jury finding on the essential element of purpose to kill, thereby denying Petitioner his rights to a jury trial and to due process as guaranteed by the Sixth and Fourteenth Amendments.

**Twenty-second Ground for Relief**

Trial counsel render ineffective assistance of counsel when they fail to object to jury instructions that reduced the state's burden of proof, excluded elements of the offense, directed a verdict on an element of the offense and improperly defined an element of the offense in violation of the Sixth, Eighth and Fourteenth Amendments.

**Twenty-third Ground for Relief**

Trial counsel were ineffective when they failed to object to an instruction allowing the jury to consider an affirmative defense upon which trial counsel presented no evidence in violation of Petitioner's rights as guaranteed by the Sixth and Fourteenth Amendments.

**Twenty-fourth Ground for Relief**

Petitioner is denied the effective assistance of counsel when counsel failed to object to trial court instruction indicating that two essential elements have been established and suggests that robbery is merely stealing in violation of the Sixth and Fourteenth Amendments.

**Twenty-fifth Ground for Relief**

Trial counsel are ineffective when they fail to object to a reasonable doubt instruction that lowers the state's burden of proof in violation of the Sixth and Fourteenth Amendments.

**Twenty-sixth Ground for Relief**

The trial court precluded Petitioner from presenting relevant mitigation evidence, thus depriving him of his rights to a fair sentencing proceeding, individualized sentencing, and due process guaranteed by the Eighth and Fourteenth Amendments.

**Twenty-seventh Ground for Relief**

The trial court failed to consider and give effect to mitigation, considered non-statutory aggravating factors, depriving Petitioner of his right to individualized sentencing in violation of the Eight[h] and Fourteenth Amendments.

**Twenty-eighth Ground for Relief**

Petitioner was denied the effective assistance of counsel when his trial attorneys failed to object to instructions which improperly defined mitigation, that failed to inform the jury to consider history, character and background, and improperly required unanimity on the existence of aggravating circumstances in violation of the Sixth, Eighth and Fourteenth Amendments.

**Twenty-ninth Ground for Relief**

Trial counsel were ineffective when they failed to object to a jury instruction that required jury unanimity prior to the consideration of any life sentence thereby violating Petitioner's rights as guaranteed by the Eighth and Fourteenth Amendments.

**Thirtieth Ground for Relief**

The trial court's instructions improperly diminished the sentencing jury's responsibility for its verdict in violation of the Eighth and Fourteenth Amendments.

**Thirty-first Ground for Relief**

Trial counsel were ineffective for failing to investigate and present witnesses at the mitigation phase in violation of the Sixth and Fourteenth Amendments.

**Thirty-second Ground for Relief**

Trial counsel failed to object to the trial court's improper consideration of victim impact opinion testimony in violation of the

Eighth and Fourteenth [Amendments].

**Thirty-third Ground for Relief**

Prosecutorial misconduct during Petitioner's sentencing phase denied Petitioner his substantive and procedural due process rights to a fair trial and reliable sentence as guaranteed by the Eighth and Fourteenth Amendments.

**Thirty-fourth Ground for Relief**

Petitioner was denied an adequate corrective process in violation of the Eighth and Fourteenth Amendments.

**Thirty-fifth Ground for Relief**

The cumulative effect of error in [P]etitioner's case deprived [P]etitioner of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth [A]mendments.

(Petition, Doc. No. 16.)  Respondent has filed her Return of Writ (Doc. No. 17), Hasan has filed his

Traverse (Doc. No. 22), and the matter is now ripe for decision.

## FACTS

The facts leading to Hasan's convictions were summarized by the Ohio Supreme Court as

follows:

> In 1993, the Department of Rehabilitation and Correction ("DRC") ordered that all prison inmates be tested for tuberculosis.  Hasan was the acknowledged imam (spiritual leader) of a group of Muslims at [the Southern Ohio Correctional Facility ("SOCF" [or "Lucasville"]) at Lucasville, Ohio].  He protested DRC's order, claiming that the testing method violated Islamic law.  On April 5, 1993, Arthur Tate, Jr., SOCF's warden, met with Hasan.  When Tate explained that the test was to be administered to all inmates, Hasan replied:  [sic] "You do what you have to do and we'll do what we have to do."  Shortly thereafter, the warden informed Hasan in writing that all inmates would be tested.
>
> On April 11, 1993, Muslim inmates staged an uprising and took control of unit L-6 of cellblock "L" ("L-Block") of the prison.  Hasan

-7-

planned and led the takeover.

Several guards, including [correctional officer Robert] Vallandingham, were taken hostage. Vallandingham had locked himself into a restroom, but inmates battered down the door and captured him. Hasan handcuffed Vallandingham and led him away. Other hostages included Officers Clark, Dotson, Hensley, and Nagel. Hasan ordered that all hostages be taken to [u]nit L-6 and that the captured guards be protected for the time being.

Three factions emerged as the dominant forces in L-Block: the Muslims, led by Hasan; the Aryan Brotherhood, a white racist group, led by Jason Robb and George Skatzes; and the Black Gangster Disciples, a prison gang, led by Anthony Lavelle. Each faction controlled its own section of L-Block; the Muslims controlled unit L-6, and also the hallways.

The rioters held L-Block until they surrendered on April 21. DRC representatives opened negotiations with the inmates, who periodically threatened to kill hostages if their demands were not met.

On Wednesday, April 14, there was a meeting of inmate leaders, including Lavelle, Robb, and Hasan. The group discussed killing a guard and, without dissent, decided to do it. But after the meeting, Lavelle told Hasan that he did not think that killing a guard would accomplish anything. Hasan agreed that they should "hold off" on killing a guard that day.

Later that day, news media quoted a DRC employee's statement suggesting that the inmates were bluffing. This infuriated the inmates. Another leadership meeting followed; Hasan, Robb, Skatzes, and Lavelle were there. Also present were inmate Roger Snodgrass, inmate David Lomache, who helped care for injured guards, and Muslim inmate Reginald Williams. (Lavelle, Snodgrass, Lomache, and Williams later turned state's evidence and recounted the discussion in trial testimony.) To prove that they were serious, the group decided to issue an ultimatum and, if the authorities failed to comply, to kill a guard.

According to Snodgrass and Williams, Hasan and Robb were "the decision makers" and led this meeting. While accounts differed on whether a formal vote was taken, the testimony indicated that Hasan supported killing a guard. According to Lavelle, "[W]e all agreed that a person from each group * * * would participate" in the killing,

and Hasan pledged that his security officers would select a Muslim inmate to take part.

On the night of April 14, around 9:00 or 10:00 p.m., inmate Miles Hogan overheard Skatzes and inmate Stanley Cummings tell Hasan "about somebody that was supposed to kill a correctional officer [and] had backed out of it." Hasan said he was "sick of the m[otherfucker]s saying they was going to do something and then back[ing] out of it at the last minute." Cummings said he "would make sure this got done," and Hasan replied: [sic] "Well somebody'd better do it."

Another meeting was held on Thursday morning, April 15. Reginald Williams did not attend this meeting, but he was nearby when it broke up. He heard Muslim inmate James . . . Were proclaim loudly that "he would take care of it." Hasan told Were to calm down.

That morning, inmate Kenneth Law was in L-6 when he saw inmates Alvin Jones and Darnell Alexander escort a bound, blindfolded Vallandingham to the L-6 shower area. Then Law heard Hasan tell Were to "take care of his business" if Hasan "didn't get back with [Were] in half an hour." Hasan then left.

Were, Jones, and Alexander proceeded to the shower area where Vallandingham was being held. Kenneth Law followed them. When they arrived, Were told Jones and Alexander to "take care of your business." As Were and Law looked on, Jones and Alexander strangled Vallandingham. His body was later dumped outside.

After the murder, another meeting was held. Someone reported a rumor that Vallandingham was not dead. Were said that "if it is not done right, you don't have anybody to blame but [Were]." According to Lavelle, Were addressed this remark specifically to Hasan.

Later, Kenneth Law overheard an inmate ask Hasan: [sic] "Why was the guard killed?" Hasan said: [sic] "It was one or many."

. . .

On April 21, 1993, the inmates surrendered, bringing the riot to an end.

*State v. Sanders*, 92 Ohio St. 3d 245, 245-247, 750 N.E.2d 90 (2001). While Hasan was acquitted

on other charges, he was convicted of one count of robbery, two counts of felonious assault, one count of attempted murder, two counts of kidnapping, and the aggravated murder of Vallandingham with three attendant capital specifications.  (Trial Tr., Vol. 25 at 5271-73; Appendix to Return of Writ ("Appendix"), Vol. 1-B at 323-38.)  At the conclusion of the mitigation phase of Hasan's trial, the jury recommended the penalty of death for the aggravated murder of Vallandingham, and the trial court subsequently adopted its recommendation.  (Trial Tr., Vol. 27 at 5595, 5615; Appendix, Vol. 1-B at 339, 341-44.)

## PROCEDURAL HISTORY

### Direct Appeal

On April 22, 1997, Hasan filed his appellate brief in the Court of Appeals for Hamilton County, Ohio, advancing thirty assignments of error.[2]  (Appendix, Vol. 2-A at 74-161.)  Hasan's motion to strike the brief and appoint new counsel was denied by the court of appeals.  (Appendix, Vol. 2-A at 176-84.)  A supplemental brief was filed by Hasan's counsel supplementing his fifth and eighth assignments of error and adding twelve new assignments of error on September 2, 1997, three days past the deadline set by the court of appeals.  (Appendix, Vol. 2-A at 185, 197-238.)  Moreover, Hasan was not provided with a copy of his trial transcript until September 18, 1997.  (Appendix, Vol. 2-A at 243, 251-53.)  None of Hasan's claims succeeded, and the court of appeals affirmed the trial court on May 1, 1998.  (Appendix, Vol. 2-B at 251-74.)

On September 15, 1998, Hasan filed his appellate brief in the Ohio Supreme Court claiming

---

[2]The assignments of error are numbered one through thirty-one, but there is no twenty-seventh assignment of error.

error in forty-four propositions of law.[3]  (Appendix, Vol. 3-A at 39-169.)  On January 5, 2000, lead

counsel in Hasan's case, Chuck Stidham, was suspended from the practice of law for various ethical

breaches committed in cases in which he was retained between 1994 and 1998, and for

misrepresenting the nature and name of his law firm in violation of Ohio Disciplinary Rules 2-

102(B) and (C).  *Cincinnati Bar Ass'n v. Stidham*, 87 Ohio St. 3d 455, 721 N.E.2d 977 (2000).  The

Ohio Public Defender's Office was appointed to represent Hasan following Stidham's removal from

the case, and a new briefing schedule was set.  (Appendix, Vol. 3-B at 32.)

On July 21, 2000, Hasan filed a superseding appellate brief advancing thirty-four

propositions of law.  (Appendix, Vol. 3-C at 1-354.)  The Supreme Court of Ohio rejected Hasan's

claims of error, and affirmed the court of appeals on July 18, 2001.  *State v. Sanders*, 92 Ohio St.

3d 245, 750 N.E.2d 90 (2001).  A subsequent motion to reconsider was similarly rejected.

(Appendix, Vol. 3-E at 352-381.)  On April 29, 2002, the United States Supreme Court denied

Hasan's petition for a writ of certiorari.  (Appendix, Vol. 3-E at 396.)

**Post-conviction**

In the meantime, Hasan was also pursuing post-conviction relief in the state courts, filing his

first petition for post-conviction relief in the Hamilton County Court of Common Pleas on July 23,

1997.  (Appendix, Vol. 4 at 127-55.)  The trial court denied each of Hasan's thirty-nine claims for

relief and granted the State's motion to dismiss the petition on February 3, 1998.  (Appendix, Vol.

4 at 199-214.)  Hasan took an appeal to the Court of Appeals for Hamilton County, advancing

twenty-five assignments of error.  (Appendix, Vol. 5 at 25-100; 122-85.)  The court of appeals

affirmed the dismissal, *State v. Sanders*, No. C-980154, 1999 WL 162146 (Ohio App. 1st Dist. Mar.

---

[3]Interestingly, a twenty-seventh proposition of law is missing from the brief, just as the twenty-seventh
assignment of error was absent from Hasan's brief in the court of appeals.

26, 1999), and no further appeal was taken in the Ohio Supreme Court.

A second petition for post-conviction relief was filed by Hasan on May 1, 2001, in which he alleged forty-two claims of error. (Appendix, Vol. 6-A at 38-162.) On January 15, 2002, the trial court dismissed the second petition, concluding that Hasan had failed to satisfy the mandatory requirements of Ohio Rev. Code §§ 2953.23(A)(1) and (2). (Appendix, Vol. 6-C at 309.) Hasan's appeal (Appendix, Vol. 7 at 11-51) was denied in the court of appeals, *State v. Sanders*, No. C-020077, 2002 WL 31127540 (Ohio Ct. App. 1st Dist. Sept. 27, 2002), and the Ohio Supreme Court declined review, *State v. Sanders*, 98 Ohio St. 3d 1423, 782 N.E.2d 78 (2003).

**Application to Reopen Direct Appeal**

Concurrent with his post-conviction proceedings, Hasan also pursued an Ohio R. App. Proc. 26(B) application to reopen his direct appeal on account of his appellate counsels' ineffectiveness, allegedly illustrated by their failure to raise as error twenty-four assignments of error. (Appendix, Vol. 9 at 8-27.) The court of appeals denied Hasan's application, and the Ohio Supreme Court affirmed and denied reconsideration. (Appendix, Vol. 9 at 154-59, 165, 166.)

**Federal Habeas Corpus**

Hasan filed his petition for a writ of habeas corpus asserting the thirty-five grounds for relief quoted above in this Court on April 22, 2003. (Doc. No. 16.) The Warden has responded with the return of writ (Doc. No. 17), and Hasan has filed his traverse (Doc. No. 22). The matter is now ripe for decision.

## ANALYSIS

Since Hasan filed his petition for a writ of habeas corpus well after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter "AEDPA"),

the amendments to 28 U.S.C. § 2254 embodied in that Act are applicable to his petition.  (*See* Petition, Doc. No. 16.)  The standard of review under 28 U.S.C. § 2254 as amended by the AEDPA is as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A factual finding by a state court is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e).

A state court's decision is contrary to the Supreme Court's clearly established precedent if (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal rule [from Supreme Court cases] but unreasonably applies it to the facts of the particular state prisoner's case."  *Williams*, 529 U.S. at 407-08.  For a federal court to find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous; it must have been "objectively unreasonable."  *Wiggins v.*

-13-

*Smith*, 539 U.S. 510, 511 (2003), *quoting Williams*, 529 U.S. at 409.

In *Jamison v. Collins*, 100 F. Supp. 2d 647 (2000), this Court noted that:

> Principles of comity necessary to a federal system narrow a federal court's review of a petition for a writ of habeas corpus brought by a state prisoner. *See Coleman v. Thompson*, 501 U.S. 722, 731-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court explains that "[u]nder our federal system, the federal and the state 'courts [are] equally bound to guard and protect rights secured by the [C]onstitution.'" *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (quoting *Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886)); *see Coleman*, 501 U.S. at 731, 111 S.Ct. 2546 (quoting same). Thus, to ensure the states an opportunity to protect these rights, the doctrine of procedural default requires that the state courts retain "the first opportunity to address and correct alleged violations of state prisoner's [sic] rights." *Coleman*, 501 U.S. at 731, 111 S.Ct. 2546. The doctrine of procedural default provides that, if a state court previously dismisses a state prisoner's federal claim on the grounds that the prisoner failed to comply with a state procedural rule, then a federal court ordinarily cannot consider the merits of that federal claim. *Id*. at 729-730, 111 S.Ct. 2546.
>
> This procedural default doctrine bars federal habeas review of a state court ruling only if the following requirements have been satisfied:
>
> (1)     the petitioner actually violated an applicable state procedural rule;
>
> (2)     the procedural violation provides an "adequate and independent state ground" for denying the petitioner's federal constitutional claim; and
>
> (3)     the state court actually enforced the procedural violation; that is, the highest state court to rule on the claim clearly and unambiguously relied upon the procedural violation as the reason for rejecting the claim.
>
> *See generally Coleman*, 501 U.S. at 750, 111 S.Ct. 2546. However, the petitioner can excuse the procedural default by demonstrating either:
>
> (a)     that there was "cause" for the procedural default and actual prejudice by the alleged constitutional error; or

> (b)      that the case falls within the category of cases considered [a] "fundamental miscarriage of justice."
>
> See *id*. . . .; *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *Harris v. Reed*, 489 U.S. 255, 260-62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).
>
> For the cause and prejudice standard, the petitioner must provide a "substantial" reason that is "external" to the petitioner as the cause for the procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). In addition, the petitioner must show that the alleged trial errors "not merely . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed. 2d 816 (1982).
>
> To demonstrate a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray*, 477 U.S. at 496, 106 S.Ct. 2639. This exception applies only in "extraordinary cases." *Id*. The standard requires a petitioner to show that he is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To establish a probability of innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*.

*Jamison*, 100 F.Supp.2d at 669-70. These principles govern the Court's discussion of Hasan's

asserted grounds for relief.

**First Ground for Relief**

In his first ground for relief, Hasan contends his trial counsel were ineffective for failing to

question prospective jurors about their thoughts on Hasan's race, African-American, and his

religion, Muslim. (Petition, Doc. No. 16 at 25-26.) Respondent acknowledges the claim is

preserved for habeas corpus review, but argues it is meritless. (Return of Writ, Doc. No. 17 at 99-

101.)

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984), which states as follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainright*, 477 U.S. 168, 184 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177, 1180-81 (6th Cir. 1987).  The merits of Hasan's first ground for relief will be considered with these principles in mind.

As noted by Respondent, Hasan raised the instant claim as a sub-claim to his sixth proposition of law on direct appeal to the Ohio Supreme Court.  (Appendix, Vol. 3-C at 118-19.) Because that court addressed the merits of Hasan's claim, albeit in abbreviated fashion, that Hasan waived the claim by not raising it in the court of appeals is irrelevant for procedural default purposes.  The claim is preserved for habeas review via the Ohio Supreme Court's consideration of its merits.  *State v. Sanders*, 92 Ohio St. 3d 245, 274, 750 N.E.2d 90 (2001).

In addressing Hasan's claim, the state supreme court stated that trial counsel were in the best position to determine whether *voir dire* on racial bias was necessary.  *Id*.  Hasan argues that the Ohio Supreme Court's resolution of the issue was contrary to both *Strickland*, *supra*, and to *Turner v. Murray*, 476 U.S. 28 (1986).  In *Turner*, the United States Supreme Court held as follows:

> [A] capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias.  The rule we propose is minimally intrusive; as in other cases involving "special circumstances," the trial judge retains discretion as to the form and number of questions on the subject, including the decision whether to question the venire individually or collectively.  See *Ham v. South Carolina*, 409 U.S. [524,] 527.  Also, a defendant cannot complain of a judge's failure to question the venire on racial prejudice unless the defendant has specifically requested such an inquiry.

*Turner*, 476 U.S. at 36-37 (parallel citations omitted).  The Seventh Circuit Court of Appeals has had an opportunity to consider a *Turner* claim in the context of federal habeas corpus.  In *Lear v. Cowan*, 220 F.3d 825 (7th Cir. 2000), the court reasoned that:

> Lear also argues that his trial lawyer rendered ineffective assistance

to him by failing to take advantage of *Turner v. Murray*, 476 U.S. 28, 36-37, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), which holds that "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." . . . We must ask whether this omission brought the lawyer's representation of Lear below minimum professional standards, and if so whether it is likely that the jury would not have imposed the death penalty. The Supreme Court made clear in *Turner* that the lawyer's failure to have the jurors informed of the victim's race and questioned about their feelings about interracial crime is not unprofessional, subpar representation per se. *Id.* at 37, 106 S.Ct. 1683. Indeed all the Court really held was that if the defense wants to quiz jurors on their reaction to the interracial character of the defendant's crime, the judge must permit this. Obviously there are tactical reasons why a lawyer would not want to direct the jurors' attention to the interracial character of the crime, and the Court recognized this. *Id.* Lear's lawyer testified that he thought he had dealt with the issue adequately by asking general questions about bias without focusing on race. Asking general questions about bias may have been a better method of eliciting reactions to the interracial character of the crime than playing up the interracial issue, especially since there is no suggestion that the crime had a racial *motive*. We are given no reason to doubt that the lawyer made the best tactical choice available to him in the tough circumstances that confronted him: a brutal murder and no real defense. . . . There is, in short, no reason to think counsel was ineffective. In any event no harm has been shown; it is exceedingly unlikely that directing the venire's attention to the interracial character of Lear's conduct would either have disposed the jury that was selected to lenity or have altered the composition of the jury in a direction favorable to him.

*Lear*, 220 F.3d at 829.

The Seventh Circuit correctly stated that the Supreme Court's holding that a capital defendant is entitled to question the venire about racial bias once he has requested such questioning does not necessarily mean that an attorney who fails to request to do so has provided ineffective assistance. *Id.* There may be valid reasons why an attorney might decide that drawing attention to race in a case involving interracial violence might be ill advised, as the Seventh Circuit noted. In

Hasan's case, there may have been a sound tactical reason not to accentuate the fact that Hasan is black, and his victim, Vallandingham, was white.

Hasan provides little proof that the Ohio Supreme Court's rejection of his claim was contrary to or an unreasonable application of *Turner*, *supra*, and *Strickland*, *supra*.  In a memorandum filed subsequent to the deposition of his trial counsel Timothy Smith, Hasan notes that trial counsel acknowledged that race was an issue in Hasan's case, and that there was no tactical reason to avoid the racial issue during *voir dire* of the prospective jurors.  (Doc. No. 60 at 2; Doc. No. 58, Attachment 2 at 38, 108 .)  Even if taken as true, however, Hasan has presented no evidence of prejudice flowing from counsels' incompetence as required by *Strickland*.  466 U.S. at 694.

In the state court, Hasan's attempt to show prejudice consisted of his contention that since he is black and a Muslim, and since there is a "common misconception among the general public . . . that all sects of the Muslim religion to which African[-]Americans belong are racist" (a proposition for which he cites no authority), his counsels' failure to question the prospective jurors about their attitudes toward race deprived him of a fair trial.  (Appendix, Vol. 3-C at 119.)  In these habeas proceedings, Hasan suggests that the knowledge that "several white guards were supposedly at the mercy of black inmates" could increase the "potential for racial stereotypes and prejudices to operate in an individual juror's interpretation of the evidence," or that a juror "might be predisposed to the prosecution's story."  (Traverse, Doc. No. 22 at 13-14.)  Such equivocations fall short of the proof necessary to demonstrate the sort of prejudice from trial counsels' alleged ineffectiveness required by *Strickland*.  Hasan offers no evidence that any of the jurors in his case harbored any latent, or patent for that matter, racial prejudices, and his suppositions and conclusion that his jury was "potentially prejudiced" are not enough to overcome the dual requirements of *Strickland* and

28 U.S.C. § 2254(d)(1).

Even assuming Hasan's trial counsels' performance fell below the minimum standard for effective representation, he has not shown either here or in the state court proceedings that but for counsels' unprofessional error, there is a reasonable probability that the result of his trial would have been different. *Strickland*, 466 U.S. at 694. Thus, he has failed to demonstrate that the state court's decision rejecting Hasan's claim was contrary to or an unreasonable application of *Strickland*. Consequently, Hasan's first ground for relief should be denied.

**Second Ground for Relief**

In his second ground for relief, Hasan contends his trial counsel were ineffective for failing to request a curative instruction after the following exchange in *voir dire* between the prosecutor, prospective juror Martin Robin ("PJ Robin"), and the trial judge:

> Prosecutor: Mr. Robin, in the time that you filled out your questionnaire, that was a week ago, you've had some time to think about it. Is there anything that maybe you would like to add to or supplement your questionnaire, maybe there wasn't a line for it, maybe it was something that we hadn't touched upon or asked you, something that you haven't thought of, especially over the last few days?

> PJ Robin: Yes, there is something that I think is relevant. The way that the defendant is dressed and his name reminds me of Louis Farakan [sic], and to me that represents black separatism. And I've read some of their literature and it is – they hate America, they hate white people from this literature, and I have trouble seeing as how I could give this defendant a fair shake after what I have read. I didn't realize that, of course, until I saw him a few days ago.

> . . .

| | |
|---|---|
| Prosecutor: | You understand there are various sects of the Muslim religion, is that correct? |
| PJ Robin: | I don't know that much about it.  But, yes, I know that much. |
| Prosecutor: | And not all carry the beliefs that you have just described? |
| PJ Robin: | I don't know.  That's my problem. |
| Prosecutor: | Okay.  You understand that beliefs a person holds, a person's religious beliefs or philosophical beliefs, may or may not have anything to do with the crime a person is charged with?  It may be completely irrelevant to whether he is guilty of a crime with which he's charged.  Do you agree with that? |
| PJ Robin: | I agree that that is possible. |
| Prosecutor: | Okay.  That being the case, can you put that out of your mind as you sit and listen and become a witness [sic] in this case? |
| PJ Robin: | That's what I am not sure of. |
| Prosecutor: | Okay.  Well, can you decide this case on what the witnesses say? |
| PJ Robin: | I can try, but I am telling you that I feel some prejudice in the matter. |
| Court: | Mr. Robin, may I ask you a question?  You mentioned Louis Farakan [sic] and the Nation of Islam.  Do you have more than a general feeling about Farakan [sic] and the Nation of Islam rather than just a philosophical feeling about him?  There has been a lot of anti-Jewish remarks by Louis Farakan [sic].  May I ask you if you're Jewish? |
| PJ Robin: | I was born Jewish, yes. |
| Court: | Okay.  Now does that influence you very strongly about the Nation of Islam and Farakan [sic]?  Because |

|  | he has made very pointed statements about them? |
|---|---|
| PJ Robin: | It does influence me, but what really does is someone from work brought back a pamphlet handed out at the Million Man March and – |
| Court: | Okay. I am going to excuse you, Mr. Robin. Thank you very much for being very frank with us because it would cloud your perception of this trial. I think from what you have told me, you seem to know more about Farakan [sic] and the Nation of Islam than most of these people do. So I am going to excuse you . . . . |

(Trial Tr. at 337-41.) Defense counsel later argued that Robin's statements were highly prejudicial as they were uttered in the presence of the other prospective jurors, and requested that the entire panel be dismissed. (Trial Tr. at 375.) The court noted that the motion was part of the record and overruled the defense request. *Id*. Four of the individuals who eventually served on Hasan's jury were present when Robin made his comments.

Hasan claims that the effect of Robin's comments were exacerbated rather than ameliorated by the judge's response. (Petition, Doc. No. 16 at 28.) He argues that his trial counsel should have pursued the matter further by requesting inquiry into the impact, if any, Robin's comments may have had on the prospective jurors' abilities to be fair and impartial, or by requesting a curative instruction. (Petition, Doc. No. 16 at 28-29.) In not doing so, he continues, his attorneys' performance fell below the minimum standards of effective representation. *Id*. at 29.

As Respondent correctly notes, the Ohio Supreme Court chose to address Hasan's claim on direct appeal in spite of Hasan's failure to raise it in the court of appeals. (Return of Writ, Doc. No. 17 at 101); *State v. Sanders*, 92 Ohio St. 3d 245, 274, 750 N.E.2d 90 (2001). As with the first ground for relief, the state supreme court simply stated that trial counsel were in the best position

-22-

to determine whether *voir dire* of the prospective jurors was necessary.  *Sanders*, 92 Ohio St. 3d at

274.  Brief though it be, the state court's merits determination is sufficient to preserve the claim for

habeas corpus review.

Hasan argues that in *Turner v. Murray*, 476 U.S. 28 (1986), the Supreme Court

acknowledged that race is always an issue in an interracial crime (Traverse, Doc. No. 22 at 14), but

he provides no pinpoint citation.  His claim that "the Supreme Court has required in a capital case

an inquiry into racial bias when the defendant is black and the decedent white," *id*. at 18, is a

misstatement of the holding of *Turner*, where the court held instead that such questioning was

required only if requested by the defendant.  *Turner*, 476 U.S. at 37.  On the contrary, the *Turner*

Court specifically stated that it was not retreating from its holding in *Ristaino v. Ross*, 424 U.S. 589

(1976), that "[t]he fact of interracial violence alone is not a special circumstance entitling the

defendant to have prospective jurors questioned about racial prejudice."  *Turner*, 476 U.S. at 35 n.

7, *citing Ristaino*, 424 U.S. at 597.  In addition, and as stated above under the discussion of Hasan's

first ground for relief, the United States Supreme Court's recognition of a capital defendant's right

to *voir dire* prospective jurors on racial bias, when requested, *Turner*, *supra*, does not lead

ineluctably to the conclusion that an attorney who fails to request such *voir dire* is ineffective.  *Lear*

*v. Cowan*, 220 F.3d 825, 829 (7th Cir. 2000).  Consequently, the Ohio Supreme Court's decision

respecting the instant claim cannot be said to be contrary to or an unreasonable application of federal

law as set forth by the United States Supreme Court.  *See* 28 U.S.C. § 2254(d)(1).

Even if that were not so, Hasan has not demonstrated his trial counsels' ineffectiveness.  He

contends that since trial counsel Smith admitted in his deposition that race was an issue in Hasan's

case, and that there was no tactical reason for not inquiring into any effect Robin's statements may

have had on the prospective jurors or in failing to request a curative instruction, the first prong of the *Strickland* test is satisfied. (Petitioner's Memorandum Regarding the Deposition of Timothy A. Smith, Esq. ("Memorandum"), Doc. No. 60 at 2-3.) Assuming without holding that that is so, however, prejudice from the alleged error has not been demonstrated. Hasan offers no evidence whatsoever to show any juror was influenced by Robin's comments, and instead contends that Robin's statements themselves satisfy the prejudice prong of *Strickland*. (Doc. No. 60 at 3.) Since Robin was excused, he did not serve on Hasan's jury. Absent evidence establishing that Robin's remarks influenced one or more of the jurors who actually served, any claim of prejudice is merely conjecture. Furthermore, much of Hasan's argument involves the religious component of Robin's comments, the prosecutor's allegedly biased remarks toward Hasan's religion not his race, and the trial court's supposed endorsement of Robin's expressed views on Islam in its questioning of Robin prior to his excuse from the venire.[4] (Traverse, Doc. No. 22 at 19-21.) Hasan argues that there was a substantial probability that Robin's comments prejudiced the jurors who heard them. *Id*. at 20. The Court disagrees. Three of the people who eventually served on Hasan's jury had already stated they had "no problem" with the Islamic religion prior to Robin's statements. (Trial Tr. at 98, 129, 135.) Hasan contends that Robin's statements should negate the jurors' expressed impartiality toward Islam (Traverse, Doc. No. 22 at 20), but offers no reason to believe that either juror would have changed their opinion of Islam upon hearing a complete stranger's view of Louis Farrakhan, especially when that person was immediately dismissed from the panel, as Robin was. The fourth juror who heard Robin's comments stated in his *voir dire* that he would, to the best of his ability, see that both sides received a fair trial, and that he was unable to think of any reason why he would

---

[4]The cumulation of these arguments will be addressed in Hasan's thirty-fifth ground for relief, *infra*. Here, only Robin's comments and their effect, if any, on the jurors is at issue.

-24-

not be an appropriate juror in Hasan's case.[5]  (Trial Tr. at 85-6.)  There is no suggestion in the record that any of the four jurors were anything but honest and truthful in their answers, and no evidence whatsoever that any of them were swayed by Robin's comments into a bias against Islam or Hasan himself.

For the foregoing reasons, Hasan's second ground for relief should be denied.


**Third Ground for Relief**

In his third ground for relief, Hasan claims he was deprived of his rights to a trial by an impartial jury, equal protection, and due process by the way in which the venire was selected for his trial.  (Petition, Doc. No. 16 at 29.)  He argues that the faulty method skewed the venire so that it was unlikely that any African-Americans would be seated as jurors.  *Id*.  Respondent does not advance a procedural default defense, and instead recites the Ohio Supreme Court's discussion of the issue then simply declares the state court's decision is not contrary to or an unreasonable application of federal law as articulated by the United States Supreme Court.  (Return of Writ, Doc. No. 17 at 145-47.)  Curiously, Hasan argues only for discovery in his traverse under his third ground for relief, and explicitly states he does not seek a decision on the merits of his ineffective assistance of counsel claim.  (Doc. No. 22 at 21-22.)

First, a traverse not the proper vehicle for requesting discovery.  *See*  Rules Governing Section 2254 Cases ("Habeas Rules") 5 and 6.  Second, Hasan's third ground for relief is not couched as an ineffective assistance of counsel claim, but rather as an independent claim of racial discrimination in the method used to order his venire.  (Petition, Doc. No. 16 at 29.)  The specific

---

[5]It should be noted that Hasan was dressed in traditional Islamic attire throughout *voir dire*.

discovery request Hasan included in his traverse was also raised in a simultaneously filed motion for discovery (Doc. No. 21) and was denied by this Court (Doc. No. 37 at 14-15), so no further consideration of it is required.

The crux of Hasan's claim is that "nearly all of the prospective African-American [sic] jurors were in the last one-third of the panel making their service unlikely," and that such a phenomenon defies statistical probability absent intentional discrimination. (Petition, Doc. No. 16 at 29, 31.) The order of the venirepersons corresponded to the order in which the individuals returned their completed jury questionnaires. (Trial Tr. at 68, 1078, 1082, 1091.) Some of the prospective jurors failed to complete their questionnaires and were asked to do so, which resulted in their being placed farther back in the venire. *Id*. at 1082. The alleged discrimination was accomplished by returning the questionnaires to African-Americans so as to result in their placement near the end of the venire, according to Hasan. (Petition, Doc. No. 16 at 33-35.) He concedes, however, that there is no evidence of the race of those individuals who were given their questionnaires back to complete, nor is there any evidence of how many questionnaires were returned for completion. (Petition, Doc. No. 16 at 34.) Hasan's claim is consequently reduced to conjecture and supposition.

Accordingly, the third ground for relief should be denied.


**Fourth Ground for Relief**

In his fourth ground for relief, Hasan contends his trial counsel were ineffective when they abandoned a claim of grand jury bias. (Petition, Doc. No. 16 at 35-36.) Respondent acknowledges the claim is preserved for habeas corpus review, but argues it is meritless. (Return of Writ, Doc. No. 17 at 104-5.)

Hasan's claim is predicated on the appearance of four grand jury pool members' signatures on a petition supporting a lockdown of the Lucasville prison and death sentences in prison riot cases. (Petition, Doc. No. 16 at 36.)  Initially, trial counsel requested and were granted a hearing on the matter in the trial court. *Id*.  Apparently, however, the two witnesses called by the defense were unable to provide useful testimony. *Id*.  The hearing was postponed, and trial counsel eventually withdrew the motion for a hearing without explanation. *Id*.  Hasan argues that trial counsel should have investigated the matter further and developed additional facts in a hearing. *Id*.

Respondent notes that Hasan has never produced the additional facts he implicitly contends were available to support his claim, and that without doing so he cannot demonstrate his counsels' ineffectiveness. (Return of Writ, Doc. No. 17 at 105.)  Hasan, undaunted, replies that he only needs to demonstrate that his counsels' decision to abandon the motion for a hearing was unreasonable, and that he was prejudiced as a result. (Traverse, Doc. No. 22 at 23.)  The Court granted Hasan's request for discovery respecting the instant ground for relief (Doc. No. 37 at 16), and he deposed his trial counsel (Deposition of Timothy Smith, Doc. No. 58, Attachment 2).  Smith stated that his now-deceased co-counsel on Hasan's case, Dave Otto, made the decision to abandon the issue, and that he, Smith, did not know Otto's reason for doing so. (Doc. No. 58 at 41-42.)  From that, Hasan contends he has proven his trial counsels' decision to abandon the motion was unreasonable and that he has satisfied the first prong of *Strickland*. (Doc. No. 60 at 3.)

There are numerous weaknesses in Hasan's arguments.  First, one counsel's statement that he did not know why his co-counsel had abandoned a claim contributes nothing to an evaluation of the co-counsel's performance.  *Strickland* commands that a person claiming ineffective assistance of counsel bears the burden of overcoming the "strong presumption that counsel's conduct falls

within a wide range of reasonable professional assistance." 466 U.S. at 689. A habeas petitioner's burden is even greater since he must demonstrate that the state court's decision regarding trial counsels' effectiveness was contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). Doing so requires more than a showing that the state court's decision was erroneous or incorrect; it must have been "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 511 (2003), *quoting Williams v. Taylor*, 529 U.S. 362, 409 (2000). A flimsy showing that the right hand did not know what the left hand was doing or why it was doing it falls short by a wide margin of overcoming the strong presumption of effectiveness mentioned in *Strickland* or that the state court's decision was "objectively unreasonable" as required by *Williams*.

Second, Hasan errs when he states there is no need for him to produce the evidence he claims his trial counsel should have discovered and presented to the trial court. By not doing so, he has deprived both the state courts and this Court of any opportunity to evaluate the validity of his underlying claim (biased grand jury) which impacts directly the courts' ability to assess whether he was prejudiced by his attorneys' conduct, a necessary showing to succeed on an ineffective assistance of counsel claim.

On the evidence presented, this Court does not find the Ohio Supreme Court's decision rejecting Hasan's claim of grand jury bias was contrary to or an unreasonable application of federal law as set forth by the United States Supreme Court. Hasan's fourth ground for relief should be denied.

**Fifth Ground for Relief**

In his fifth ground for relief, Hasan argues that his trial counsel provided substandard

representation when they did not object to the trial court's failure to adequately question jurors after they were exposed to protesters outside the courthouse.  (Petition, Doc. No. 16 at 36-40.) Respondent recognizes that the claim is preserved for habeas corpus review, but argues that the state trial court provided an adequate *voir dire* in response to the exposure to outside influences.  (Return of Writ, Doc. No. 17 at 105-6.)

      In *Remmer v. United States*, 347 U.S. 227 (1954), the Supreme Court held that

> In a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.  The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.
>
> . . .
>
> The trial court . . . should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate.

*Remmer*, 347 U.S. at 229-30.  Later, the Court appeared to recharacterize the general presumption of prejudice mentioned above as narrowly applying to the attempted bribe of a juror present in the *Remmer* case.  *Smith v. Phillips*, 455 U.S. 209, 215 (1982)(recognizing "the seriousness . . . of the attempted bribe, which [the Court] characterized as 'presumptively prejudicial'").  In *Smith*, the Court stated that it "has long held that the remedy for allegations of juror partiality is a hearing in which the *defendant* has the opportunity to prove actual bias."  455 U.S. at 215 (emphasis added)

      The Sixth Circuit Court of Appeals has recognized the tension between *Remmer*'s presumption of prejudice, and *Smith*'s placing the burden of proof of juror bias on the defendant.

In *United States v. Pennell*, 737 F.2d 521 (6th Cir. 1984), the court of appeals resolved the apparent

contradiction as follows:

> In essence, [*Smith*] reinterpreted *Remmer*. Although the Court in
> [*Smith*] referred to the *Remmer* presumptive prejudice standard, the
> Court nevertheless stated: This [C]ourt has long held that the remedy
> for allegations of juror partiality is a hearing in which the defendant
> has the opportunity to prove actual bias.
>
> Thus, the Court held that *Remmer* does not govern the question of the
> burden of proof where potential jury partiality is alleged. Instead,
> *Remmer* only controls the question of how the district court should
> proceed where such allegations are made, *i.e.*, a hearing must be held
> during which the defendant is entitled to be heard. 455 U.S. at 216.
> In light of [*Smith*], the burden of proof rests upon a defendant to
> demonstrate that unauthorized communications with jurors resulted
> in actual juror partiality. Prejudice is not to be presumed.

737 F.2d at 532; *see also United States v. Corrado*, 304 F.3d 593, 603 (6th Cir. 2002)(observing that

the defendant bears the burden of showing prejudice); *United States v. Branham*, 97 F.3d 835, 855

(6th Cir. 1996)(declaring that "under no circumstances will prejudice be presumed"); *United States*

*v. Walker*, 1 F.3d 423 (6th Cir. 1993)(stating "[t]his Court has consistently held that *Smith v. Phillips*

reinterpreted *Remmer* to shift the burden of showing bias to the defendant rather than placing a

heavy burden on the government to show that an unauthorized contact was harmless."). The Sixth

Circuit acknowledges, however, that its ruling "that extraneous information could not be presumed

prejudicial does not seem to have been mandated by Supreme Court precedent." *United States v.*

*Walls*, 162 F.3d 1162, 1998 WL 552907 at **8 (6th Cir. 1998)(table), *citing Remmer*, 347 U.S. 227,

and *Smith*, 455 U.S. 209. The Sixth Circuit's position on the issue is by no means unanimous in the

circuit courts, either. *Walls*, 162 F.3d at **8 (citing cases in eight other circuit courts of appeals that

hold extraneous information presumptively prejudicial). While evaluating the state court's decision

respecting Hasan's instant claim of ineffective assistance of trial counsel requires doing so through

-30-

the lens of 28 U.S.C. § 2254(d)(1), this Court is also bound by the Sixth Circuit Court of Appeals' interpretations of Supreme Court law.  Thus, *Walls*, *supra*, establishes that at least in the Sixth Circuit, the burden of proving prejudice from extraneous information lies at the feet of the petitioner, as Hasan acknowledges.  (Traverse, Doc. No. 22 at 25-26.)

In Hasan's case, the following exchanges took place between the court, an unidentified man, an unidentified woman, a deputy, and defense counsel outside the presence of the jury during the guilt phase of the trial:

| | |
|---|---|
| The Court: | Now you people are in and out in front of the courthouse carrying signs and demonstrating against capital punishment, am I correct? |
| A Man: | I am.  This lady is a friend of mine. |
| Deputy: | She was not picketing. |
| The Court: | Well, all right, anyway. |
| A Woman: | I support him, you know. |
| The Court: | That's all right.  You have the – |
| A Woman: | I'm not a bit afraid.  I don't break the rules, so – |
| The Court: | Listen to me.  You have the right – and the other people are not here.  You have the right to do what you want to do, to express your opinion.  But you have no right to intimidate any of my jurors in this trial.  Now, whether you intended it or not, some of the jurors have felt intimidated by you or your group.  Were you in this courtroom this morning?  You? |
| A Man: | No.  I've never been here.  I've not – I'm not familiar with – Judge, I'm not familiar with – |
| The Court: | Well, forget about it.  Listen to me. |
| A Man: | – the trial or anything. |

The Court:        Listen to me.

A Man:            I'm trying to be polite.

The Court:        Listen to me.  They feel intimidated, and I will not permit the jurors to feel intimidated.  If anything occurs again that you point out to them or make some expression to them, either you or any of those demonstrators, that is not a First Amendment right; that is intimidating a juror and I'm going to see that you are immediately arrested.  You may picket, do whatever you want, but do not intimidate, directly or indirectly, any juror.  Do you understand what I'm saying?

A Man:            Your Honor –

The Court:        Do you understand what I'm saying?

A Man:            Yes, sir, I understand.

The Court:        All right.  And you can relay that to your associates also.

A Man:            Okay.

The Court:        Now you may leave.


A Man:            Could I say something, Sir?  I just wanted to say I'm not familiar with your trial.  I would not talk to a juror knowingly, in any case, even if they were aggressively trying to talk to me.  I only talked to one individual today, who was a passerby, who went in that direction, and just within the last ten minutes.  And the other individuals that were with me, to my knowledge, would not do such a thing.  We have been doing a picket there for about a year and a half.  Our issue is capital punishment.  It's  – our intention would not be, and is not, and will not be, to interfere with the legal process in terms of influencing a juror or intimidating.

The Court:        All right.  You've said enough.  Now we understand

-32-

|              | each other.  All right.  We understand each other. |
|--------------|--------------------------------------------|
| A Man:       | Okay. |
| The Court:   | You may leave. |

. . .

| Defense:     | Judge, before the jury comes back, since they – |
|--------------|--------------------------------------------|
| The Court:   | Go ahead. |
| Defense:     | Since they have raised this issue of intimidation and it appears at least one of the jurors attributes this or somehow is maybe holding this against us – |
| The Court:   | I'm going to instruct them on this. |
| Defense:     | I still want to ask them some questions or the Court ask them. |
| The Court:   | You're not going to ask any questions.  I'll take care of the questioning. |
| Defense:     | Okay. |

. . .

(The jury entered the courtroom . . . .)

| The Court:   | [Juror Mangold], you communicated to the bailiff . . . an incident that you felt worthy to tell him that you and maybe some other jurors were walking across the street just a short time ago during our lunch hour and that there were some demonstrators out in front of the courthouse, and you felt that one of them or more of them had pointed to you and said:  There he goes, there goes one.  And you feel that that person was sitting in the courtroom.  Am I correct? |
|--------------|--------------------------------------------|
| Mangold:     | Yes, sir. |

(Trial Tr. at 1845-49.)  Following that exchange the judge recapped the situation outside the

-33-

courthouse, reassured the jurors that the protesters were harmless, explained that the protesters have no connection to Hasan's case, and described his admonishment to the two protesters. (Trial Tr. at 1849-50.) The court asked whether any juror felt that he or she could not continue the trial or be fair and honest in performing their roles as jurors. Juror Mangold began to answer but was interrupted by the court with another reassurance that the protesters are harmless. (Trial Tr. at 1850.) From what Mangold was able to get out before he was interrupted, however, it appears he was concerned about the whether the protesters had "picked on" any of the jurors or would do so in the future. *Id.* None of the other jurors expressed any reservations about their ability to remain impartial in performing their duties. *Id.*

Later, defense counsel proffered outside the jury's presence that one or more of the protesters' signs contained the name of Mumia Abu-Jamal, a writer and death row inmate in Pennsylvania whose case has attracted considerable media attention at various times.[6] Hasan's counsel contended that the presence of an Islamic-sounding name on one of the protesters' placards might cause one or more jurors to link the two men together, and requested an instruction to the jury that no such connection existed. (Trial Tr. at 2008-9.) When the trial resumed, however, no instruction was given, and instead another protester was admonished not to speak to any of the jurors, although he denied that he had ever done so. (Trial Tr. at 2019-21.)

Hasan argues that he was entitled to a *Remmer* hearing and that the trial court's questioning quoted above was inadequate for purposes of ferreting out any bias the protesters' activities may have had on the jurors. He claims his trial counsel were ineffective because they failed to request additional questioning of the jurors. (Petition, Doc. No. 16 at 36-40; Traverse, Doc. No. 22 at 24-

---

[6]An internet search of Mumia Abu-Jamal's name on google.com returned over 1,500,000 hits on August 14, 2006.

27.)

Under *Remmer* and its progeny, a defendant is entitled to question jurors on the impact of extraneous information. *Remmer*, 347 U.S. at 230; *Smith v. Phillips*, 455 U.S. at 216; *United States v. Pennell*, 737 F.2d at 532. Hasan's counsel, however, acquiesced to the trial judge's questioning of the jurors, such as it was. (Trial Tr. at 1848.) Entitlement to question the jurors does not impose an obligation on counsel to pursue such questioning in all cases, but even if it did, Hasan has made no attempt to demonstrate how he was prejudiced by his counsels' failure to *voir dire* the jury on the effect, if any, of the extraneous information. Instead, he contends that since prejudice was inadequately inquired into by the trial judge at the time, he has been forever deprived of the ability to show prejudice for purposes of his ineffective assistance of trial counsel claim. (Traverse, Doc. No. 22 at 25-27.) In habeas corpus, however, prejudice may be shown by testimony, affidavits, deposition, or other similar documentation obtained after trial. For instance, Hasan could have contacted any jurors who were influenced by the extraneous information and formalized their bias by way of an affidavit, deposition, or testimony at an evidentiary hearing.[7] That, Hasan did not do, however, and his failure to demonstrate prejudice from his attorneys' alleged ineffective assistance is consequently attributable to his own inaction rather than the trial court's limited *voir dire* of the jury at the time of the trial.

Accordingly, Hasan's fifth ground for relief should be denied.

**Sixth Ground for Relief**

In his sixth ground for relief, Hasan contends he was deprived of the opportunity to present

---

[7]Hasan abandoned his motion for an evidentiary hearing by failing to file a renewed motion within the time allotted by the Court after his initial request was denied without prejudice. (*See* Doc. Nos. 37.)

a complete defense by the trial court's denial of his request for a jury view of the L-block of the SOCF. (Petition, Doc. No. 16 at 41.) Respondent initially argues the claim is procedurally defaulted as a consequence of Hasan's failure to raise the issue as error on direct appeal to the court of appeals, but then acknowledges that the Ohio Supreme Court overlooked the default and addressed Hasan's claim on the merits, finding it unavailing. (Return of Writ, Doc. No. 17 at 151-54.) By addressing the merits of the claim, the Ohio Supreme Court resurrected it for habeas corpus review.

It fails nonetheless, however. In *Zuern v. Tate*, 101 F.Supp. 2d 948 (S.D. Ohio 2000) *reversed in part on other grounds*, *Zuern v. Tate*, 336 F.3d 478 (2003), Chief Judge Rice addressed a similar claim as follows:

> With his Ninth Claim, the Petitioner asserts that his rights under the Sixth and Fourteenth Amendments were violated, because the trial court denied his request for a jury view of the [Community Correctional Institute ("CCI"), where the murder took place]. Judge Merz recommended that this Court dismiss this claim, since any error in refusing to permit a jury view did not rise to the level of a constitutional violation. In his Objections, Zuern argues that the denial of the jury view prevented him from presenting evidence on the key issue of prior calculation and design. According to the Petitioner, a view would have permitted the jury to experience the subhuman conditions at the CCI and, thus, to appreciate that, rather than his being a cold, remorseless person who enjoyed killing in cold blood, he was like a caged animal who lashed out instinctively at a possible threat to his life.
>
> To support that argument, the Petitioner relies upon *Crane v. Kentucky*, 476 U.S. 683 (1986). Therein, the defendant was convicted of murder in state court. Before his trial, the defendant had moved to suppress his confession, arguing that it had been involuntary. The state court overruled that motion and permitted the confession to be introduced in evidence. The prosecutor, during his opening statement, indicated that the state would rely primarily upon the defendant's confession. In response, defendant's counsel told the jury that they should not believe the defendant's confession, because it was rife with inconsistencies and the circumstances under which it had been given cast doubt upon its credibility. In response to defense

counsel's opening statement, the prosecutor moved *in limine* to exclude testimony concerning the circumstances of the confession, since such testimony was only relevant to its voluntariness, which was a legal issue for the court to decide in the context of a motion to suppress evidence. The trial court granted the prosecutor's motion, and the defendant was convicted. After his conviction had been affirmed by the Kentucky Supreme Court, the defendant appealed to the Supreme Court of the United States, arguing that he had been denied his constitutional right to a fair opportunity to present a defense. The Supreme Court agreed, holding that, in the absence of any justification, the state would deny a criminal defendant his right to a fair opportunity to present a defense, under the Sixth and Fourteenth Amendments, by preventing him from introducing evidence which could have cast doubt on the credibility of his confession.

Under the law of Ohio, a jury view is not evidence. *See e.g.*, *State v. Richey*, 64 Ohio St.3d 353, 367, 595 N.E.2d 915, 927 (1992) [*abrogated in part on other grounds*, *State v. McGuire*, 80 Ohio St. 3d 390, 402, 686 N.E.2d 1112 (1997)]; *State v. Hopfer*, 112 Ohio App. 3d 521, 542, 679 N.E.2d 321, 334 (1996). *See also*, 1 Ohio Jury Instructions § 2.50 (pattern instruction to be given before jury view, to the effect that it is not evidence and that the purpose of a jury view is to help the jury better understand the evidence). Therefore, by denying the Petitioner's request for a jury view, the trial court did not prevent him from presenting *evidence* to support his defense. Indeed, there is no indication in the record that the Petitioner was denied the opportunity to present evidence concerning the conditions at the CCI, in order to support his defense that he had not acted with prior calculation and design. Consequently, the denial of the request for a jury view of the CCI is not remotely similar to *Crane*, and the Petitioner's assertion that the Supreme Court's decision therein supports this claim is without merit.

Moreover, under the law of Ohio, the decision of whether to grant a jury view lies within the sound discretion of the trial court. *State v. Lundgren*, 73 Ohio St.3d 474, [490,] 653 N.E.2d 304 (1995). Assuming for [the] sake of argument that Judge Morrissey abused his discretion in refusing the requested jury view [in Zuern's case], a claim of abuse of discretion by a state court trial judge does not establish a federal constitutional violation. *Sinistaj v. Burt*, 66 F.3d 804[, 808] (6th Cir. 1995).

*Zuern*, 101 F.Supp.2d at 980-81 (some parallel citations omitted). Hasan also relies on *Crane* in his

argument.  (Traverse, Doc. No. 22 at 27, 29.)

Significant time had elapsed between the time of the riot and Hasan's request for a jury view. Hasan does not dispute the State's contention that the relevant area of the prison had not been left as it was at the conclusion of the riot, but claims the remodeling of the L-block was not so significant that a jury view would have confused the jurors more than it would have helped them understand the events that occurred there during the riot.  Moreover, Hasan has once again alleged prejudice from the claimed error without providing any evidentiary support that he was prejudiced by the trial court's denial of his motion for a jury view.  Without more, and for the reasons stated in *Zuern*, Hasan cannot succeed on this claim for habeas corpus relief.

Hasan's sixth ground for relief should be denied.

**Seventh Ground for Relief**

In his seventh ground for relief, Hasan contends his trial counsel were ineffective for failing to request dismissal of a sleeping juror.  (Petition, Doc. No. 16 at 41.)  Respondent acknowledges that Hasan properly raised the claim on direct appeal (Return of Writ, Doc. No. 17 at 107), and the claim is therefore preserved for habeas corpus review.

On direct appeal, the Ohio Supreme Court determined that Hasan's trial counsels' decision not to call for the dismissal of the juror alleged to have been sleeping was tactical, and noted that Hasan had demonstrated neither attorney error nor prejudice.  *State v. Sanders*, 92 Ohio St. 3d 245, 274-75, 750 N.E.2d 90 (2001).  To succeed on the instant claim, Hasan must show that the state court's decision was contrary to or an unreasonable application of federal law as set forth by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  This he has not done.

-38-

First, Hasan correctly argues that *Strickland*, *supra*, guides this Court's consideration of his ineffective assistance of trial counsel claim. (Traverse, Doc, No. 22 at 30.) He incorrectly contends that the underlying claim respecting the allegedly sleeping juror is controlled by *Irwin v. Dowd*, 366 U.S. 717 (1961). (Traverse, Doc. No. 22 at 30.) *Irwin* relates to juror impartiality, not juror misconduct, and sleeping is a form of juror misconduct. *United States v. Sherrill*, 388 F.3d 535, 537-38 (6th Cir. 2004). Thus, *Irwin* is inapposite.

Second, in order to succeed on his ineffective assistance of trial counsel claim, Hasan must also demonstrate that had his attorney requested dismissal or *voir dire* of the allegedly sleeping juror, there was a reasonable probability that the result of his trial would have been different. *See Strickland*, 466 U.S. at 694. Doing so would entail showing that Hasan's attorneys' request had a strong chance of success, and that Hasan suffered prejudice as a result of his attorneys' failure to move for the juror's dismissal. Here, however, Hasan merely claims that it was unreasonable for his trial counsel to forego a motion for dismissal because "the sleeping juror *most likely* missed evidence needed to objectively adjudicate the case." (Traverse, Doc. No. 22 at 31.) In *United States v. Tierney*, 947 F.2d 854 (8th Cir. 1991), the Eighth Circuit Court of Appeals explained as follows:

> Defendant relies primarily on an annotation explaining that a mistrial may be appropriate where, as here, jurors have slept during trial. *See* Annotation, *Inattention of Juror from Sleepiness or Other Cause as Ground for Reversal or New Trial*, 88 A.L.R.2d 1275 (1963). However, the same annotation states that "the courts have universally taken the view that the party claiming error must also demonstrate that as a result of the lack of attention the juror failed to follow some important or essential part of the proceedings." *Id.* at 1278-79. Defendant has not shown that the jury ignored any particularly important items. Instead, he has relied on a general assertion that jurors slept through parts of "the critical presentation of [defendant's] evidence and the cross-examination of witnesses for the prosecution." Such assertions are too vague to establish prejudice. *See Tanner v. United States*, 483 U.S. 107, 125, 107 S.Ct. 2739, 2750, 97 L.Ed.2d

> 90 (1987) (finding no substantial evidence of jury incompetence
> where evidence"suggested, at worst, that several of the jurors fell
> asleep at times").

*Tierney*, 947 F.2d at 868-69. Similarly, Hasan does not identify what transpired during the juror's

alleged moments of unconsciousness, or indeed that the juror was actually unconscious at all. The

description of the juror's conduct during the relevant portions of the trial could describe a juror who

is sitting still with her eyes closed, but not necessarily asleep. (Trial Tr. at 3049-50.) The trial court

later admonished the jury that there was "too much sleeping going on," but no particular juror was

identified so it is impossible to tell whether he was referring to the same or a different juror than was

complained of by defense counsel earlier. (Trial Tr. at 3815.)

   In addition, Hasan does not claim that his trial counsels' request to dismiss or *voir dire* the

juror would have succeeded, only that it should have been made. Yet without some showing that

the trial court would have been receptive to Hasan's counsels' request, his argument falls short of

demonstrating the prejudice required by the second prong of *Strickland*, *supra*. Thus, even taking

trial counsels' admission that there was no tactical purpose in foregoing a request for dismissal or

voir dire of the juror at face value, Hasan's claim fails.

   Hasan's seventh ground for relief should be denied.


**Eighth Ground for Relief**

   In his eighth ground for relief, Hasan contends his trial counsel should have presented

nineteen additional witnesses during the guilt phase of his trial, and that their failure to do so

constitutes ineffective assistance of counsel. (Petition, Doc. No. 16 at 43-57.) Respondent asserts

a procedural default defense and argues in the alternative that the claim is meritless. (Return of

Writ, Doc. No. 17 at 109.)  Hasan implicitly concedes the default (see Decision and Order Granting

in Part and Denying in Part Petitioner's Motion for Discovery and Denying Without Prejudice

Petitioner's Motion for Evidentiary Hearing, Doc. No. 37 at 11), but claims the actual innocence

gateway of *Schlup v. Delo*, 513 U.S. 298 (1995), excuses his procedural default, reviving his

constitutional claim of ineffective assistance of counsel for habeas corpus review.  (Traverse, Doc.

No. 22 at 33-44.)

　　　In *Murray v. Carrier*, 477 U.S. 478, 496 (1986), the Supreme Court allowed that "where a

constitutional violation has probably resulted in the conviction of one who is actually innocent, a

federal habeas court may grant the writ even in the absence of a showing of cause for the procedural

default."  More recently, the Sixth Circuit Court of Appeals has summarized what has come to be

known as "the *Schlup* actual innocence gateway" as follows:

> The United States Supreme Court has held that a claim of actual
> innocence can be raised "to avoid a procedural bar to the
> consideration of the merits of [the petitioner's] constitutional claims."
> *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). . . .  In *Schlup*, the
> Supreme Court held that a credible showing of actual innocence was
> sufficient to enable a court to reach the merits of an otherwise
> procedurally barred habeas petition.  *Schlup*, 513 U.S. at 317.  The
> actual innocence claim in *Schlup* is "not itself a constitutional claim,
> but instead a gateway through which a habeas petitioner must pass to
> have is otherwise barred constitutional claim considered on the
> merits."  *Id*. at 315 (citing *Herrera v. Collins*, 506 U.S. 390, 404
> (1993).

*Souter v. Jones*, 395 F.3d 577, 588-89 (6ᵗʰ Cir. 2005)(parallel citations omitted).  To be credible, a

claim of actual innocence requires that the allegations of constitutional error be supported with

reliable evidence, such as "'exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence . . . that was not presented at trial.'"  *House v. Bell*, ___ U.S. ___, 126

S.Ct. 2064, 2077 (2006), *quoting Schlup*, 513 U.S. at 324.  Consequently, such claims are rarely

-41-

successful.  *Schlup*, 513 U.S. at 324.  *See also House*, 126 S.Ct. at 2077 (observing that "it bears repeating that the *Schlup* standard is demanding and permits review only in the extraordinary case").  In his concurrence in part and dissent in part in *House*, Chief Justice Roberts noted that in a claim of actual innocence under *Schlup*, "the new evidence is not simply taken at face value; its reliability has to be tested."  *House*, at 126 S.Ct. at 2088.  While the majority and the dissenters disagreed as to whether the reliability of House's new evidence had been sufficiently established, there was no dispute that where a petitioner seeks to avail himself of the *Schlup* actual innocence gateway, the reliability of the new evidence is of paramount importance.

Hasan supports his two-part claim of actual innocence and ineffective assistance of trial counsel with the affidavits, or excerpts from interviews, depositions, or trial testimony in other Lucasville cases from nineteen individuals, most of them inmates Lucasville during the prison riot.  (Appendix, Vol. VI-A at 178-95, 199-205, 252-70; Vol. VI-B at 76-116; Vol. VI-C at 118-19.)  Those documents were originally submitted to the state courts in support of Hasan's second petition for post-conviction relief.  (Appendix, Vol. VI-A at 38-163.)

The affidavits and excerpts from interviews are uncross-examined, and the excerpts from the depositions and trial testimony do not include any cross-examination.  In addition, some of the deposition and testimony excerpts do not even identify the witness testifying.  (*See* Appendix, Vol VI-B at 76-87, 88, 113-16.)  Several of the documents contain hearsay, speculation, conjecture, and opinion of the type not admissible at trial, in part because of its inherent unreliability.  (Appendix, Vol. VI-A at 179, 182-84, 189-91, 201-2); Ohio R. Evid. 701.  Finally, none of the affidavits, or excerpts from depositions or interviews have been authenticated in any way.  *See* Fed. R. Evid. 901, 902; *see also* Fed. R. Evid. 1101(e).  It is noted that Hasan sought an evidentiary hearing in these

proceedings to present the testimony of most if not all of the nineteen individuals whose testimonies he claims would demonstrate his actual innocence. (Petitioner's Motion to Conduct Discovery and Request for an Evidentiary Hearing, Doc. No. 21.) As noted above, however, Hasan abandoned his motion for an evidentiary hearing by failing to file a renewed motion within the time allotted by the Court after his initial request was denied without prejudice. (*See* Doc. No. 37.) Thus, Hasan has not presented "reliable evidence" to support his claim of actual innocence as is required by *Schlup*.

Hasan has moved this Court to reconsider its denial of his request for an evidentiary hearing and discovery on the basis of *House v. Bell, supra,* (Doc. No. 79). As pointed out in the Warden's Opposition (Doc. No. 80), the prior denial was without prejudice to renewal by a date certain, which is precisely what Petitioner said he would do and then did not do. Even if the current motion were an initial motion for an evidentiary hearing on the perceived change in the law effected by *House v. Bell*, it would be unavailing. As analyzed above, the evidence relied on here is in no way comparable to the quality of the evidence offered in *House*. And nothing in the *House* decision requires a district court to treat evidence tendered in support of a *Schlup* actual innocence gateway to avoid procedural default as true. The Motion for Reconsideration is denied.

Hasan's ineffective assistance of trial counsel claim is procedurally defaulted. He has not attempted to demonstrate cause and prejudice for his default, and he has not presented the quality of evidence necessary to open the "actual innocence" gateway of *Schlup* that would allow this Court to address his defaulted claim. For those reasons, Hasan's eighth ground for relief should be denied.

**Ninth Ground for Relief**

-43-

In his ninth ground for relief, Hasan contends his trial counsel were ineffective as evidenced by their failure to adequately cross-examine prosecution witnesses Reginald Williams, Kenneth Law, Miles Hogan, David Lomache, Anthony Lavelle, and Stacey Gordon. (Petition, Doc. No. 16 at 57-64.)  Respondent argues the claim is procedurally defaulted and in the alternative that it is meritless.  (Return of Writ, Doc. No. 17 at 112-14.)  Hasan does not dispute Respondent's claim of procedural default, and as in the previous ground for relief, Hasan claims the *Schlup* "actual innocence" gateway provides an avenue through which this Court may address his ineffective assistance of counsel claim *de novo*.  (Traverse, Doc. No. 22 at 44-5.)

Hasan references material similar in quality to that discussed in his eighth ground for relief to support the instant two-part claim of actual innocence and ineffective assistance of trial counsel.  (*See* Appendix, Vol. IV-B at 206-8, 210-51.)  Consequently, and for the reasons discussed above, this claim suffers the same fate as the preceding claim.  See *id*. (presenting excerpts from trial testimony where no cross-examination is included, and where some witnesses are not identified in the excerpt).  It bears noting, however, that it is unlikely that the inconsistencies in the relevant witnesses' testimonies in the various Lucasville cases would lead to the conclusion that Hasan is probably innocent of the offenses for which he was convicted.  *See Schlup*, 513 U.S. at 324 (noting that "claims of actual innocence are rarely successful").  The inconsistencies, most of them quite insignificant, may have been marginally useful in attempting to discredit the relevant witnesses, but casting a pale shadow on the witnesses' credibility is not enough to demonstrate actual innocence, or ineffective assistance of trial counsel for that matter.

Hasan's ninth ground for relief should be denied.

**Tenth Ground for Relief**

In his tenth ground for relief, Hasan claims the prosecutors in his case withheld material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  (Petition, Doc. No. 16 at 48-49.)  Specifically, he contends the "evidence" revealed in the documents upon which he relied in arguing his eighth and ninth grounds for relief was *Brady* material and should have been disclosed to defense counsel.  *Id*.  Respondent states that Hasan's claim was never presented to the state courts, and that it is consequently unexhausted[8] and procedurally defaulted.  (Return of Writ, Doc. No. 17 at 154-56.)  Hasan contends he did indeed raise his *Brady* claim in his second or successive post-conviction relief petition in the state court, but that even if the claim were procedurally defaulted, the "actual innocence" gateway of *Schlup* provides him with a way around his default.  (Traverse, Doc. No. 22 at 48-49.)

There are so many problems with Hasan's claim, it is difficult to know where to start.  First, Hasan did claim prosecutors withheld *Brady* material from him in his second or successive post-conviction relief petition in the state court.  (Appendix, Vol. VI-A at 157-59.)  What he neglected to do there, however, was identify the material he alleges should have been disclosed by the prosecutors, preferring instead to make the expansive statement that all the exhibits attached to the post-conviction petition supported his *Brady* claim.  *Id*. at 159.  As such, Hasan did not "fairly present" the claim he now asserts here to the state courts.  A claim is "fairly presented" when a petitioner asserts both the factual and legal basis for his claim to the state courts.  *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  Hasan failed to adequately set forth the factual basis for his claim in the state court by not identifying the specific material he claims should have been disclosed by

---

[8]Respondent makes no suggestion of any remedy that might still be available to Hasan in the state courts, so this Court treats her use of the term "unexhausted" as inadvertent.

the prosecution. Thus, the instant claim was not fairly presented to the state courts, and if it were today, it would undoubtedly be rejected by the state courts on *res judicata* grounds. Consequently, it is procedurally defaulted.

Second, some of the material Hasan now claims should have been disclosed as *Brady* material is public record and was easily obtainable by Hasan's trial counsel. (*See* Appendix, Vol. VI-A at 210-12, 217-70; Vol. VI-B at 91-123.) No *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information. *United States v. Clark,* 928 F.2d 733, 738 (6th Cir. 1991) *quoting United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988); *United States v. Todd*, 920 F.2d 399, 405 (6th Cir. 1990) *citing United States v. Gaggi*, 811 F.2d 47, 59 (2d Cir. 1987), and *United States v. Davis*, 787 F.2d 1501, 1505 (11th Cir. 1986). Since the material referenced was available to Hasan as public records, there can be no *Brady* violation from the prosecution's failure to draw to it defense counsels' attention.

Third, none of the affidavits upon which Hasan relies establishes that the prosecutor had material exculpatory evidence which it withheld from the defense. Many make clear they were interviewed by defense counsel prior to trial (Appendix, Vol. VI-A at 178-79, 182-84, 189-91, 201-5), while others are silent as to whether the affiant ever provided the substance of his affidavit to prosecutors (Appendix, Vol. VI-A at 180-81, 185-95, 199-205). In those cases, Hasan simply assumes the prosecutors were in possession of the information contained within the later-sworn affidavits. This Court, however, cannot assume the same.

Fourth, for the same reasons stated as to Hasan's eighth and ninth grounds for relief, he has not demonstrated entitlement to pass through the *Schlup* "actual innocence" gateway to avoid

-46-

procedural default of the instant claim and have his *Brady* claim addressed on its merits. Accordingly, Hasan's tenth ground for relief should be denied.

**Eleventh Ground for Relief**

In his eleventh ground for relief, Hasan appears to contend that trial court error and prosecutorial misconduct at his trial united to deprive him of his right to effectively cross-examine a prosecution witness. (Petition, Doc. No. 16 at 65-66.)  Respondent acknowledges the claim is preserved for habeas review, but argues that the state courts' decisions on the issue were not contrary to or an unreasonable application of federal law. (Return of Writ, Doc. No. 17 at 157-60.) In his traverse, Hasan argues only for discovery to flesh out his claim. (Traverse, Doc. No. 22 at 49-50.)  Hasan's motion for discovery respecting the instant ground for relief, however, was denied. (Decision and Order Granting in Part and Denying in Part Petitioner's Motion for Discovery and Denying Without Prejudice Petitioner's Motion for Evidentiary Hearing, Doc. No. 37 at 4-13.)  A renewed motion for discovery was also denied. (Second Motion for Discovery Regarding Statement Database and Tunnel Tape 61, Doc. No. 72; Decision and Order Denying Petitioner's Second Motion for Discovery, Doc. No. 75.)

In his petition, Hasan set forth his claim with statements such as "Defense Counsel believed that the [Department of Corrections Rules and Infractions Board, or "RIB"] hearings contained exculpatory evidence," and "[t]he defense also believed that the prosecutors were withholding other favorable evidence in notes of witness statements."  (Doc. No. 16 at 65.)  A recitation of trial counsel's beliefs, or suspicions, as the case may be, is inadequate to entitle a habeas petitioner to discovery, as this Court explained in its orders denying Hasan's discovery requests (Doc. Nos. 37

and 75).  *See Bracy v. Gramley*, 520 U.S. 899 (1997).  In his traverse, he acknowledged that "Petitioner is not requesting a decision on the merits of his <u>Brady</u> claim, but rather is seeking a procedural ruling regarding discovery on this claim," that "[a] merits ruling is premature," and that "this Court cannot fairly consider this claim without disclosure of the relevant documents."  (Doc. No. 22 at 50.)  As Hasan's requests for discovery were denied insofar as they relate to the instant ground for relief (Doc. Nos. 37 and 75), and since Hasan acknowledges that without discovery he cannot make out his claim, the eleventh ground for relief should be denied.

**Twelfth Ground for Relief**

In his twelfth ground for relief, Hasan contends he was denied appointment of an expert witness to evaluate the tunnel tapes in violation of his Sixth and Fourteenth Amendment rights. (Petition, Doc. No. 16 at 66.)  Respondent concedes the claim is preserved for habeas review, but argues it is nevertheless without merit.  (Return of Writ, Doc. No. 161-65.)  Once again, Hasan foregoes requesting a decision on the merits of his twelfth ground for relief, and instead argues that the court should provide him with discovery.  (Traverse, Doc. No. 22 at 50-53.)  By so arguing, and because discovery was denied in relation to the instant ground for relief (Doc. Nos. 37 and 75), Hasan has effectively abandoned his twelfth ground for relief, which should consequently be denied.

**Thirteenth Ground for Relief**

In his thirteenth ground for relief, Hasan claims that his trial counsel were ineffective when they failed to respond to the prosecutor's motion to quash a defense subpoena for the original tunnel tapes, the logs of the tapes, and a contemporaneous memorandum produced by the FBI.  (Petition,

Doc. No. 16 at 67-68.) Respondent argues the claim is without merit. (Return of Writ, Doc. No. 17 at 115-17.) Hasan again abandons his claim by arguing only for discovery in order to demonstrate prejudice from his attorneys' alleged lapse. (Traverse, Doc. No. 22 at 54-55.) Furthermore, in his subsequent brief following the discovery he did conduct, Hasan fails to make a showing of prejudice, arguing instead that tunnel tape 61 would have been useful to the defense, but failing to provide anything approaching adequate support for his contention. (Petitioner's Memorandum Regarding the Deposition of Timothy A. Smith, Esq., Doc. No. 60 at 4-5.)[9] Accordingly, Hasan's thirteenth ground for relief should be denied.

**Fourteenth Ground for Relief.**

In his fourteenth ground for relief, Hasan contends the trial court erred in denying him the opportunity to play tunnel tapes 60 and 61, and to introduce a record of Muslim services at the prison. (Petition, Doc. No. 16 at 68-69.) According to Hasan, those items would have aided him in impeaching four prosecution witnesses. *Id*. Respondent argues that the Ohio Supreme Court's rejection of the claim on the merits was neither contrary to nor an unreasonable application of federal law, and that the claim consequently fails. (Return of Writ, Doc. No. 17 at 165-69.)

Respondent correctly sets forth the procedural status of Hasan's claim; it is preserved for federal habeas corpus review. To summarize the Ohio Supreme Court's decision, it held that (1) Hasan was not prevented from playing tunnel tape 61, and would have been permitted to identify voices on the tape and instances where the tape differed from the actual conversation had he chosen to play the tape; (2) after testifying that he was not an active participant in the riot, David Lomache

---

[9]Hasan's second motion for discovery relating to this ground for relief was denied on May 31, 2006. (Doc. No. 75.)

was confronted with a transcript of tunnel tape 60, and he acknowledged making the statements contained therein but claimed he was "acting" as if he supported the riot when in reality he did not; and (3) as Hasan never identified the witnesses who claimed to be Muslims and who would have been revealed as having never attended a Muslim service by the introduction of the record of Muslim services, the proposed evidence was only tenuously relevant and was correctly excluded. *State v. Sanders*, 92 Ohio St. 3d 245, 258-59, 750 N.E.2d 90 (2001).  Hasan contends the state court's decision violates the federal law set forth in *Chambers v. Mississippi*, 410 U.S. 284 (1973), and *Crane v. Kentucky*, 476 U.S. 683 (1986).

"[T]he Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes v. South Carolina*, ___ U.S. ___, 126 S.Ct. 1727, 1732 (2006).  In *Holmes*, the evidentiary rules relied upon by the trial courts in *Chambers* and *Crane* to exclude defense evidence were characterized as "arbitrary." *Id.* at 1731-32.  Hasan does not argue that the evidentiary rules relied upon by the trial court to exclude the evidence he wished to present were arbitrary, and instead contends the exclusion violated his amorphous "right to a fair opportunity to defend against the State's accusations" and to present a "complete defense." (Traverse, Doc. No. 22 at 56, *quoting Chambers*, 410 U.S. at 294, and *Crane*, 476 U.S. at 690.)

The Ohio Supreme Court held that the State did not prevent Hasan from playing tunnel tape 61. *State v. Sanders*, 92 Ohio St. 3d 245, 258, 750 N.E.2d 90 (2001).  Furthermore, the court stated as follows:

> Hasan did not attempt to authenticate the tape by proffering "evidence sufficient to support a finding that the matter in question is what its proponent claims.' Evid.R. 901(A); see, also, Evid.R. 901(B)(1). Hasan did not show that the tape he wanted to play was

> either the original tape or the same copy of that tape that the state had given him in discovery. Thus, he laid no foundation from which the jury could find that the state was responsible for any alleged alterations of the recording.

*Id*. Hasan argues that since he obtained the tunnel tapes or copies of them from the prosecution, he should essentially be excused from authenticating them before presenting them to the jury. (Traverse, Doc. No. 22 at 56.) The Ohio Supreme Court's rejection of that argument is neither contrary to nor an unreasonable application of any clearly established federal law identified by Hasan. 28 U.S.C. § 2254(d)(1). In fact, it is doubtful that Hasan's claim amounts to anything more than an evidentiary question of state law and not implicative of the federal constitution at all. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (stating "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). For these reasons, Hasan's claim that he should have been permitted to play tunnel tape 61 is unavailing.

Next, Hasan argues he was denied his constitutional right to present a complete defense by the trial court's refusal to allow him to play tunnel tape 60 in an effort to impeach prosecution witness David Lomache's testimony. (Petition, Doc. No. 16 at 68-69; Traverse, Doc. No. 22 at 55-57.) As noted by the Ohio Supreme Court in its rejection of Hasan's claim, defense counsel had and took advantage of the opportunity to confront David Lomache with the substance of the relevant part of tunnel tape 60. *State v. Sanders*, 92 Ohio St. 3d 245, 258-59, 750 N.E.2d 90 (2001). On cross-examination, Lomache testified that he was forced into participating in the meeting and indicated he had done a "pretty good job of acting" as if he supported the rioting inmates. (Trial Tr. at 3416.) Hasan does not explain how playing tunnel tape 60 would have elicited testimony different or more damaging to Lomache's credibility had the defense been permitted to play the relevant portion of the tape. Thus, the state court's decision in regard to tunnel tape 60 is not in any way contrary to

or an unreasonable application of federal law.

Finally, Hasan argues that he should have been permitted to introduce the prison records of the Muslim services held which presumably identify the inmates who attended each service as well. (Petition, Doc. No. 16 at 69.)  The Ohio Supreme Court held as follows:

> At trial, the defense attempted to introduce a record of inmate attendance at religious services in SOCF.  The defense proffered the attendance record to show that "two of the people they alleged are Muslims never attended Muslim services."  The defense did not state which two inmates it was referring to.  The trial judge, finding the exhibit's relevance "tenuous," excluded it.  Hasan claims that this was error.
>
> Hasan contends that the exhibit impeached the credibility of certain inmates by showing that they "lied about being Muslim."  But since the defense never identified the inmates in question , we are unable to determine whether it had any impeachment value as to those inmates.  In any event, because the exhibit covered only a limited period (December 1992 - March 1993), it did not show that any given inmate *never* attended services.

*State v. Sanders*, 92 Ohio St. 3d 245, 259, 750 N.E.2d 90 (2001).  Hasan still does not identify the witnesses in question, and utterly fails to explain how the state court's decision is contrary to or an unreasonable application of clearly established federal law.  Accordingly, his claim is baseless.

Hasan's fourteenth ground for relief should be denied.

**Fifteenth Ground for Relief**

In his fifteenth ground for relief, Hasan contends his trial counsel provided ineffective assistance when they failed to object to the introduction of allegedly irrelevant testimony, gruesome and cumulative photographic evidence, and a videotape of Vallandingham's body being removed from the prison yard.  (Petition, Doc. No. 16 at 69-73.)  Respondent acknowledges the claim's

amenity to habeas corpus review, but argues it is meritless.  (Return of Writ, Doc. No. 17 at 117-21.)

Hasan raised the instant issue as part of his sixth proposition of law on direct appeal to the Ohio Supreme Court.  (Appendix, Vol. 3-C at 101.)  The court determined without elaboration that defense counsels' failure to object to the evidence in question was a tactical decision, and that Hasan had shown neither attorney error nor prejudice in his presentation of his claim.  *State v. Sanders*, 92 Ohio St. 3d 245, 274, 750 N.E.2d 90 (2001).  The claim is therefore preserved for habeas corpus review.[10]

In his deposition, defense counsel Tim Smith stated that he did not object to the photographs of Vallandingham's body because they corroborated the defense theory that Vallandingham's murder did not transpire as was described by Kenneth Law.  (Doc. No. 58, Exhibit 2 at 62.)  Hasan has subsequently withdrawn that part of his fifteenth ground for relief, so that part of his claim need not be addressed further.  (Memorandum, Doc. No. 60 at 5.)

Hasan contends that the testimony of seventeen prosecution witnesses contained descriptions of violent or destructive acts irrelevant to the offenses with which he was charged.  (Petition, Doc. No. 16 at 70-71.)  For instance, the complained-of testimony includes some correctional officers' descriptions of their own or a fellow officer's assaults, inmates' description of the destruction of state property in the prison during the riot, and inmates' testimony about attacks on or killings of other inmates.  *Id.*  Hasan argues that such evidence would leave a reasonable jury feeling outrage

---

[10]Respondent devotes half of a page in her discussion of the claim to an analysis of whether the underlying claim has been preserved for habeas review.  (Doc. No. 17 at 118.)  That discussion is irrelevant, however, because there is no requirement that a claim underlying an ineffective assistance of trial counsel claim must itself be independently preserved for habeas review.  This is not, in other words, an *Edwards v. Carpenter*, 529 U.S. 446 (2000), situation.  There, the petitioner sought review of a free-standing claim that had been procedurally defaulted, and offered the ineffectiveness of his counsel as cause for the default in an attempt to obtain federal review.  The United States Supreme Court held that the ineffective assistance of counsel claim could not serve as cause to excuse the procedural default unless it, too, had been independently preserved for habeas review.  *Id.* at 453.

and anger, *id*. at 72, and that its presentation to the jury clouded the issue of his guilt, depriving him of a fair trial (Traverse, Doc. No. 22 at 58-59). His attorneys' failure to object to the introduction of such evidence constituted ineffective assistance, he contends. *Id*. at 59.

In his deposition taken during these habeas proceedings, Hasan's trial counsel Tim Smith testified that there was no tactical reason for not objecting to the testimony relevant to the instant claim. (Deposition of Timothy Smith, Doc. No. 58, Exhibit 2 at 59-63.) Smith's statements are difficult to credit, however, because Hasan's defense was essentially that chaos prevailed during the riot and that he had no control over the other inmates. (Trial Tr. at 1237-38, 1244, 1248, 1250-51.) Evidence that violence and destruction were widespread and uncontrolled during the riot was just as likely, and maybe even more likely to add potency to Hasan's defense as it was to cause a reasonable juror to hold Hasan responsible for the acts of the other inmates. In light of the entire trial transcript, it is extremely doubtful any juror could have concluded that Hasan was directly or indirectly responsible for every act of violence or destruction that occurred during the riot, including the acts described in the testimony relevant to the instant ground for relief. Consequently, the Ohio Supreme Court's finding that Hasan had not demonstrated prejudice was not contrary to or an unreasonable application of clearly established federal law as set forth by the United States Supreme Court. Instead, it was in concert with the requirements of *Strickland*, *supra*.

Next, Hasan contends the admission of nineteen crime scene photographs and six autopsy photographs of Bruce Harris' body were cumulative, and that his counsel were ineffective for not objecting to them. (Petition, Doc. No. 16 at 72.) Respondent correctly notes that Hasan was acquitted of the Harris murder (Return of Writ, Doc. No. 17 at 120), which contradicts in rather stark fashion Hasan's claim that the photographs were so gruesome and shocking that the jury would rush

-54-

to judgment regardless of the other evidence.  As Hasan cannot demonstrate prejudice from the admission of the Harris photographs, he cannot establish the ineffectiveness of his attorneys for sitting silent as the photographs were entered into evidence.

Finally, Hasan claims the admission of a videotape and the display of enlarged photographs depicting the removal of Vallandingham's body from the prison yard was prejudicial to him and should have been objected to by his trial counsel.  (Petition, Doc. No. 16 at 72.)  Hasan claims the videotape and enlarged photographs added emotional support to the prosecution's case, *id*., and states counsels' failure to object to their introduction "probably had a prejudicial impact" (Traverse, Doc. No. 17 at 62), but he offers no reason for this Court to believe the state court's rejection of his arguments was contrary to or an unreasonable application of federal law.  *Strickland* requires a showing that "but for counsel's unprofessional errors, the result of the proceeding would have been different," not that the alleged error "probably had a prejudicial impact."  466 U.S. at 694.  Hasan's contention that the images were unnecessary since Vallandingham's death was not disputed at trial is unavailing as well.  (Traverse, Doc. No. 22 at 59.)  In *Estelle v. McGuire*, 502 U.S. 62, 69 (1991), the United States Supreme Court stated that "the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense."  Thus, the burden remained with the prosecution to prove Vallandingham's death beyond a reasonable doubt despite the fact that his death was undisputed.

Hasan has not convinced the Court that the Ohio Supreme Court's decision respecting the instant claim was contrary to or an unreasonable application of federal law.  Accordingly, his fifteenth ground for relief should be denied.

**Sixteenth Ground for Relief**

In his sixteenth ground for relief, Hasan contends his trial counsel were ineffective in failing to object to the introduction of victim impact and victim opinion evidence during the guilt phase of his trial. (Petition, Doc. No. 16 at 73.) Respondent acknowledges the claim is preserved for habeas corpus review, but disputes its viability, arguing that the Ohio Supreme Court's resolution of the issue is neither contrary to nor an unreasonable application of federal law. (Return of Writ, Doc. No. 17 at 121-22.) Hasan claims the state court's analysis was superficial in that it did not go behind the ineffective assistance of trial counsel claim to assess the viability of the underlying claim. (Traverse, Doc. No. 22 at 62-65.) In other words, Hasan contends the validity of his underlying claim, which appears to sound in prosecutorial misconduct, establishes the merit of his ineffective assistance of trial counsel claim. *Id*.

Hasan argues that his trial counsel were ineffective for not objecting when the prosecutor elicited victim impact testimony from various witnesses in the guilt phase of Hasan's trial. He contends that the prosecutor's conduct constituted error under *Payne v. Tennessee*, 501 U.S. 808 (1991), and his counsels' failure to object had no tactical or strategic basis and was instead unprofessional error under *Strickland*, *supra*. Hasan's arguments fall short of demonstrating his entitlement to habeas corpus relief, however.

Even if the prosecutor's elicitation of victim impact and victim opinion testimony violates *Payne* as Hasan argues, that fact alone would not necessarily establish defense counsels' ineffectiveness. It is entirely possible that the decision not to object was harmless, even if it was not tactical or strategic. This Court need not decide that issue, however, because *Payne* does not say what Hasan says it says.

-56-

Hasan represents to the Court that *Payne* established that victim impact testimony is appropriate only in the mitigation phase of a capital trial. (Traverse, Doc. No. 22 at 64.) He includes citation to three Ohio state court cases in support of his argument. *Id*. One of the Ohio cases is pre-*Payne*, and relies exclusively on secondary sources as authority for its statement that victim impact evidence is inadmissible because it "serves to inflame the passion of the jury with evidence collateral to the principal issue at bar." *State v. White*, 15 Ohio St. 2d 146, 151, 239 N.E.2d 65 (1968). That statement, however, was made by the court in the context of a prosecutor's elicitation of a deceased's background and use of the evidence in arguing for a death sentence, although the court stated categorically that victim impact evidence is not admissible in either phase of a capital trial. *Id*. at 150. Moreover, the Ohio Supreme Court has since embraced *Payne*, *State v. Lorraine*, 66 Ohio St. 3d 414, 421, 613 N.E.2d 212 (1993); *State v.Combs*, 62 Ohio St. 3d 278, 283, 581 N.E.2d 1071 (1991), and at least one Ohio court has observed that *White* has been superseded by Ohio's death penalty statute. *State v. Wilson*, No. Civ.A. 92CA005396, 1994 WL 558568 at *36 (Ohio App. 9th Dist. Oct. 12, 1994). Thus, *White* provides little support for Hasan's claim.

Hasan also overstates the finding of the Ohio Supreme Court in *State v. Fautenberry*, 72 Ohio St. 3d 435, 440, 650 N.E.2d 878 (1995). Hasan states the court held that victim impact evidence "can be admitted only if it is probative of some central element to the offense." (Traverse, Doc. No. 22 at 64.) The state court actually stated its holding as follows: "[W]e find that evidence which depicts both the circumstances surrounding the commission of the murder and also the impact of the murder on the victim's family may be admissible during both the guilt and the sentencing phases." *Fautenberry*, 72 Ohio St. 3d at 440. Thus, under *Fautenberry*, there is no requirement that

-57-

victim impact evidence must also be probative as to one or more elements of the offense, only that

it must describe the circumstances surrounding the murder, a considerably different requirement.

The same is true of the third case Hasan cites, *State v. Allard*, 75 Ohio St. 3d 482, 499-500, 663

N.E.2d 1277 (1996), which relied exclusively on *Fautenberry*. Thus, none of the Ohio cases add

much in the way of support for Hasan's sixteenth ground for relief.

In *Payne*, the Supreme Court held as follows:

> We thus hold that if the State chooses to permit the admission of
> victim impact evidence and prosecutorial argument on that subject,
> the Eighth Amendment erects no per se bar.  A State may legitimately
> conclude that evidence about the victim and about the impact of the
> murder on the victim's family is relevant to the jury's decision as to
> whether or not the death penalty should be imposed.  There is no
> reason to treat such evidence differently than other relevant evidence
> is treated.

501 U.S. at 827.  The Court's holding falls short of establishing a prohibition against victim impact

evidence in the guilt phase of a capital trial.  In fact, elsewhere in the Court's opinion, there is a

suggestion that some victim impact evidence is properly introduced in the guilt phase.  *Id*. at 823

(noting that "[i]n many cases the evidence relating to the victim is already before the jury at least

in part because of its relevance at the guilt phase of the trial").  *See also Bennett v. Angelone*, 92

F.3d 1336, 1348 (4th Cir. 1996)(observing that in *Payne*, the Supreme Court anticipated the

introduction of some background information would be admitted during the guilt phase of a capital

trial).  Moreover, the Sixth Circuit Court of Appeals has observed that "[w]hile *Payne* was

announced in the context of the sentencing phase of a capital trial, its rationale has been applied to

reject challenges to victim impact evidence introduced in the guilt phase as well."  *Cooey v. Coyle*,

289 F.3d 882, 921 (6th Cir. 2002); *Byrd v. Collins*, 209 F.3d 486, 532-33 (6th Cir. 2000).  Finally, the

court of appeals has also noted that the Ohio Supreme Court's limitation on the admission of victim

impact evidence, *State v. McNeil*, 83 Ohio St. 3d 438, 700 N.E.2d 586 (1998), to rebuttal of mitigation evidence is a state rule of procedure in Ohio, a violation of which is not cognizable in federal habeas corpus.  *Hicks v. Collins*, 384 F.3d 204, 222 (6th Cir. 2004).

Ordinarily, in a case in which an ineffective assistance of counsel claim rests upon counsel's failure to object to prosecutorial misconduct, there is no requirement that the prosecutorial misconduct itself must be a violation of federal law.  That is, however, precisely the way Hasan has argued his claim; to wit, he argues that the prosecutor's conduct violated *Payne v. Tennessee*, and his counsel's failure to object constituted ineffective assistance.  Hasan does not claim the prosecutors violated any state procedural rule by bringing out the complained-of testimony.  If he had, and if he demonstrated the viability of that claim, then his ineffective assistance of trial counsel claim might be more persuasive.  As the claim is argued, however, there is no need for this Court to determine whether the prosecutor's conduct violated state law since Hasan does not suggest that it did.

In conclusion, Hasan has not demonstrated that the prosecutor's conduct violated *Payne v. Tennessee*, 501 U.S. 808 (1991), and his ineffective assistance of trial counsel claim based upon counsels' failure to object to the alleged prosecutorial misconduct is consequently eviscerated. Hasan's sixteenth ground for relief should be denied.

**Seventeenth Ground for Relief**

In his seventeenth ground for relief, Hasan claims prosecutorial misconduct infected his trial, depriving him of his rights to be protected from cruel and unusual punishment, to a fair trial, and to due process of law.  (Petition, Doc. No. 16 at 76.)  Respondent argues that Hasan's claim is partially

procedurally defaulted and meritless in any case.  (Return of Writ, Doc. No. 17 at 169-80.)  Hasan seems to concede that his entire claim is procedurally defaulted, but urges this Court to address it *de novo*, contending that his trial counsels' ineffectiveness provides cause for his default.  (Traverse, Doc. No. 22 at 65-67.)  What Hasan neglects to mention, however, is that the Ohio Supreme Court found counsels' decisions not to object to the relevant instances of alleged prosecutorial misconduct the product of strategy, and concluded that Hasan had shown neither attorney error nor prejudice from the alleged errors.  *State v. Sanders*, 92 Ohio St. 3d 245, 274-75, 750 N.E.2d 90 (2001).  Hasan does not challenge that determination in these habeas proceedings, so this Court has no occasion to review the correctness, or incorrectness, as Hasan asserts, of the state court's decision.  It would be highly improper for this Court to consider Hasan's trial counsels' effectiveness absent a claim alleging unprofessional error on their part.  Thus, the Court will consider each of Hasan's prosecutorial misconduct sub-claims in turn, determining first if it has been procedurally defaulted without regard for Hasan's argument that his counsels' ineffectiveness excuses the default, and if it has not been defaulted, addressing its merits.

In his first, second, and third sub-claims, Hasan contends the prosecutor, in his opening statement, improperly injected religion into the culpability phase of his trial, vouched for two prosecution witnesses, and referenced a "mountain of evidence" never produced at trial.  (Petition, Doc. No. 16 at 76-77, 79, 82, 83-84; Traverse, Doc. No. 22 at 68-77.)  When Hasan raised the issues on direct appeal (Appendix, Vol. 3-C at 81-84), the Ohio Supreme Court rejected them as waived due to trial counsels' failure to object to the prosecutor's comments, *State v. Sanders*, 92 Ohio St. 3d 245, 271, 750 N.E.2d 90 (2001).  Ohio's rule requiring a contemporaneous objection to trial errors is an independent and adequate state procedural rule.  *Scott v. Mitchell*, 209 F.3d 854, 867-68

(6th Cir. 2000), *citing Engle v. Isaac*, 456 U.S. 107, 124-29 (1982). In addition, a state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003). Since Ohio's contemporaneous objection rule is an independent and adequate state procedural rule, and was enforced against Hasan in these instances, his first, second, and third prosecutorial misconduct sub-claims are procedurally defaulted. As noted above, Hasan's argument that his attorneys' ineffectiveness excuses the resulting procedural default fails. Thus, Hasan's first, second, and third sub-claims in his seventeenth ground for relief should be denied.

Next, Hasan contends the prosecutor played audiotapes of inmate-administration negotiations during the riot which were irrelevant. (Petition, Doc. No. 16 at 77.) Hasan did not raise this issue in his direct appeal to the court of appeals, but he did bring it to the Ohio Supreme Court's attention. (Appendix, Vol. 3-C at 91.) That court found defense counsel had not objected at trial to the playing of the tapes, there was no plain error, and that the claim was consequently waived. *State v. Sanders*, 92 Ohio St. 3d 245, 256-257, 750 N.E.2d 90 (2001). Thus, this sub-claim, too, is procedurally defaulted and cannot be addressed in federal habeas corpus.

Hasan also contends inmate Kenneth Law's testimony was unreliable, and that by presenting his testimony, the prosecutors suborned perjury, although he shies away from that exact phrase. (Petition, Doc. No. 16 at 77-78.) Respondent acknowledges the issue is preserved for habeas corpus review, but argues it is meritless. (Return of Writ, Doc. No. 17 at 171.) Hasan, however, abandons his claim in his traverse by stating he is not requesting a ruling on the merits of the issue, and seeks only discovery to develop evidence to support his claim. (Traverse, Doc. No. 16 at 83.)

-61-

Furthermore, Hasan never requested through a motion for discovery, any discovery relating to his seventeenth ground for relief.  (*See* Petitioner's Motion to Conduct Discovery and Request for an Evidentiary Hearing, Doc. No. 21; Petitioner's Renewed Motion for Discovery Regarding Statement Database and Tunnel Tape 61, Doc. No. 72.)  It is true that Hasan used a product of the discovery granted, trial counsel Timothy Smith's deposition, in arguing his seventeenth ground for relief in his post-discovery memorandum (Doc. No. 60 at 6-7), but that argument was directed at his trial counsels' ineffectiveness, not the alleged misconduct of the prosecutor.  Because Hasan has explicitly denied seeking a decision on the merits, his fifth prosecutorial misconduct sub-claim should be denied.

In his sixth, seventh, eighth, and ninth subclaims, Hasan contends that the prosecutors' cross-examination of Hasan improperly shifted the burden of proof to Hasan, that the prosecutor expressed his opinion that the proper description of the relevant events was "riot," that the prosecutor speculated that Hasan could have ended the riot on the first day, and that the prosecutor implied Hasan wanted to extend the riot to break the record for the longest prison riot.  (Petition, Doc. No. 16 at 78-81.)  Respondent alleges the sub-claims are procedurally defaulted, as the Ohio Supreme Court found them waived due to defense counsels' failure to object to the offending questions, statements, and implications at trial.  (Return of Writ, Doc. No. 17 at 171-73.)  Hasan does not argue these sub-claims in his traverse, except to say that his trial counsels' ineffectiveness should serve as cause for his procedural default, a proposition already rejected above.  Respondent's account of the procedural history of the issues is correct.  *See State v. Sanders*, 92 Ohio St. 3d 245, 271, 750 N.E.2d 90 (2001).  Accordingly, as Hasan's sixth, seventh, eighth, and ninth sub-claims are in the same procedural posture as the first through fourth sub-claims, they too are procedurally defaulted and should be

denied.

In his tenth, eleventh, twelfth, and thirteenth sub-claims, Hasan contends that in closing argument in the guilt phase of his trial, the prosecutor improperly urged the jurors to answer the question of to whom the riot belonged, exhorted jurors to put themselves in correctional officer Hensley's place, vouched for detective Hogan's testimony, and made inflammatory comments about correctional officer Ratcliff's beating and correctional officer Clark's near rape. (Petition, Doc.No. 16 at 81-83.)  Respondent argues the sub-claims are procedurally defaulted based upon the Ohio Supreme Court's determination that any error was waived by trial counsels' failure to lodge a contemporaneous objection at the time of the alleged errors. (Return of Writ, Doc. No. 17 at 169-74.)  Respondent is correct.  *See State v. Sanders*, 92 Ohio St. 3d 245, 270, 750 N.E.2d 90 (2001). Hasan does not argue the sub-claims in his traverse, and offers no basis upon which this Court may find cause and prejudice for his default of the claims.  As such, the claims are procedurally defaulted and may not be addressed in federal habeas corpus review.  Hasan's tenth, eleventh, twelfth, and thirteenth prosecutorial misconduct sub-claims should be denied.

Next, Hasan contends the prosecutor engaged in misconduct by denigrating defense counsel in the guilt phase rebuttal argument.  (Petition, Doc. No. 16 at 83.)  Respondent acknowledges the sub-claim is preserved for habeas corpus review, but asserts that the trial court's admonishment to the jury that the comments were improper and that they should be ignored cured any prejudice. (Return of Writ, Doc. No. 17 at 178-79.)

The conduct to which Hasan objects is the prosecutor's argument that the defense was perpetrating a "con" on the jury (Trial Tr. at 5179), his expression of shock at the "level that the defense has to go to" (Trial Tr. at 5180), his comment that the truth had "taken a terrible, terrible

beating in this courtroom" (Trial Tr. at 5182), and his accusation that defense counsel had told "an absolute flat-out lie" (Trial Tr. at 5186). Hasan raised the issue on direct appeal to the court of appeals (Appendix, Vol. 2-A at 145-47), but the court of appeals rejected the claim. *State v. Sanders*, No. C-960253, 1998 WL 212756 at *9 (Ohio Ct. App. 1st Dist May 1, 1998). Similarly, when Hasan raised the claim on direct appeal in the Ohio Supreme Court, the court observed that defense counsel had lodged an objection, which was sustained, and the jury was instructed to disregard the prosecutor's comment, adding that the comment was improper and irrelevant and that there was no indication that defense counsel were liars. *State v. Sanders*, 92 Ohio St. 3d 245, 270, 750 N.E.2d 90 (2001). The state court concluded that because the trial court gave a "strong curative instruction," the misconduct did not deprive Hasan of a fair trial. *Id.*

Both state courts' discussions of Hasan's claim addressed only the "flat-out lie" comment, ignoring the other statements Hasan claims constituted prosecutorial misconduct. Although Hasan raised all of the comments described above in his direct appeals in the court of appeals and the Ohio Supreme Court (Appendix, Vol. 2-A at 145-47; Vol. 3-C at 100), neither state court addressed the propriety of the earlier comments. Thus, because Hasan fairly presented his claim that the other comments were also improper and prejudicial to the state courts, their failure to address the claim as it relates to those comments, and their failure to enforce the state procedural rule requiring a contemporaneous objection at the time the offending comments were made, leaves this Court in position to address that portion of Hasan's claim *de novo* on habeas review. *McKenzie v. Smith*, 326 F. 3d 721, 727 (6th Cir. 2003)(when "there are no results, let alone reasoning, to which this court can defer . . ., any attempt to determine whether the state court decision was contrary to, or involved an unreasonable application of clearly established federal law would be futile"); *Maples v. Stegall*, 340

F. 3d 433, 437 (6th Cir. 2003), *relying on Wiggins v. Smith,* 539 U.S. 510, 534-38 (2003).  In any case, the instant sub-claim is, as Respondent acknowledges, amenable to habeas corpus review, although part is reviewed *de novo* as stated, and a smaller part is examined under the lens of the AEDPA.

The Sixth Circuit has articulated the relevant standard for habeas corpus claims of prosecutorial misconduct as follows:

> On habeas review, claims of prosecutorial misconduct are reviewed deferentially. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To be cognizable, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (citation omitted).  Even if the prosecutor's conduct was improper or even "universally condemned," *id.*, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair.  Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant:  (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial. *See Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000).  Under [the] AEDPA, this bar is heightened by the deference we give to the . . . [Ohio] Supreme Court's determination of . . . [Petitioner's] prosecutorial-misconduct claims. *See Macias v. Makowski*, 291 F.3d 447, 453-54 (6th Cir. 2002)("If this court were hearing the case on direct appeal, we might have concluded that the prosecutor's comments violated Macias's due process rights. But this case is before us on a petition for a writ of habeas corpus.  So the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law.").

*Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).  With these principles in mind, the Court turns its attention to the merits of Hasan's claim.

Hasan's entire argument in his petition respecting the alleged impropriety of the prosecutor's rebuttal argument comments is, "[t]his argument amounts to prejudicial misconduct."  (Petition,

-65-

Doc. No. 16 at 83.) In his traverse, he states only that the "jurors could have considered the prestige of the prosecution's office behind the statements likely [sic] and therefore, would have been misled." (Traverse, Doc. No. 22 at 79.) Such conclusory and equivocal statements fall short of demonstrating the requisite prejudice from the prosecutor's statements, even were the Court to assume the comments were improper. This is true for that portion of Hasan's claim subject to *de novo* review, and for that part reviewable under the more stringent AEDPA standard. Thus, Hasan has not demonstrated prejudice to establish prosecutorial misconduct, even though at least some of the prosecutor's comments were clearly improper. Hasan has not shown that the state courts' resolution of his claim, to the extent they addressed it, was contrary to or an unreasonable application of federal law as set forth by the United States Supreme Court. Accordingly, Hasan's fourteenth sub-claim in his seventeenth ground for relief should be denied.

Next, Hasan contends the prosecutor engaged in misconduct by suggesting that the mere fact that Hasan was on trial was proof of his guilt. (Petition, Doc. No. 16 at 83.) Respondent advances a procedural default defense. (Return of Writ, Doc. No. 17 at 169-71.) The record reflects that Hasan raised the issue on direct appeal to the Ohio Supreme Court (Appendix, Vol. 3-C at 74-75), and that it was denied on the ground that it was waived by defense counsels' failure to lodge a contemporaneous objection at trial, *State v. Sanders*, 92 Ohio St. 3d 245, 270, 750 N.E.2d 90 (2001). Hasan contends that by raising an ineffective assistance of trial counsel claim on direct appeal in the state courts, he has demonstrated cause for his default, an argument considered and rejected earlier in this Court's discussion of the instant ground for relief. Thus, Respondent is correct in her assessment of the procedural status of Hasan's fifteenth sub-claim; it is procedurally defaulted, and should be denied.

-66-

In his sixteenth and final prosecutorial misconduct sub-claim, Hasan argues that the prosecutor improperly and prejudicially implied that the defense's objections were obstructionist. (Petition, Doc. No. 16 at 16.) Respondent claims the issue is procedurally defaulted. (Return of Writ, Doc. No. 17 at 171.) When Hasan raised the claim in the Ohio Supreme Court on direct appeal, however, the court addressed its merits as follows:

> Hasan accuses the prosecutor of denigrating defense counsel for making objections. . . . However, the prosecutor did not do that. He did complain to the judge that "I've only got a limited amount of time. Every time he objects I lose time." [Trial Tr. at 5188.] But this was not an attack on opposing counsel for objecting; it was an appeal to the court for more time to argue.

*State v. Sanders*, 92 Ohio St. 3d 245, 270, 750 N.E.2d 90 (2001). Since the state court addressed the merits of the claim, it is properly preserved for habeas corpus review.

The state court's finding was one of fact, so Hasan's burden under the AEDPA is to demonstrate that that court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Hasan has made no attempt to do so. Moreover, his conclusory contention that he suffered "substantial and injurious effect" from the prosecutor's remarks does not in any way *demonstrate* the prejudice he complains of. Consequently, Hasan's sixteenth prosecutorial misconduct sub-claim should be denied.

To summarize, most of Hasan's prosecutorial misconduct sub-claims are procedurally defaulted. Those that are properly preserved for habeas review are lacking in merit both individually and cumulatively. The prosecutor's comments complained of were not extensive when considered in relation to the entire trial transcript, which numbers more than 5,500 pages in length. The jurors were instructed that the arguments of the attorneys are not evidence (Trial Tr. at 5048, 5211), that

the attorneys were not at the scene of the offenses (Trial Tr. at 5186-87), and that the only evidence they could use in deciding the case was the testimony of the witnesses and trial exhibits admitted into evidence (Trial Tr. at 5187, 5212).  In addition, the evidence of Hasan's guilt was not so insubstantial that the comments complained of are likely to have misled or confused the jury.  Thus, even if the prosecutor's remarks were improper and deliberate, they were not flagrant.  *See Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003).  Thus, Hasan is not entitled to habeas corpus relief on his seventeenth ground for relief, and it should be denied.

**Eighteenth Ground for Relief**

Hasan has withdrawn his eighteenth ground for relief (Traverse, Doc. No. 22 at 83), so no discussion of it is necessary.

**Nineteenth Ground for Relief**

In his nineteenth ground for relief, Hasan contends his appellate counsel were ineffective on direct appeal.  (Petition, Doc. No. 16 at 85-89.)  Specifically, Hasan argues that if his appellate counsel had raised the trial court's failure to perform an *in camera* review of the grand jury testimony in his and other Lucasville defendants' cases, it is likely his convictions would have been overturned.  *Id.*  Respondent claims that appellate counsels' failure to raise the claim on direct appeal was the result of winnowing out weaker arguments, and was not the product of ineffective assistance.  (Return of Writ, Doc. No. 17 at 124-26.)  In his traverse, Hasan explicitly denies seeking a decision on the merits of his claim and instead acknowledges that "only discovery can resolve the question of the prejudice of appellate counsel's [sic] performance."  (Traverse, Doc. No. 17 at 83-

-68-

84.)  In response to Hasan's actual motion for discovery in these habeas proceedings, this Court found the following regarding the instant claim:

> With respect to the Nineteenth Ground for Relief – the ineffective assistance of appellate counsel for failure to assign as error the fact that Petitioner was denied access to grand jury testimony of trial witnesses – this claim is wholly without merit.  Grand jury testimony is of course presumptively secret.  See Ohio R. Crim. Proc. 6(E).  When Petitioner sought the grand jury testimony in question, the trial judge indicated he would review it *in camera* for any inconsistent statements, which is an appropriate and relatively common way of preserving grand jury secrecy while protecting a criminal defendant's access to potentially important cross-examination material.  Petitioner's complaint is that the record does not affirmatively show that the *in camera* inspection happened.  Petitioner does not assert, however, that the record show[s] that the trial judge did not keep his promise to conduct an *in camera* inspection.  In other words, the record is silent.  Under those circumstances, the regularity of trial court proceedings is to be presumed.  *Walker v. Johnston*, 312 U.S. 275 (1941).  Appellate counsel can hardly be faulted for failing to plead an assignment of error that would have been without merit.  Because the Nineteenth Ground for Relief is therefore itself without merit, there is no good cause for granting discovery related to it.

(Doc. No. 37 at 9-10.)(Footnote and citation to record omitted.)  Hasan's subsequent renewed motion for discovery requested nothing pertaining to his nineteenth ground for relief.  (Doc. No. 72.)

As Hasan failed to demonstrate entitlement to discovery, and given his acknowledgment that he could only make out his claim *with* discovery, the nineteenth ground for relief remains meritless, and should be denied.

**Twentieth Ground for Relief**

In his twentieth ground for relief, Hasan contends he was denied effective assistance of trial counsel by the untimely and repeated replacements of his trial counsel at various times prior to his

trial, and by the trial court's insistence that the case go forward despite one trial counsel's admission that he was ill prepared to go to trial since he had been only recently appointed.  (Petition, Doc. No. 16 at 89-94.)  Respondent argues that nothing in the Ohio Supreme Court's decision on the merits of the claim is contrary to or an unreasonable application of federal law as determined by the United States Supreme Court.  (Return of Writ, Doc. No. 17 at 126-29.)  In his traverse, however, Hasan once again argues that this Court should only concern itself with his request for discovery respecting his claim.  (Traverse, Doc. No. 22 at 84.)  Hasan was granted discovery on this ground (Doc. No. 21 at 9-10; Doc. No. 37 at 13), and deposed his trial counsel (*See* Deposition of Timothy Smith, Esq., Doc. No. 58, Attachment 1).  As Hasan has now gathered up the fruit of his motion for discovery relating to the present ground, and since it has been properly preserved for habeas corpus review, the Court undertakes such review.

The problem with Hasan's argument is that it fails utterly to cite any federal law as determined by the United States Supreme Court (not even *Strickand*) with which the Ohio court's decision is in conflict.  In its decision, the Ohio Supreme Court observed that even where the state inadequately compensates trial counsel, fails to provide the amount and type of resources desired by trial counsel, houses a defendant far from his attorneys, or reappoints trial counsel shortly before trial, an appellant arguing that such events result in state-induced ineffective assistance of trial counsel must still meet the dual requirements of *Strickland*, 466 U.S. at 687.  *State v. Sanders*, 92 Ohio St. 3d 245, 275-76, 750 N.E.2d 90 (2001).  As noted in the state court's opinion, Hasan contended there that his claim falls under *United States v. Cronic*, 466 U.S. 648 (1984), which held that the "'complete denial of counsel . . . at a critical stage of [the] trial,' and the complete failure of counsel 'to subject the prosecution's case to meaningful adversarial testing'" is presumptively

prejudicial and relieves the appellant of the burden of showing prejudice. *Sanders*, 92 Ohio St. 3d at 277, *quoting Cronic*, 466 U.S. at 659. Hasan has not explained how the state court's decision was contrary to or an unreasonable application of *Strickland* or *Cronic*. Instead, he merely recites the factual underpinnings of his claim, leaving the Court to find and reason through the law for him. (Post-Smith Deposition Memorandum; Doc. No. 60 at 7-8.) This the Court will not do. In other words, whether Hasan's counsel were adequately compensated, whether they were provided adequate resources, whether Hasan was housed in a remote location are not the questions for this Court to answer. Rather, this Court may only consider whether the Ohio Supreme Court's decision with respect to those questions was contrary to or an unreasonable application of federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

Because Hasan has failed to identify the federal law applicable to his claim, and because he has not demonstrated how the Ohio Supreme Court's decision departs from that federal law, he has failed to establish his entitlement to habeas corpus relief on this ground. Accordingly, his twentieth ground for relief should be denied.

**Twenty-first Ground for Relief**

In his twenty-first ground for relief, Hasan contends his trial counsel were deficient in failing to object to a jury instruction that permitted the jury to return a guilty verdict on the aggravated murder offense without finding an essential element of the offense, that being the purpose to kill. (Petition, Doc. No. 16 at 94.) As Respondent notes, Hasan raised the issue in his sixth proposition of law on direct appeal to the Ohio Supreme Court (Appendix, Vol. 3-C at 61-67), and that court addressed its merits, *State v. Sanders*, 92 Ohio St. 3d 245, 275, 750 N.E.2d 90 (2001). It is thereby

preserved for habeas corpus review.

The instructions to which Hasan claims his trial counsel should have objected are as follows:

> When two or more people get together and they have a common purpose and that purpose is to commit a crime, and one of them does one thing and the other does something else, all of the people, whether it is two or more, all of the people acting together have the purpose required for that crime.
>
> That is what we call the law of complicity.  Very simply put, your finger does not have to be on the gun.
>
> However, the mere presence alone at the scene of a crime does not make one an aider and abettor.  Just being there is not enough.

(Trial Tr. at 5219.)  Hasan contends the instructions violated *Patterson v. New York*, 432 U.S. 197 (1977), and *Sandstrom v. Montana*, 442 U.S. 510 (1979), and that his trial counsels' failure to object to the faulty instructions violated *Strickland, supra*.

"Errors in jury instructions do not rise to the level of a constitutional violation unless the habeas petitioner can establish that the 'instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  *Buell v. Mitchell*, 274 F.3d 337, 365 (6th Cir. 2001), *quoting Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Scott v. Mitchell*, 209 F.3d 854, 872 (6th Cir. 2000).  Hasan's argues that the complicity instruction unconstitutionally shifted the burden of proof on the intent element of the aggravated murder offense to him because the trial court did not emphasize that intent is an essential element at the time the complicity instruction was given. (Traverse, Doc. No. 22 at 85-88.)

The Ohio Supreme Court has observed that "[a] charge of complicity may be stated in terms of the principal offense. R.C. 2923.03(F).  *See State v. Dotson* (1987), 35 Ohio App.3d 135, 520 N.E.2d 240, paragraph two of the syllabus."  *State v. Skatzes*, 104 Ohio St. 3d 195, 201, 819 N.E.2d

215 (2004).  Moreover, the Ohio Supreme Court and the vast majority of district courts of appeals in Ohio, including the Fourth District, whose law applied in Hasan's case, have determined that the instruction on complicity is appropriate where a defendant is indicted as a principal rather than under the complicity statute "[w]hen the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor."  *State v. Perryman*, 49 Ohio St. 2d 14, 358 N.E.2d 1040 (1976)(paragraph five of the syllabus), *vacated in part on other grounds Perryman v. Ohio*, 438 U.S. 911 (1978).  *See also State v. Tumbleson*, 105 Ohio App. 3d 693, 697, 664 N.E.2d 1318 (Ohio App. 12th Dist. 1995); *State v. Heier*, No. C-850093, 1985 WL 8853 at *2 (Ohio App. 1st Dist. Nov. 27, 1985); *State v. Davidson*, No. 9-2000-106, 2001 WL 688889 at *2 (Ohio App. 3d Dist. June 20, 2001); *State v. Allen*, No. 96CA2421, 1997 WL 691470 at *3 (Ohio App. 4th Dist. Nov. 7, 1997); *State v. Hamman*, No. H-98-015, 1999 WL 94581 at *7 (Ohio App. 6th Dist. Feb. 26, 1999); *State v. Perdue*, No. 90 CA 18, 1993 WL 546609 at *5 (Ohio App. 7th Dist. Dec. 30, 1993); *State v. Redding*, No. 59972, 1992 WL 41845 at *7 (Ohio App. 8th Dist. Mar. 5, 1992); *State v. McClelland*, No. 18807, 1998 WL 469908 at *2 (Ohio App. 9th Dist. Aug. 5, 1998); *State v. Barnes*, No. 04AP-1133, 2005 WL 1515325 at *7 (Ohio App. 10th Dist. June 28, 2005); *State v. Nichols*, No. 2005-L-017, 2006 WL 1585436 at *4 (Ohio App. 11th Dist. June 9, 2006).

In addition to the fact that state law does not support Hasan's claim that had his counsel objected to the complicity instruction at trial, it would have been sustained and that there is a reasonable probability that the outcome of his trial would have been different as a result, the jurors were repeatedly instructed that Hasan could not be found guilty of aggravated murder unless the state  proved beyond a reasonable doubt that he did so purposely.  (Trial Tr. at 5221, 5222, 5235, 5236, 5237, 5238, 5240, 5241, 5243, 5244, 5245, 5246, 5247.)

-73-

Hasan has not demonstrated how the Ohio Supreme Court's decision regarding the failure of his attorneys to object to the complicity instruction was contrary to or an unreasonable application of federal law as set forth by the United States Supreme Court in *Strickland*, *supra*. The instruction was consistent with Ohio law, and his attorneys were therefore not deficient in failing to object to the instruction, as the Ohio Supreme Court found. Nothing in the state court's resolution of Hasan's claim contradicted federal law. Therefore, Hasan's twenty-first ground for relief should be denied.

**Twenty-second Ground for Relief**

Hasan has withdrawn his twenty-second ground for relief (Traverse, Doc. No. 22 at 89), so no discussion of it is necessary.

**Twenty-third Ground for Relief**

Hasan has withdrawn his twenty-third ground for relief (Traverse, Doc. No. 22 at 89), so no discussion of it is necessary.

**Twenty-fourth Ground for Relief**

Hasan has withdrawn his twenty-fourth ground for relief (Traverse, Doc. No. 22 at 89), so no discussion of it is necessary.

**Twenty-fifth Ground for Relief**

Hasan has withdrawn his twenty-fifth ground for relief (Traverse, Doc. No. 22 at 89), so no discussion of it is necessary.

**Twenty-sixth Ground for Relief**

In his twenty-sixth ground for relief, Hasan contends that the trial court's exclusion of an expert's testimony during the mitigation phase of his trial deprived him of a fair sentencing proceeding, individualized sentencing, and due process of law as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. (Petition, Doc. No. 16 at 106-8.) Respondent acknowledges the claim's preservation for habeas corpus review, but argues it is meritless nonetheless. (Return of Writ, Doc. No. 17 at 185-87.)

In mitigation, Hasan sought to present the expert testimony of Joseph Rowan, a correctional and criminal justice consultant. After establishing the witness' extensive credentials and experience in his field, as well as his review of documents in the Lucasville cases, defense counsel asked Rowan what problems existed at the Lucasville prison prior to the riot. (Trial Tr. at 5320.) The prosecutor objected and after the jury was sent out of the courtroom, a lengthy discussion about the proposed testimony occurred. (Trial Tr. at 5320-39.) At its conclusion, the trial judge determined Rowan's proffered testimony was irrelevant, immaterial, and did not fit within the statutory mitigating factors. *Id*. He sustained the prosecutor's objection. *Id*. at 5339.

When Hasan raised the issue in the court of appeals on direct appeal, that court rejected his claim, finding, as the trial court had, that the proposed testimony was not relevant. *State v. Sanders*, No. C-960253, 1998 WL 212756 at *10 (Ohio App. 1st Dist. May 1, 1998). The Ohio Supreme Court, however, disagreed:

> In his second proposition of law, and in part D of his first proposition, Hasan argues that the trial court should have permitted him to introduce penalty-phase testimony on pre-riot "conditions" at SOCF to show the mental and emotional stress inflicted on inmates.

. . .

The defense argued that the riot's causes were relevant in mitigation because the state claimed that Hasan had started the riot. The defense wished to contradict that by showing that the inmates had intended *not* to riot but to stage "a short-lived demonstration in L-6," which "got out of control." The defense offered to show that prison conditions made SOCF "ripe for disturbance" that, once started, would inevitably become "uncontrollable." However, the trial court excluded Rowan's testimony, holding that the causes of the riot were "irrelevant" and "not a mitigating factor."

In our view, the trial court erred: Rowan's testimony was relevant mitigation. The Eighth Amendment allows a capital defendant to introduce "any aspect of [his] character or record and *any of the circumstances of the offense* that the defendant proffers as a basis for a sentence less than death." . . . _Lockett v. Ohio (1978), 438 U.S. 586, 604_. See, also, _State v. McGuire (1997), 80 Ohio St. 3d 390, 403, 686 N.E.2d 1112, 1122-1123_. R.C. 2929.04(B) also requires the sentencer to consider the "nature and circumstances of the offense."

Since Vallandingham's murder was a direct result of the riot, we think that the riot and its causes are "circumstances of the offense" and therefore relevant to mitigation. Hence, Hasan had a right to show in the penalty phase why the prisoners rioted. Additionally, the fact that Hasan may have acted in anger caused by [Tess Unwin's] statement is relevant mitigation.

It is true . . . that the causes and motivations of the riot do not justify or excuse the riot, much less the murders committed during the riot. Thus, the trial court quite properly excluded it from the *guilt* phase. But a court may not exclude relevant mitigation, as a matter of law, from the penalty phase on the ground that the asserted mitigating factor fails to justify or excuse the crime. _Eddings v. Oklahoma (1982), 455 U.S. 104, 113-114_.

This error does not require a new sentencing hearing, however. We have held that, when independently reviewing a death sentence pursuant to R.C. 2929.05(A), we may "consider proffered evidence that the jury was erroneously not allowed to consider." _State v. Williams (1996), 74 Ohio St.3d 569, 578, 660 N.E.2d 724, 733_. Thus, we can cure the trial court's error by considering Rowan's proffered testimony in our independent review.

-76-

*State v. Sanders*, 92 Ohio St. 3d 245, 266-67, 750 N.E.2d 90 (2001). Predictably, Hasan contests only that part of the Ohio Supreme Court's decision that determined the court's independent weighing of the aggravating circumstances and mitigating factors, including Rowan's proffered testimony, could cure the trial court's error in excluding the testimony. (Petition, Doc. No. 16 at 106-8; Traverse, Doc. No. 22 at 89-96.)

Hasan argues that *Hitchcock v. Dugger*, 481 U.S. 393 (1987), and *Williams v. Taylor*, 529 U.S. 362 (2000), state the governing law relevant to his claim. (Traverse, Doc. No. 22 at 91.) In *Hitchcock*, the issue was not whether mitigating evidence was erroneously excluded, but rather whether the trial judge's instruction precluding consideration by the jury of non-statutory mitigating factors warranted reversal. 481 U.S. at 398-99. The Court held that under such circumstances, and in the absence of a showing by the respondent that the error was harmless, the death sentence was rendered invalid. *Id.*

*Williams*, too, resulted in reversal of a death sentence. There, however, the failure to provide the jury with all relevant mitigation evidence was the fault of Williams' trial counsel, who the Court found had provided ineffective assistance during the mitigation phase of the trial. *Williams*, 529 U.S. at 397.[11] Hasan ignores, however, that in spite of having found that trial counsels'

---

[11]When considering whether a barrier to the sentencer's consideration of all mitigating evidence violates the federal constitution, the Supreme Court has noted that it is irrelevant whether the barrier is interposed by statute, the sentencing court, or by an evidentiary ruling. *Mills v. Maryland*, 486 U.S. 367, 375 (1988), *citing Lockett v. Ohio*, 438 U.S. 586 (1978); *Hitchcock v. Dugger*, 481 U.S. 393 (1987), and *Eddings v. Oklahoma*, 455 U.S. 104 (1982). After *Williams*, the list of barriers includes the ineffectiveness of counsel as well. 529 U.S. at 397. *Cf. State v. Sheppard*, No. 1:00-cv-00493, Report and Recommendations, Doc. No. 94 at 69-79 (S.D. Ohio June 1, 2004) stating:

The state supreme court did not find that Sheppard had not been prejudiced by the prosecutor's improper comments. Instead, it stated that its own independent reweighing of the aggravating circumstances against the mitigating factors cured any prejudice. Independent reweighing by a reviewing court, however, at least in the context of prosecutorial misconduct, does not cure the resulting prejudice. Instead, only curative admonishments, and in some cases jury instructions, have been acknowledged as remedies for prosecutorial misconduct in closing arguments. *See Greer v.*

incompetence had compromised the integrity of the sentencing hearing, the Supreme Court rejected the notion that the only remedy was vacation of the death sentence and a new hearing.  *Id*. at 397-98. Instead, the Court considered whether the state supreme court's independent weighing of the aggravating circumstances and mitigating factors, including the erroneously omitted mitigation evidence, had cured the error.  *Id*. at 398, *citing Clemons v. Mississippi*, 494 U.S. 738, 751-52 (1990).  *Clemons* held that reweighing and harmless error analysis by state appellate courts are constitutionally permissible remedies with which to cure errors occurring in the sentencing phase of a capital trial.  *Clemons*, 494 U.S. at 754.  In Williams' case, the Court found that "the [s]tate [s]upreme [c]ourt's prejudice determination was unreasonable insofar as it failed to evaluate the totality of the available mitigation evidence – both that adduced at trial, and the evidence adduced in the habeas proceeding in reweighing it against the evidence in aggravation."  *Williams*, 529 U.S. at 397-98.  The constitutional flaw, therefore, was not that the state supreme court reweighed the aggravating circumstances and mitigating factors as a remedy for error in the sentencing phase, but

---

*Miller*, 483 U.S. 756, 765-67 (1987); *Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974); *Frazier v. Huffman*, 343 F.3d 780, 792-93 (6th Cir. 2003); *United States v. Galloway*, 316 F.3d 624, 633 (6th Cir. 2003); *Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002); *United States v. Emuegbunam*, 268 F.3d 377, 405-6 (6th Cir. 2001); *United States v. Tocco*, 200 F.3d 401, 421-23 (6th Cir. 2000).  Thus, the Ohio Supreme Court appears to have propelled the holding of *Clemons v. Mississippi*, 494 U.S. 738 (1990) – that a jury's consideration of an invalid aggravating circumstance may be deemed harmless error after reweighing by a reviewing court – into the prosecutorial misconduct context.  Moreover, it has been noted that in Ohio:

> [T]he jury has the power to spare the capital defendant's life, a power which no court can override.  Anyone familiar with the imposition of the death penalty in Ohio realizes that the jury's power is vital to a capital defendant.  This Court could locate no decisions in which the trial court or the intermediate appellate court, after re-weighing the aggravating circumstances and mitigating factors, concluded that the jury erroneously imposed the death penalty.  The Ohio Supreme Court has on only two occasions reversed the imposition of the death penalty on the basis that the state had failed to prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating factors.  *State v. Claytor*, 61 Ohio St. 3d 234, 574 N.E.2d 472 (1991); *State v. Lawrence*, 44 Ohio St. 3d 24, 541 N.E.2d 451 (1989).

*Lawson v. Warden, Mansfield Corr. Inst.*, 197 F. Supp. 2d 1072, 1086 (S.D. Ohio 2002).

rather that it did not truly reweigh all the evidence available.

Hasan also makes the argument that by enacting its capital sentencing statutory scheme, Ohio has created for capitally charged individuals a liberty interest in the jury's weighing of aggravating circumstances and mitigating factors, and that in deviating from that scheme by permitting appellate reweighing to correct the error committed in his case, the Ohio courts have violated Hasan's liberty interest. (Petition, Doc. No. 16 at 91-95.) In *Clemons*, however, the Supreme Court observed as follows:

> Clemons argues that under Mississippi law only a jury has the authority to impose a death sentence, *see* Miss.Code Ann. § 99-19-101 (Supp.1989), and that he therefore has a liberty interest under the Due Process Clause of the Fourteenth Amendment in having a jury make all determinations relevant to his sentence. He therefore argues that an appellate court cannot reweigh the balance of factors when the jury has found and relied on an invalid aggravating circumstance. Capital sentencing proceedings must of course satisfy the dictates of the Due Process Clause, *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977) (plurality opinion), and we have recognized that when state law creates for a defendant a liberty interest in having a jury make particular findings, speculative appellate findings will not suffice to protect that entitlement for due process purposes. *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). However, these two general propositions do not lead to the result Clemons seeks.

> In *Hicks v. Oklahoma*, sentence had been imposed under an invalid recidivist statute that provided for a mandatory 40-year sentence. The Oklahoma Court of Criminal Appeals affirmed the sentence because it was within the range of possible sentences the jury validly could have imposed. Hicks claimed, and the State conceded, that in Oklahoma only the jury could impose sentence. We held that under state law Hicks had a liberty interest in having the jury impose punishment, an interest that could not be overcome by the "frail conjecture" that the jury "might" have imposed the same sentence in the absence of the recidivist statute. *Id*., at 346, 100 S.Ct. at 2229. We specifically pointed out, however, that the Oklahoma Court of Criminal Appeals did not "purport to cure the deprivation by itself

reconsidering the appropriateness" of the 40-year sentence, *id*., at 347, 100 S.Ct. at 2230 (footnote omitted), thus suggesting that appellate sentencing, if properly conducted, would not violate due process of law.

Contrary to the situation in *Hicks*, the state court in this case, as it had in others, asserted its authority under Mississippi law to decide for itself whether the death sentence was to be affirmed even though one of the two aggravating circumstances on which the jury had relied should not have been, or was improperly, presented to the jury.  The court did not consider itself bound in such circumstances to vacate the death sentence and to remand for a new sentencing proceeding before a jury.  We have no basis for disputing this interpretation of state law, which was considered by the court below to be distinct from its asserted authority to affirm the sentence on the ground of harmless error, and which plainly means that we must reject Clemons' assertion that he had an unqualified liberty interest under the Due Process Clause to have the jury assess the consequence of the invalidation of one of the aggravating circumstances on which it had been instructed.  In this respect, the case is analogous to *Cabana v. Bullock*, [474 U.S. 376 (1986), *overruled in part on other grounds*, *Pope v. Illinois*, 481 U.S. 497, 503 n. 7 (1987)], where we specifically rejected a due process challenge based on *Hicks* because state law created no entitlement to have a jury make findings that an appellate court also could make.  474 U.S., at 387, and n. 4, 106 S.Ct., at 697, and n. 4.

*Clemons v. Mississippi*, 494 U.S. 738, 746-47 (1990).  As in *Clemons*, the court in Hasan's case relied on state law in conducting its reweighing of the aggravating circumstances and mitigating factors, *State v. Sanders*, 92 Ohio St. 3d 245, 279-81, 750 N.E.2d 90 (2001), a fact Hasan acknowledges in his traverse.  (Doc. No. 22 at 91.)  Consequently, Hasan is in the same position as Clemons, and his argument that the violation of his state-created liberty interest in the jury's weighing of the aggravating circumstances and mitigating factors entitles him to a new penalty hearing fails.

Hasan has not demonstrated how the Ohio Supreme Court's resolution of his claim was contrary to or an unreasonable application of the federal law discussed above.  See 28 U.S.C. §

2254(d)(1).  While he accurately states the law articulated in *Hitchcock*, he does so less fully respecting *Williams*, and he completely ignores *Clemons* and its impact on the issue.  Accordingly, Hasan's twenty-sixth ground for relief should be denied.

**Twenty-seventh Ground for Relief**

In his twenty-seventh ground for relief, Hasan contends the trial court erred in failing to consider relevant mitigating evidence, and concomitantly inappropriately relied upon non-statutory aggravating circumstances in its independent weighing of the aggravating circumstances and mitigating factors.  (Petition, Doc. No. 16 at 108.)  Respondent acknowledges the claim is preserved for habeas corpus review, but argues it is meritless.  (Return of Writ, Doc, No. 17 at 188-89.)

Hasan argues that the trial court failed to consider relevant mitigation evidence.  (Traverse, Doc. No. 22 at 97-100.)  He details a litany of incidents and circumstances of his life that were not explicitly included in the trial court's sentencing opinion, *id*. at 98-100, and that there is nothing in the sentencing opinion indicating that the trial court considered the evidence he cites (Traverse, Doc. No. 22 at 100).  Hasan also contends the trial court considered invalid, non-statutory aggravating circumstances in its sentencing opinion, (Traverse, Doc. No. 22 at 100-2), and that the state appellate and supreme courts failed to legitimately reweigh the aggravating circumstances and mitigating factors in their independent sentencing analyses, *id*. at 102-4.  He suggests that the Ohio Supreme Court instead improperly speculated as to what mitigating evidence the trial court had considered. *Id*. at 103-4.

Even assuming Hasan's complaints respecting the trial court's sentencing opinion are valid, his claim still fails.  In arguing that the Ohio Supreme Court's reweighing was deficient and

incapable of curing the alleged error by the trial court, Hasan contends that the statutory scheme in Ohio creates for him a liberty interest in having the trial court independently weigh the evidence relevant to the sentencing decision.  (Traverse, Doc. No. 22 at 104.)  He makes the conclusory statement that because he possesses such a liberty interest, appellate reweighing that depends upon speculation as to what the trial court would have found had it considered all the evidence cannot cure the alleged error.  *Id*.  Hasan again cites *Eddings v. Oklahoma*, 455 U.S. 104 (1982), in contending that the only remedy available to the state appellate courts upon review of his death sentence was a remand for a new sentencing hearing.  (Traverse, Doc. No. 22 at 103-4.)  But as noted with respect to the twenty-sixth ground for relief, *Clemons v. Mississippi*, 494 U.S. 738 (1990), permits states to provide for appellate reweighing or harmless error review to correct errors occurring in a capital sentencing hearing.  Such mechanisms inherently allow, nay direct, a reviewing court to conduct a weighing of the relevant circumstances and factors.  In that sense, use of the term "reweighing" is a misnomer.  It is really original and independent weighing of the evidence.  Hasan's use of the term "speculate," then, is pejorative, and nothing in the terminology or tone of the Ohio Supreme Court's independent sentencing analysis suggests the court did anything like what Hasan alleges.  *See State v. Sanders*, 92 Ohio St. 3d 245, 280-81, 750 N.E.2d 90 (2001).

Since *Clemons* specifically authorizes the error-correcting review provided to Hasan by the Ohio Supreme Court, and Hasan points to no law that undoes that holding, the state court's decision is not contrary to or an unreasonable application of federal law as determined by the United States Supreme Court.  *Clemons*, 494 U.S. at 754; 28 U.S.C. § 2254(d)(1).  Moreover, *Clemons* does not provide an exemption from such review simply because the constitutional right alleged to have been

violated is a liberty interest, as Hasan seems to suggest.  (*See* Traverse, Doc. No. 22 at 104-5.)  For these reasons, Hasan has not demonstrated entitlement to habeas corpus relief, and his twenty-seventh ground for relief should be denied.


**Twenty-eighth Ground for Relief**

In his twenty-eighth ground for relief, Hasan contends his trial counsel were ineffective in not objecting to faulty penalty phase jury instructions.  (Petition, Doc. No. 16 at 111-13.) Respondent acknowledges that the Ohio Supreme Court addressed the issue on its merits when Hasan raised it on direct appeal in that court, and that the claim is preserved for habeas corpus review as a result, but that it is meritless.  (Return of Writ, Doc. No. 17 at 129-30);*State v. Sanders*, 92 Ohio St. 3d 245, 275, 750 N.E.2d 90 (2001).

The portions of the jury instructions to which Hasan argues his attorneys should have objected are as follows:

> What are mitigating factors?  Well, mitigating factors are factors that while they do not justify or excuse the crime nevertheless in fairness and mercy may be considered by you as lessening or reducing the degree of Mr. Hasan's blame or punishment.

> The law lists potential mitigating factors, and I am going to give you those potential mitigating factors.  It is up to you to make the determination whether any one or more of those actually exist in this case.

> One of them is whether or not it is unlikely that the murder of Robert Vallandingham would have been committed but for the fact that Mr. Hasan was under duress, coercion, or strong provocation.

> The second potential mitigating factor is the degree of Mr. Hasan's participation in the murder of Robert Vallandingham and the degree of his participation in the acts that led up to the murder of Robert Vallandingham.

And the third is any other factors that are relevant to the issue of whether or not the defendant should be sentenced to death.

So those are the three potential mitigating factors. It is up to you to determine whether or not they do exist.

The mere presence of one or more of these mitigating factors, if you find they do exist in this case, does not in and of itself prevent the death penalty, if you also find beyond a reasonable doubt that the aggravating circumstances of this murder still outweigh the mitigating factor or factors which you may find to be present.

. . .

If the facts and the law warrant a recommendation for the death penalty, then it is your duty to make that finding uninfluenced by your power to recommend a lesser penalty.

The reason why you have these lesser penalties, life with 20 or life with 30, is not given to you to relieve you from the performance of an unpleasant duty. They're included if the evidence fails to prove to that degree which we require that the aggravating circumstances of the crime outweigh the mitigating factor or factors which you find to exist.

(Trial Tr. at 5582-83, 5586.) Hasan contends those instructions conflated the penalty phase with an assessment of guilt; failed to inform the jury that Hasan's history, character, and background were to be considered for any mitigatory value they may have; insinuated that the jury must unanimously find the existence of any mitigating factor or factors; indicated that "the life sentences were lesser-included offenses [sic] of the death option"; and unfairly discouraged the jurors from the "unpleasant duty" of imposing the death sentence. (Traverse, Doc. No. 22 at 136-37.) He implicitly contends his attorneys' performance was deficient because they failed to object to the quoted passages. In his brief filed after having taken the deposition of Hasan's trial counsel Timothy Smith, Hasan argues that Smith indicated there was no tactical reason for counsels' failure to object to the instructions at trial. (Doc. No. 60 at 8-9.) The Court observes that Smith did so respecting some

-84-

of the complained-of instructions, expressed no recollection as to some of them, and never answered whether there existed a tactical reason for not objecting concerning at least one part of the instructions.  (Doc. No. 58, Exhibit 2 at 80-83.)  What is conspicuously missing from Hasan's argument is any suggestion that Hasan suffered prejudice as a result of his attorneys' silence during the jury instructions.

The burden on a federal habeas corpus petitioner alleging ineffective assistance of trial counsel is heavy.  Not only must he demonstrate attorney error and prejudice flowing therefrom, he must also establish that the state courts' resolution of the claim is contrary to or an unreasonable application of federal law as determined by the United States Supreme Court.  *Strickland*, *supra*; 28 U.S.C. § 2254(d)(1).  Thus, even if trial counsel's admission ten or more years after a trial establishes that there was no tactical or strategic basis for the attorney's failure to object to jury instructions could establish attorney error, there remain significant obstacles to habeas corpus relief.  Hasan has *alleged*, but has not *demonstrated* prejudice from the instructions he claims were improper.  (Petition, Doc. No. 16 at 111-112; Traverse, Doc. No. 22 at 106-8.)  Furthermore, even if he had demonstrated prejudice, the Ohio Supreme Court's independent weighing of the aggravating circumstances and mitigating factors, in which it fully considered and gave some weight to Hasan's history, character, and background, *State v. Sanders*, 92 Ohio St. 3d 245, 279-81, 750 N.E.2d 90 (2001), likely cured the prejudice, *see Clemons*, *supra*.

Hasan has not demonstrated how his trial counsels' failure to object to the mitigation phase jury instructions was contrary to or an unreasonable application of *Strickland*, which is the governing law respecting the instant claim.  Consequently, his twenty-eighth ground for relief should be denied.

-85-

**Twenty-ninth Ground for Relief**

In his twenty-ninth ground for relief, Hasan claims his trial counsel were ineffective in failing to object to a jury instruction that required unanimous rejection of the death penalty prior to the jury's consideration of a life sentence option. (Petition, Doc. No. 16 at 113-16.) Respondent argues the claim is without merit, foregoing a procedural default defense. (Return of Writ, Doc. No. 17 at 129-30; 139-40.)

Hasan's claim is a familiar one to this Court. *See Palmer v. Bagley*, No. 1:00-cv-00882, Report and Recommendations, Doc. No. 103 at 75-79 (S.D. Ohio Dec. 16, 2005); *Fears v. Bagley*, No. 1:01-cv-00183, Report and Recommendations, Doc. No. 114 at 43-49 (S.D. Ohio Nov. 8, 2005); *Sheppard v. Bagley*, No. 1:00-cv-00493, Report and Recommendations, Doc. No. 94 at 41-52 (S.D. Ohio June 1, 2004). The jury instructions in Hasan's case, and his argument here are virtually indistinguishable in substance from those in the cases cited. There, this Court concluded that a trio of Sixth Circuit cases, *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998), *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), and *Roe v. Baker*, 316 F.3d 557 (6th Cir. 2002), establish that the requirement that a verdict be unanimous does not violate the federal law articulated in *Mills v. Maryland*, 486 U.S. 367 (1988) and *McKoy v. North Carolina*, 494 U.S. 433 (1990). In those cases, the United States Supreme Court distinguished between an instruction requiring jurors to be unanimous in their verdict from an instruction requiring unanimity in the finding of any particular mitigating factor. *See*, *e.g.*, *Mills*, 486 U.S. at 373-75. Hasan does not contend that the jurors in his case were instructed that existence of any mitigating factor must be unanimously found, only that they were instructed that any life sentence verdict must be unanimous (Petition, Doc. No. 16 at 113-16), a correct statement of Ohio law, Ohio Rev. Code § 2929.03(D)(2). Thus, the instructions did not

contradict the holdings of *Mills* or *McKoy*.  Furthermore, Hasan's counsel cannot have been ineffective by failing to object when the objection would have been overruled.  Accordingly, and for the reasons more fully stated in *Palmer*, *Fears*, and *Sheppard*, Hasan's twenty-ninth ground for relief should be denied.

**Thirtieth Ground for Relief**

In his thirtieth ground for relief, Hasan contends that the trial judge improperly emphasized that the jury's sentencing recommendation was just that, a recommendation.  (Petition, Doc. No. 16 at 116-18.)  Respondent counters that the claim is both procedurally defaulted and meritless.  (Return of Writ, Doc. No. 17 at 189-194.)

In rejecting the issue when Hasan raised it in the Ohio Supreme Court on direct appeal, the state court held as follows:

> In his twenty-sixth proposition, Hasan complains that the trial court instructed the jury that "[i]f the facts and the law warrant a recommendation for the death penalty, then it is your duty to make that finding uninfluenced by your power to recommend a lesser penalty."  Hasan argues that this instruction was erroneous because it can never be the jury's duty to recommend death.  Since he did not raise that objection at trial, the issue is waived absent plain error.
>
> However, R.C. 2929.03(D)(2) provides that, if the jury finds, unanimously and beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating factors, the jury "shall recommend * * * that the sentence of death be imposed."  (Emphasis added.) *See* <u>State v. Allen</u> (1995), 73 Ohio St. 3d 626, 638-639, 653 N.E.2d 675, 687.  Hence, we cannot find that the trial court committed plain error as to this issue.

*State v. Sanders*, 92 Ohio St. 3d 245, 269, 750 N.E.2d 90 (2001).

As previously noted, Ohio's rule requiring a contemporaneous objection to trial errors is an

independent and adequate state procedural rule, *Scott v. Mitchell*, 209 F.3d 854, 867-68 (6th Cir. 2000), *citing Engle v. Isaac*, 456 U.S. 107, 124-29 (1982), and a state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default), *accord, Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003). Since Ohio's contemporaneous objection rule is an independent and adequate state procedural rule, and was enforced against Hasan in this instance, the instant claim is procedurally defaulted unless Hasan shows cause and prejudice for his failure to raise an objection to the allegedly improper jury instructions.

As in his seventeenth ground for relief, above, Hasan argues that the ineffectiveness of his trial counsel provide the cause for his default. (Traverse, Doc. No. 22 at 112-13.) Hasan notes that he raised his trial counsels' ineffectiveness for not objecting to the relevant instructions on direct appeal to the Ohio Supreme Court, and that the ineffective assistance of his counsel is therefore preserved for habeas review, and consequently establishes cause for his default. *Id.* (*See also* Appendix, Vol. 3-C at 134.) The state supreme court rejected the ineffectiveness claim, noting that it was not supported by existing law at the time of the trial and that counsel had "no duty to press 'untested or rejected legal theories.'" *State v. Sanders*, 92 Ohio St. 3d 245, 275, 750 N.E.2d 90 (2001). Once again, however, Hasan has not raised his counsels' ineffectiveness for their failure to object to the "recommendation" jury instructions as a ground for relief in these habeas proceedings. As was stated in the Court's discussion of Hasan's seventeenth ground for relief, it would be highly improper for this court to consider Hasan's trial counsels' effectiveness absent a claim alleging unprofessional error on their part, especially in light of the state supreme court's finding that trial

-88-

counsels' performance was completely within the bounds of professional standards. Thus, Hasan has not demonstrated cause and prejudice for his procedural default of his jury instruction claim, and it should be denied.

Even if the claim had been preserved, however, it would fail. Ohio law requires the jury to determine whether the aggravating circumstances outweigh the mitigating factors after the sentencing phase of trial, then to make a sentencing recommendation to the trial court. Ohio Rev. Code § 2929.03 (C)(2)(b)(ii) and (D)(2). If the jury recommends a sentence other than death, the trial court is bound by the jury's recommendation; if the jury recommends death, however, the trial court must undertake an independent weighing of the aggravating circumstances and mitigating factors and come to its own conclusion as to whether death is the appropriate sentence. Ohio Rev. Code § 2929.03(D)(2)(b) and (D)(3). In other words, the trial court is not bound by the jury's recommendation that the death sentence be imposed, and there is no guarantee under the law that the jury's recommendation of death will be the sentence imposed.

Hasan contends the jury instructions given in his case violate *Caldwell v. Mississippi*, 472 U.S. 320 (1985), where the United States Supreme Court held it was constitutionally impermissible to diminish the jury's role in capital sentencing by leading jurors to believe that the final decision as to the sentence would rest with an appellate court. *Id*. at 328-29. In *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001), the Sixth Circuit Court of Appeals considered *Caldwell* and its impact on Ohio law as follows:

> In decisions subsequent to *Caldwell*, the Supreme Court has reiterated that "[t]o establish a *Caldwell* violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law." *Dugger v. Adams*, 489 U.S. 401, 407 (1989); *see also Scott*, 209 F.3d [854,] . . . 877 [(2000)]. Unlike in *Caldwell*, where the jury was given the

> uncorrected impression that the appellate courts would make the final decision on the imposition of a death sentence, not merely review the appropriateness of the jury's decision to impose a death sentence, Buell has not demonstrated that the instructions at his trial improperly described the role assigned to the jury by local law.  In instructing the jury that they are to make a recommendation as to a death sentence, and that the final decision regarding imposition of a death sentence rests with the trial court, the jury instruction complied with the letter of Ohio law and described with complete accuracy the jury's role in the sentencing process.  By doing so, the jury's sense of responsibility was not diminished.  Therefore, this claim must fail.

*Buell*, 274 F.3d at 353.  For the same reasons expressed by the Sixth Circuit, Hasan's claim that his jury instructions characterizing the jury's sentencing recommendation as a recommendation would fail, had it been preserved for habeas review.

For the foregoing reasons, the Magistrate Judge recommends that Hasan's thirtieth ground for relief be denied.


**Thirty-first Ground for Relief**

In his thirty-first ground for relief, Hasan argues his trial counsel were ineffective during the mitigation phase of his trial because they failed to conduct a proper investigation and failed to present valuable mitigation evidence.  (Petition, Doc. No. 16 at 119-22.)  Respondent contends the claim is procedurally defaulted since it was rejected in the state courts on the basis of an independent and adequate state procedural rule that was enforced against Hasan.  (Return of Writ, Doc. No. 17 at 140-41.)  Hasan argues his actual innocence of the crime provides a gateway through which this Court may address the merits of his concededly defaulted claim.  (Traverse, Doc. No. 22 at 115-16.)

Hasan provides little support for his claim of actual innocence relating to his death sentence. (Traverse, Doc. No. 22 at 115-16.)  Instead, he refers the Court to arguments made in his eighth and

ninth grounds for relief respecting his claimed actual innocence of the offenses themselves.  *Id*.  In

*Sawyer v. Whitley*, 505 U.S. 333 (1992),[12] the United States Supreme Court acknowledged the

increased difficulty in formulating the meaning of "actual innocence" in the context of capital

sentencing.  *Id*. at 340-41.

> The present case requires us to further amplify the meaning of "actual
> innocence" in the setting of capital punishment.  A prototypical
> example of "actual innocence" in a colloquial sense is the case where
> the State has convicted the wrong person of the crime.  Such claims
> are of course regularly made on motions for a new trial after
> conviction in both state and federal courts, and quite regularly denied
> because the evidence adduced in support of them fails to meet the
> rigorous standards for granting such motions.  But in rare instances
> it may turn out later, for example, that another person has credibly
> confessed to the crime, and it is evident that the law has made a
> mistake.  In the context of a noncapital case, the concept of "actual
> innocence" is easy to grasp.
>
> It is more difficult to develop an analogous framework when dealing
> with a defendant who has been sentenced to death.  The phrase
> "innocent of death" is not a natural usage of those words, but we
> must strive to construct an analog to the simpler situation represented
> by the case of a noncapital defendant.  In defining this analog, we
> bear in mind that the exception for "actual innocence" is a very
> narrow exception, and that to make it workable it must be subject to
> determination by relatively objective standards.

*Id*.  After considering and rejecting both the state's and the petitioner's proposed standards for an

actual innocence claim in the capital sentencing context, the Supreme Court held that a petitioner

must show "by clear and convincing evidence that but for constitutional error, no reasonable juror

would find him eligible for the death penalty" under the relevant state law.  *Sawyer*, 505 U.S. at 348.

Hasan makes no such argument under either the instant ground for relief or his eighth or ninth

grounds.  Regardless, even considering Hasan's more developed guilt-phase actual innocence

---

[12]Although *Sawyer* governs claims of actual innocence concerning capital sentencing, Hasan never
mentions the case.

arguments in his eighth and ninth grounds for relief, it relies on less-than-convincing "evidence" as was noted in the Court's discussion of those claims.  Recall, too, that Hasan abandoned his motion for an evidentiary hearing here by failing to file a renewed motion within the time allotted by the Court after his initial request was denied without prejudice.  (*See* Doc. No. 37.)  Consequently, this Court has no basis upon which to conclude that Hasan has provided the quality of evidence required to open the actual innocence gateway to enable consideration of his ineffective assistance of counsel claim.  Hasan has failed to demonstrate that no reasonable juror would have found him eligible for the death penalty under Ohio law, as is required to open the actual innocence gateway under *Sawyer*. Thus, Hasan's thirty-first ground for relief is procedurally defaulted with no excuse to permit this Court's consideration of the merits of the claim.  Accordingly, the Magistrate Judge recommends denial of Hasan's thirty-first ground for relief.

**Thirty-second Ground for Relief**

Hasan has withdrawn his thirty-second ground for relief, but because he also attempts to amend his claim, and thus his petition, in his traverse, some discussion by the Court is warranted. (Traverse, Doc. No. 22 at 128-29.)

In his petition, Hasan's thirty-second ground for relief is couched in terms of an ineffective assistance of trial counsel claim, alleging his trial counsel caused him prejudice when they failed to object to victim Robert Vallandingham's mother's statements to the alleged effect that she believed Hasan should be put to death.  (Petition, Doc. No. 16 at 122.)  Respondent argued the claim was procedurally defaulted as it had never been raised in the state courts (Return of Writ, Doc. No. 17 at 144-45), and Hasan concedes as much (Traverse, Doc. No. 22 at 128-29).  In a peculiar move,

Hasan contends he argued both the merits of the underlying claim and his counsels' ineffectiveness in his petition, and that although he wished to withdraw the ineffective assistance claim, he still wants to assert as error the trial court's consideration of the improper opinion evidence.  (Traverse, Doc. No. 22 at 129.)

First, although Hasan did contend the opinion evidence was improper in his argument that his counsel were ineffective, that surely does not "raise" the underlying claim for purposes of habeas corpus review.  *See* Rules Governing Section 2254 Cases, Rule 2(b).  Changing the very nature of a claim from one alleging ineffectiveness of one's counsel to one claiming trial court error is an amendment of the claim, and thus the petition.  Rule 15 of the Federal Rules of Civil Procedure is applicable in habeas corpus cases, and governs amendment of petitions.  *Mayle v. Felix*, ___ U.S. ___, 125 S.Ct. 2562, 2569 (2005).  Thus, amendment of a habeas petition after Respondent has filed a return of writ is permitted only with leave of court, which Hasan has not requested.  Fed. R. Civ. Proc. 15(a).  A traverse is decidedly not an appropriate vehicle for amendment of a habeas petition.  *See* Rules Governing Section 2254 Cases, Rule 5(e).

That Hasan has withdrawn the claim asserted in his petition, and has not sought to amend his petition through proper channels leaves this Court with nothing to address with respect to Hasan's thirty-second ground for relief.  The claim should be denied on that basis.

Even if Hasan were to seek amendment of his petition at this late date, however, the claim would fail.  First, Mrs. Vallandingham's statement about what she believed would be proper punishment for Hasan was not evidence because she was not under oath; her statement was merely a statement.  (Trial Tr. at 5604.)  Second, Mrs. Vallandingham's comment was that she and some other unidentified individuals had spoken to "several senators," and that they were going to try to

get legislation passed that would place the murder of a correctional officer on the same footing as the murder of a police officer, which Mrs. Vallandingham believed meant the death penalty would be automatic for killers of either.  (Trial Tr. at 5611.)  She did not express any sentiment that she believed Hasan himself deserved the death penalty, only that she intended to attempt to change the law applicable to others who might murder correctional officers in the future.  *Id*.  Third, Mrs. Vallandingham's comments were delivered to the court *after* the jury had recommended death for Hasan, at the hearing at which the court imposed a sentence of death in accordance with the jury's recommendation.  *Id*.  Absent any mention of Mrs. Vallandingham's comments, which again were not evidence, in the trial court's oral list of factors considered during its imposition of the death sentence (Trial Tr. at 5614), and in its written sentencing opinion (Appendix, Vol. 1-B at 341-44), this Court will not assume the trial court considered Mrs. Vallandingham's statement in arriving at its sentencing decision.  For all of these reasons, Hasan's claim would fail even if he requested and were granted leave to amend his petition to include the claim.

Hasan's thirty-second ground for relief has been withdrawn, so it warrants no further discussion.

**Thirty-third Ground for Relief**

In his thirty-third ground for relief, Hasan contends that prosecutorial misconduct infected his sentencing hearing in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  (Petition, Doc. No. 16 at 123-26.)  Respondent argues the claim is procedurally defaulted due to the Ohio Supreme Court's resort on direct appeal to plain error analysis and rejection of the claim as having been waived.  (Return of Writ, Doc. No. 17 at 180-83.)  Hasan

acknowledges the default, but contends his counsels' ineffectiveness in failing to object to the prosecutor's conduct provides cause for the default and that he was prejudiced therefrom. (Traverse, Doc. No. 22 at 131-32.)

In the Ohio Supreme Court, Hasan did indeed argue his counsel were ineffective in failing to object to prosecutorial misconduct. (Appendix, Vol. 3-C at 126.) The court rejected the claim holding that defense counsels' failure to object was tactical and that Hasan had demonstrated neither attorney error nor prejudice. *State v. Sanders*, 92 Ohio St. 3d 245, 274-75, 750 N.E.2d 90 (2001). Moreover, Hasan has not raised his attorneys' ineffectiveness based on their failure to object to penalty phase prosecutorial misconduct as a ground for relief in these habeas proceedings. Thus, Hasan's contention that his counsels' ineffectiveness excuses his procedural default here suffers the same fate as it did when it was presented in his seventeenth and thirtieth grounds for relief for the reasons stated there.

Hasan's prosecutorial misconduct claim is procedurally defaulted and he has not demonstrated cause and prejudice to excuse the default. Accordingly, Hasan's thirty-third ground for relief should be denied.

**Thirty-fourth Ground for Relief**

Hasan has withdrawn his thirty-fourth ground for relief (Traverse, Doc. No. 22 at 138), so no discussion of it is necessary.

**Thirty-fifth Ground for Relief**

In his thirty-fifth ground for relief, Hasan claims the cumulation of the errors contained in

his first through thirty-fourth grounds for relief deprived him of a fair trial and sentence.  (Petition, Doc. No. 16 at 126.)  Respondent argues that there is no United States Supreme Court case establishing that errors unentitled to habeas relief on their own can cumulate to compromise the fairness of a trial.  (Return of Writ, Doc. No. 17 at 196.)  In addition, Respondent asserts that any claims found to have been procedurally defaulted cannot be added to the cumulative error equation, and that there were no errors to cumulate anyway.  *Id*. at 197.

Hasan rests his argument on *Brecht v. Abrahamson*, 507 U.S. 619 (1993), where the Court decided which of two harmless-error standards applied to claims brought under 28 U.S.C. § 2254, the standard announced in *Chapman v. California*, 386 U.S. 18, 24 (1967), or the one articulated in *Kotteakos v. United States*, 328 U.S. 750, 776 (1946).  *Brecht*, 507 U.S. at 622-23.  Hasan cites *Brecht* for the proposition that a federal court "must consider the entirety of the record to determine if there is a substantial injurious effect."  (Traverse, Doc. No. 22 at 138.)  But what that statement means in *Brecht* is that once federal constitutional error has been detected in habeas review of a state trial, harmless error analysis demands that the prejudice, if any, from the error be evaluated in light of the entire record.  In fact, the word "cumulate" and any of its derivatives appear in *Brecht* only in the Court's comparison of the state's references during trial to the defendant's pre-*Miranda* warning statements, and his post-*Miranda* warning statements.  The Court observed that the prohibited references to the defendant's post-*Miranda* statements were cumulative to the permissible references to his pre-*Miranda* statements.  *Brecht*, 507 U.S. at 639.  None of this, of course, has anything to do with the claim Hasan advances.  Hasan does not direct the Court's attention to any "clearly established federal law as determined by the United States Supreme Court" on point, and the Court finds none in its own research.  Moreover, having found no error in Hasan's first through

thirty-fourth grounds for relief, there is nothing to cumulate in the thirty-fifth.  Accordingly, and for

the reasons stated, Hasan's thirty-fifth ground for relief should be denied.


### CONCLUSION

Having found no error entitling Hasan to habeas corpus relief, the Magistrate Judge

respectfully recommends that Hasan's petition for a writ of habeas corpus be denied.



August 14, 2006.

s/ Michael R. Merz
Chief United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written
objections to the proposed findings and recommendations within ten days after being served with
this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically
extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because
this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C),
or (D) and may be extended further by the Court on timely motion for an extension.  Such objections
shall specify the portions of the Report objected to and shall be accompanied by a memorandum of
law in support of the objections.  If the Report and Recommendations are based in whole or in part
upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for
the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate
Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond
to another party's objections within ten days after being served with a copy thereof.  Failure to make
objections in accordance with this procedure may forfeit rights on appeal.  *See United States v.
Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d
435 (1985).

J:\Death Penalty\Hasan(Sanders)\Hasan R&R.wpd