# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SIDDIQUE ABDULLAH HASAN,
  fka Carlos Sanders

                                :

          Petitioner,                     Case No. 1:03-cv-288

                                :       Chief Judge Susan J. Dlott
      -vs-                                 Magistrate Judge Michael R. Merz

TODD ISHEE, Warden,

                                :

          Respondent.

---

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

This capital habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 91) to the Magistrate Judge's Report and Recommendations (Doc. No. 81; "R&R")) recommending that the Petition be denied. The case was expressly recommitted to the Magistrate Judge by Judge Dlott pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1) "to reconsider the Report and Recommendations in light of Petitioner's Objections and any other matter properly filed in that regard" (Recommittal Order, Doc. No. 100).

In addition to Hasan's Objections, the Court has before it the Amicus Curiae Brief of the American Civil Liberties Union Foundation of Ohio, Inc. (Attachment 1 to Doc. No. 84), the Warden's combined Response to the Objections and the Amicus Curiae Brief (Doc. No. 102), Petitioner's Motion for Leave to File a Reply (Doc. No. 105), Petitioner's Brief (Doc. No. 110) and Supplemental Memorandum (Doc. No. 111), the Warden's Reply to these two items (Doc. No. 112),

-1-

Petitioner's Notice of Additional Authority (Doc. No. 113), and the Warden's Response (Doc. No. 115).  The evidentiary materials attached to the Amicus Curiae Brief are not before the Court because their admission was denied (Doc. No. 109).

The Petition (Doc. No. 16) contains thirty-five grounds for relief, all of which were recommended to be denied, except for the eighteenth, twenty-second, twenty-third, twenty-fourth, twenty-fifth, and thirty-fourth grounds for relief, which had been withdrawn prior to the filing of the Report and Recommendations.

Hasan raises three general objections (Doc. No. 91, PageID 1366-1367).  First he objects "to the statement of facts and a reliance on the state court's findings of fact as it relates to his allegations of actual innocence as cause for procedural default," claiming the Supreme Court held this to be error in *House v. Bell,* 547 U.S. 518 (2006). *Id.*   Second, he objects to reliance by the Magistrate Judge on "this summarization of trial testimony as historical fact-findings," noting that "[a]ll findings must be fairly supported by the record," *Id.*  PageID 1367, citing *Parker v. Dugger*, 498 U.S. 308 (1991).  Finally, he accuses the Magistrate Judge of sophistry for applying the actual innocence standard at the conclusion of the case after having rejected it "numerous times" during the course of the proceedings. *Id.*  PageID 1367.  The only reference given for any of these supposed errors is pages 14-15 of the R&R (PageID 1065-1066) which consists almost entirely of a quotation from Judge Spiegel's opinion in *Jamison v. Collins,* 100 F. Supp. 2d 647, 669-670 (S.D. Ohio 2000).

Hasan's reliance on *House v. Bell, supra*, will be dealt with as that point is raised in various objections on individual claims.  Hasan is correct that *Parker, supra,* holds that any findings made by a state supreme court must be supported by the record.  Finally, the Magistrate Judge recognizes

that *Schlup v. Delo*, 513 U.S. 298 (1995), as confirmed in *House v. Bell, supra,* recognizes an actual innocence "gateway" through which a habeas petitioner may have his state court procedural default excused.

The remaining objections are dealt with *seriatim*. The Magistrate Judge has noted those Grounds for Relief on which he believes the analysis offered in the Report and Recommendations is sufficient for disposition of the claim.

## First Ground for Relief

In his First Ground for Relief, Hasan claims he received ineffective assistance of trial counsel when his counsel failed to conduct a voir dire to explore potential racial bias. Having cited the relevant standard for such a claim from *Strickland v. Washington,* 466 U.S. 668 (1984), the R&R rejected this Ground for Relief on both prongs of the Strickland test, namely that no Supreme Court case law establishes it is subpar professional performance to fail to inquire on this subject in an interracial murder case and in any event Hasan had show no resulting prejudice. (R&R, Doc. No. 81, PageID 1066-1071).

Hasan first objects to reliance on the Ohio Supreme Court's conclusion that this was a tactical decision by trial counsel by quoting the deposition testimony of trial attorney Timothy Smith that there was no "tactical reason for not asking Hasan's potential jurors *Turner* [*v. Murray*, 476 U.S. 28 [1986] questions." (Smith Depo., Doc. No. 58,[1] p. 38, PageID 740.) Thus, says Hasan, the

---

[1]The Objections incorrectly cite the Smith deposition transcript as filed at Doc. No. 59; the correct docket number is 58.

Ohio Supreme Court's "speculative" determination is "clearly and convincingly rebutted by the sworn testimony of trial counsel."  (Objections, Doc. No. 91, PageID 1368.)

Although the Court authorized the deposition of Mr. Smith (Doc. No. 37), his deposition testimony is not in evidence in this case.  No evidentiary hearing under Rule 8 of the Rules Governing § 2254 Cases ("Habeas Rules") has been held and the record has not been expanded under Habeas Rule 7.  Nothing in the Habeas Rules or the Federal Rules of Civil Procedure automatically makes the results of discovery part of the record on which the case can be decided. See Fed. R. Civ. P. 32.

Hasan also objects to the Magistrate Judge's conclusion that he did not meet the prejudice prong of *Strickland*.  (Objections, Doc. No. 91, PageID 1369.)  His argument is that *Turner* is "definitive authority regarding the prejudice that inures when race is a factor in a death penalty case."  *Id.*  But the Supreme Court did not hold in *Turner* that it is *per se* ineffective assistance of trial counsel to fail to voir dire jurors on racial bias when "race is a factor."  What it held was that a trial judge committed constitutional error when he refused to ask questions in voir dire related to this point.  Nothing in *Turner* obliges a trial attorney to conduct the voir dire permitted by that case or presumes prejudice when the voir dire is not conducted.  The burden of demonstrating prejudice – a reasonable probability that in the absence of counsel's errors the result would have been different – in an ineffective assistance of trial counsel claim is on the petitioner and has not been met here.

## Second Ground for Relief

In his Second Ground for Relief, Hasan asserts he received ineffective assistance of trial

counsel because counsel did not request a curative instruction from the trial court after a potential juror was questioned about potential religious bias against Muslims, particularly Louis Farrakhan's Nation of Islam version which emphasizes the race of its adherents, and excused because of his views.  Hasan accuses his trial counsel of doing nothing as this point (Objections, Doc. No. 91, PageID 1372).  Actually, trial counsel moved to dismiss the entire panel which heard the remarks (Trial Tr. at 375, cited in the R&R at PageID 1071.)

Hasan's counsel accuses the trial judge of endorsing the potential juror's views by saying he knew more about Farrakhan than other potential jurors (Objections, Doc. No. 91, PageID 1373). Actually, the trial judge dismissed him *sua sponte* after inquiring himself about potential bias arising from the juror's views.  For the reasons already stated in the R&R, the jurors who heard the potential jurors comments had already been adequately questioned about their impartiality toward Islam.

Footnote 5 in the R&R reads "[i]t should be noted that Hasan was dressed in traditional Islamic attire throughout voir dire."  Attributing religious prejudice to the Magistrate Judge, Hasan's counsel writes "Petitioner objects to footnote 5.  Petitioner is unsure if this fact is used by the magistrate judge to punish Petitioner for wearing his religious attire. ... [S]uch a viewpoint endorses racial discrimination."  *Id.*  This is an example of the unfortunate arch tone in which the entire set of Objections is written.  In fact, the footnote is supportive of Hasan's position that inquiry about potential religious bias was necessary in voir dire because his religious attire would necessarily have been seen by jurors throughout the trial and his minority religious status therefore constantly called to mind.

Hasan's Second Ground for Relief fails on both prongs of *Strickland* and should be denied.

### Third Ground for Relief

In his Third Ground for Relief, Hasan asserts his venire was "skewed in a racial fashion," the theory being that "nearly all African-Americans were in the last one-third of the panel making their service unlikely." (R&R, Doc. No. 81, at PageID 1077, quoting the Petition.)  The explanation for this offered at trial was that the order of venirepersons corresponded to the order in which juror questionnaires were returned.  *Id.*  citing trial transcript.  The Petition alleges that this order was accomplished by sending uncompleted questionnaires back to African-Americans.  However, the Petition concedes, as the R&R notes, that "there is no evidence of the race of those individuals who were given their questionnaires back to complete."  *Id.* , citing Petition at 34.  The R&R therefore recommended denying the Third Ground for Relief as based on conjecture.  *Id.*

Hasan objects that he does not have evidence to support this claim because the Court would not allow him discovery on it.  (Objections, Doc. No. 91, PageID 1374-1375.)  Thus he seeks to reopen discovery and obtain an evidentiary hearing "to assist this Court in its *de novo* review of the [magistrate judge]'s ruling."  *Id.*

Discovery in habeas corpus cases is discretionary.  The burden of demonstrating the materiality of the information requested is on the moving party.  *Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001), *citing Murphy v. Johnson,* 205 F. 3rd 809, 813-15 (5th Cir. 2000).  "Even in a death penalty case, 'bald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or require an evidentiary hearing.'" *Bowling v. Parker*, 344 F.3d 487 (6th Cir. 2003)(*quoting Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v.*

*Bagley,* 380 F.3d 932, 974, (6th Cir. 2004), *citing Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997); *see also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact." *Id., citing Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994).

All the Petitioner presents here is speculation. The Court was correct in denying discovery on this claim in the prior course of the case and should not change that ruling now. And because there is no evidence to support a claim of intentional racial discrimination in the order in which the venirepersons were called, the Third Ground for Relief should be denied.

### Fourth Ground for Relief

Hasan's Fourth Ground for Relief is that his trial counsel rendered ineffective assistance when they abandoned a claim of grand jury bias. The Ohio Supreme Court heard this claim on direct appeal and rejected it under the *Strickland* standard. *State v. Sanders,* 92 Ohio St. 3d 245, 750 N.E.2d 90 ¶ 87(2001). The R&R concluded this was not an objectively unreasonable application of Strickland and recommended denial of Ground Four on that basis (R&R, Doc. No. 81, PageID 1080).

The trial court had permitted a hearing on this claim, but the witnesses called by defense were unable to provide useful testimony and the claim was abandoned pretrial. Hasan's argument is that his attorneys should have investigated further. The Magistrate Judge allowed discovery on this claim and Hasan deposed Tim Smith, one of his trial attorneys. Smith said the decision to abandon the claim was made by his co-counsel, Dave Otto, who is now deceased and Smith did not

know why the decision had been made. On this basis the R&R concluded there was no proof on either prong of *Strickland*.

Hasan objects that Smith's testimony shows that co-counsel were not sufficiently communicating, thereby demonstrating a violation of ABA Death Penalty Standard 10.4 (Objections, Doc. No. 91, PageID 1375-1376). Smith's testimony, as noted above, is not in evidence. Moreover, the ABA Guidelines are not "inexorable commands"; rather, they are "only guides for what reasonableness means, not its definition." *Post v. Bradshaw*, 621 F.3d 406; (6th Cir. 2010), quoting *Bobby v. Van Hook,* 130 S. Ct. 13, 17 (2009).

More to the point, showing that Hasan's trial counsel did not always communicate with one another completely does not show ineffective assistance of trial counsel in not pursuing this claim. In neither this Court nor the Ohio courts has Hasan presented any evidence that he was prejudiced by this decision. Instead, he presents conjecture and his repeated claim that if he had only been allowed discovery, he could have proven the claim. The Court's prior rulings on discovery and an evidentiary hearing were correct and should not be reversed now. The Fourth Ground for Relief should be denied.

## Fifth Ground for Relief

In his Fifth Ground for Relief, Hasan claims he received ineffective assistance of trial counsel when his trial attorneys did not object to the trial court's failure adequately to question jurors after they were exposed to protesters outside the courthouse.

The R&R recommended denying this Ground for Relief because Hasan had not demonstrated

prejudice from any failure of his attorneys to insist on conducting more inquiry of the jurors after the judge conducted a limited inquiry and all jurors indicated they could proceed (R&R, Doc. No. 81, PageID 1086).

This incident was raised in the Ohio Supreme Court as a claim of trial court error in not conducting a hearing under *Remmer v. United States*, 347 U.S. 227 (1954); there Hasan requested a remand to the trial court to conduct a *Remmer* hearing. *State v. Sanders, supra*, ¶¶ 9-10. In his Objections, Hasan "objects to considering his claim solely as a *Strickland* claim. ... Petitioner consistently alleged a violation of *Remmer* as well as a *Strickland* claim." (Objections, Doc. No. 91, PageID 1377-1378.) The Fifth Ground for Relief reads in its entirety:

> Trial counsel were ineffective when they failed to object to the trial court's failure to hold a *Remmer* hearing in response to juror exposure to extraneous influences, thereby depriving Petitioner of his rights to a fair trial and due process in violation of the Sixth and Fourteenth Amendments.

(Quoted at R&R, Doc. No. 81, PageID 1053.) Thus what is pled is a *Strickland* claim, not a *Remmer* claim.

However, if the District Court believes a *Remmer* claim has indeed been sufficiently pled, the Magistrate Judge recommends that it be denied because the Ohio Supreme Court's resolution of the Remmer claim is not objectively unreasonable. That court wrote:

> [9] During the trial, demonstrators opposing capital punishment picketed the courthouse. One juror reported to the bailiff that, during a lunch break, a demonstrator pointed him out and said, "There he goes" or "there goes one." The judge had two demonstrators brought in and warned them not to intimidate or speak to jurors.

> Defense counsel requested a chance "to ask [the jurors] some questions or [for] the court [to] ask them." The judge then questioned the jury.

The judge told the jurors that he had warned the demonstrators not to speak to them, and that the demonstrators were "harmless people" with "absolutely no connection" to the parties.  He asked: "Now does anybody feel, because of that incident, if you were involved in that incident, that you could not continue with this trial and be fair and honest with all the issues that you're going to be confronted with?"  Nobody answered.

He then asked the juror who had reported the incident whether he had any problem;  he said he had none.   The judge asked another juror, who said the same.   Finally, he asked, "Does anybody have any problem?"   Again, no juror spoke.   The judge declared the subject closed, and trial proceeded.

Sanders contends that this procedure was inadequate.   In his twelfth proposition of law, he argues that this incident constituted an extraneous influence on the jury and that, under *Remmer v. United States* (1954), 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654, the court had a duty to conduct a deeper, more individualized inquiry. Sanders asks us to remand to the trial court for a *Remmer* hearing. See *United States v. Davis* (C.A.6, 1999), 177 F.3d 552, 557.

[10] The scope of voir dire is generally within the trial court's discretion, including voir dire conducted during trial to investigate jurors' reaction to outside influences.  *State v. Henness* (1997), 79 Ohio St.3d 53, 65, 679 N.E.2d 686, 697.  See, generally, Annotation (1992), 3 A.L.R.5th 963, Section 2(a).   Thus, we must determine whether the trial judge abused his discretion in conducting the inquiry as he did.

In our view, he did not.  Although the judge directly questioned only two jurors, he also asked: "Does anybody have any problem?"  This was directed at all the jurors, and the judge could reasonably assume that those who did not speak up were unaffected.   Hence, he did not abuse his discretion by stopping there.   In *Henness*, we upheld a judge's refusal to question each juror individually as within the trial court's discretion.  79 Ohio St.3d at 65, 679 N.E.2d at 696-697.  See, also, *United States v. Spinella* (C.A.5, 1975), 506 F.2d 426, 428-429.

*United States v. Davis, supra,* cited by Sanders, is distinguishable. There, a juror in a drug trafficking trial was dismissed after informing the court that one of his employees had discussed his jury service with him;  the juror felt intimidated after his employee told him that

-10-

"members of the community * * * were discussing his role in the proceedings." *Id.*, 177 F.3d at 556.   Moreover, the juror admitted that he had discussed his fears with the other jurors.   Yet the trial judge made no attempt at all to determine what effect the extraneous contact had upon the other jurors.   Nor did he instruct the other jurors to disregard what the dismissed juror had told them. *Id.* at 556.

Here, in contrast, the trial judge asked the jurors whether the incident with the demonstrators had affected them.   Moreover, he acted to allay possible prejudice by warning the demonstrators not to speak to the jurors, by telling the jurors he had done so, and by informing the jurors that the demonstrators had no connection to either party in the case.

Given the facts before the trial court, and the actions the court took, we find no abuse of discretion in its failure to go further still and interrogate each juror individually.   Accordingly, we overrule Sanders's twelfth proposition of law.

*State v. Sanders, supra*, ¶¶ 9-10.


### Sixth Ground for Relief


In his Sixth Ground for Relief, Hasan claims the trial court violated his Sixth and Fourteenth Amendment rights by denying a jury view of L-block at Lucasville prison where the riot occurred. The R&R recommended denying this claim because it did not rise to a constitutional level, relying on *Zuern v. Tate*, 101 F. Supp. 2d 948, 980-981 (S.D. Ohio 2000), *reversed in part on other grounds, Zuern v. Tate*, 336 F.3d 478 (2003).

Hasan objects to the R&R's reliance on a District Court opinion (Objections, Doc. No. 91, PageID 1379).  However, he cites no contrary Sixth Circuit or Supreme Court law.

There is no such thing as "the law of the district." Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same

-11-

> district, the prior "resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another." *State Farm Mutual Automobile Insurance Co. v. Bates,* 542 F. Supp. 807, 816 (N.D. Ga. 1982). Where a second judge believes that a different result may obtain, independent analysis is appropriate. *Id.*

*Threadgill v. Armstrong World Industries, Inc.,* 928 F.2d 1366, 1371 (3d Cir. 1991). See also *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (district judges should not treat decisions of other district judges as controlling unless doctrines of res judicata or collateral estoppel apply); *United States v. Article of Drugs Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987) (single district court decision has little precedential effect and is not binding on other district judges in the same district); *Starbuck v. City and County of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977) (same); *Farley v. Farley*, 481 F.2d 1009 (3d Cir. 1973) (even a three judge decision of the district court is not necessarily binding on any other district court); and *EEOC v. Pan American World Airways*, 576 F. Supp. 1530, 1535 (S.D.N.Y. 1984) (district court decision was not binding even on other district courts in the same district).

Nevertheless, in the absence of supervening case authority from the Supreme Court or the Court of Appeals, this Court should as a matter of comity to colleagues and even-handed justice to litigants, follow decisions of its own judges. *See United States v. Hirschhorn*, 21 F.2d 758 (S.D.N.Y. 1927);  Henry Campbell Black, *The Law of Judicial Precedents*, §104 (1912)[available at Google Books].

The Ohio Supreme Court dealt with this same claim as follows:

> [53] Sanders requested that the jury be brought to SOCF to view the scene of the riot.  The state argued that the premises had changed so much since then that a jury view would not be helpful.  The trial

court agreed and denied the motion.

[54] A trial court has broad discretion in such matters. *State v. Zuern* (1987), 32 Ohio St.3d 56, 58, 512 N.E.2d 585, 588. In part C(2) of his first proposition, Sanders argues that the trial judge here abused that discretion, but we disagree. The decision had a rational basis.

Sanders further contends that denial of a view denied him a meaningful opportunity to present a complete defense. We disagree. Denial of a view did not "significantly [undermine] fundamental elements of the defendant's defense." *United States v. Scheffer* (1998), 523 U.S. 303, 315, 118 S.Ct. 1261, 1267-1268, 140 L.Ed.2d 413, 422.

*State v. Sanders, supra,* ¶¶ 53-54. Hasan has not shown how this decision is in any way an

objectively unreasonable application of clearly established Supreme Court precedent.

## Seventh Ground for Relief

In his seventh ground for relief, Hasan contends his trial counsel were ineffective for failing

to request dismissal of a sleeping juror. (Petition, Doc. No. 16 at 41.) The R&R recommended

denying this claim because the Ohio Supreme Court's disposition of it was neither contrary to nor

an unreasonable application of clearly established federal law. (R&R, Doc. No. 81, PageID 1089.)

Hasan objects to this proposed ruling and asserts "The Ohio Supreme Court, in its entirety,

held, "as to the [sleeping] juror, Sander's counsel did bring the matter to the trial court's attention."

(Objections, Doc. No. 91, PageID 1380). This is a completely false misrepresentation. What the

Ohio Supreme Court actually said on Hasan's thirteenth proposition of law is quoted in full as

follows:

[11] The record indicates that one or more jurors may have fallen asleep during the trial. During a sidebar conference at trial, defense

counsel alleged that Juror No. 3 appeared to have fallen asleep while the prosecution was playing tape-recorded phone conversations between inmate negotiators and DRC negotiators. Counsel asserted that the juror's eyes were shut for about an hour and fifteen minutes, and that the juror was motionless for half an hour. Counsel noted that the defense had "previously commented about this problem" (apparently off the record) during Kenneth Law's testimony. The judge said: "[O]bviously I've been watching her myself, and I'll make some determination what to do while we still have alternate jurors." Later that day, the judge told the jury he was keeping the courtroom temperature low "because there's too much sleeping going on. And I'm not going to tolerate it anymore. I know it's tedious, but you're going to have to all be alert."

In his thirteenth proposition, Sanders contends that having a juror asleep during trial denied him due process, and that the trial judge should have replaced Juror No. 3. Alternatively, Sanders contends that the trial court should at least have examined the juror to determine whether she really was sleeping and what she missed.

[12] However, Sanders did not request either remedy at trial, nor did he express dissatisfaction with the trial judge's handling of the matter. See *United States v. Kimberlin* (C.A.7, 1986), 805 F.2d 210, 244; *United States v. Newman* (C.A.1, 1992), 982 F.2d 665, 670. Moreover, "[t]here is no per se rule requiring an inquiry in every instance of alleged [juror] misconduct." *United States v. Hernandez* (C.A.11, 1991), 921 F.2d 1569, 1577; see, also, *Newman*, 982 F.2d at 670. Thus, in the absence of plain error, this claim is waived. See, generally, *State v. Childs* (1968), 14 Ohio St.2d 56, 43 O.O.2d 119, 236 N.E.2d 545.

[13] We find no plain error. A trial court "has considerable discretion in deciding how to handle a sleeping juror." *United States v. Freitag* (C.A.7, 2000), 230 F.3d 1019, 1023; see, also, *United States v. Bradley* (C.A.3, 1999), 173 F.3d 225, 230. There is no evidence that the juror missed large or critical portions of the trial. *See Freitag, supra,* at 1023; *United States v. Barrett* (C.A.9, 1983), 703 F.2d 1076, 1083, fn. 13. The taped conversations between inmate and DRC negotiators were not critical. (The defense also alleged that a juror had fallen asleep during Law's testimony, but nothing in the record shows which juror allegedly slept or what part of Law's testimony that juror allegedly missed.)

Moreover, the trial judge was watching the situation, and he

admonished the jury to be alert.  Compare *United States v. McFerren* (Apr. 8, 1998), C.A.6 No. 96-5458, unpublished opinion, 1998 WL 180514 (affirming conviction where judge "kept a watchful eye on the jury" and, when necessary, admonished jurors to stay awake).

For the foregoing reasons, we do not find plain error.  Sanders's claim is therefore waived, and we overrule his thirteenth proposition of law.

*State v. Sanders, supra,* ¶¶ 11-13.

Hasan objects to the Magistrate Judge's application of an outcome determinative prejudice standard.  As to the prejudice prong, the test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result.  *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996), citing *Lockhart v. Fretwell*, 506 U.S. 364 (1993).  "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won."  *United States v. Morrow,* 977 F.2d 222 (6th Cir. 1992).  Defects in assistance that have no probable effect on the trial's outcome do not establish a constitutional violation.  *Mickens v. Taylor,* 535 U.S. 162, 166 (2002).

Hasan relies on what he treats as a trial court finding – the trial judge's comment to the jury that there was "too much sleeping going on."  This was hardly a "finding."  In context, it is the rhetorical introduction to the judge's warning to all the jurors to stay alert.

**Eighth Ground for Relief**

In his eighth ground for relief, Hasan contends his trial counsel should have presented nineteen additional witnesses during the guilt phase of his trial, and that their failure to do so constitutes ineffective assistance of counsel. (Petition, Doc. No. 16 at 43-57.)

-15-

Respondent asserted this claim was procedurally defaulted. Hasan implicitly conceded the default, but sought to make use of the actual innocence gateway of *Schlup v. Delo*, 513 U.S. 298 (1995), to excuse that default. The R&R concluded that Hasan had not presented sufficient evidence to satisfy the *Schlup* standard.

It is at this point that the Objections become particularly shrill and *ad hominem*. Inside of two pages the Magistrate Judge is accused twice of engaging in "result-oriented" processing and "sophistry," and of denying a "fair truth seeking process" in the face of Hasan's "begging" in reliance on supposedly-controlling Sixth Circuit precedent. Each of Hasan's objections on this Ground for Relief is examined *seriatim*.

Hasan first objects that the Magistrate Judge required him to prove actual innocence by "scientific or physical evidence." (Objections, Doc. No. 91, PageID 1382.) The Magistrate Judge did no such thing. The only uses of the phrases "scientific evidence" or "physical evidence" in the entire R&R are in a direct quotation from the two Supreme Court cases on which Hasan relies. What the Magistrate Judge wrote was:

> To be credible, a claim of actual innocence requires that the allegations of constitutional error be supported with reliable evidence, such as "'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence . . . that was not presented at trial.'" *House v. Bell*, ___ U.S. ___, 126 S.Ct. 2064, 2077 (2006), quoting *Schlup*, 513 U.S. at 324. Consequently, such claims are rarely successful. *Schlup*, 513 U.S. at 324. See also *House*, 126 S.Ct. at 2077 (observing that "it bears repeating that the *Schlup* standard is demanding and permits review only in the extraordinary case").

(R&R, Doc. No. 81, PageID 1092-1093.) How counsel inferred from this quotation that the Magistrate Judge was requiring scientific or physical evidence of innocence is puzzling at best.

**Denial of an Evidentiary Hearing:**

-16-

The gravamen of Hasan's objections on this Ground for Relief is that the Court did not give him an evidentiary hearing at which to prove his *Schlup* actual innocence claim (Objections, Doc. No. 91, PageID 1384-1388). He asserts the Magistrate Judge improperly assessed the reliability of the evidence of actual innocence he did present and that the only proper way to assess that evidence is by holding an evidentiary hearing.

Hasan asserts that *House v. Bell, supra,* imposes a "requirement that a hearing take place to make such credibility and reliability findings" (Objections, Doc. No. 91, PageID 1384). That is not true. The District Court in *House* had held a hearing, but the Supreme Court never suggested that such a hearing was mandatory. See *House*, 547 U.S. at 537. Nor did the Supreme Court require an evidentiary hearing to determine credibility in *Schlup* itself. See *Schlup*, 513 U.S. at 332.

Hasan asserts *House v. Bell, supra,* makes 28 U.S.C. § 2254(e)(2) inapplicable to this case and he is therefore "entitled" to a hearing under *Townsend v. Sain*, 372 U.S. 293, 313 (1963). Again, there is no such holding in that case. In *House* the Supreme Court held that the AEDPA did not replace the *Schlup* actual innocence gateway standard with a stricter test based on *Sawyer v. Whitley,* 505 U.S. 333 (1992). *Townsend* is not cited in *House* and in any event the Supreme Court has held that *Townsend* did not entitle a petitioner to a hearing. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Indeed, *Schriro* confirms that both before and after adoption of the AEDPA, grant of an evidentiary hearing is discretionary. *Id.*

Hasan complains at great length about the magistrate judge's unfairness in denying him an evidentiary hearing, implying this was part of the magistrate judge's "result-oriented" rush to judgment. As the District Court is aware, this judicial officer has been the most liberal in the nation in granting evidentiary hearings in capital habeas cases. See King, et al., "Final Technical Report:

Habeas Litigation in the District Courts, (monograph supported by Award No. 2006-IJ-CX-0020, National Institute of Justice, Office of Justice Programs, United States Department of Justice) (August 2007). That fact should be weighed by the District Court in assessing the history of Hasan's requests for an evidentiary hearing in this case.

Hasan's first Motion for Evidentiary Hearing was filed January 8, 2004 (Doc. No. 21). After oral argument, the Magistrate Judge granted in part and denied in part Hasan's request for discovery and denied the request for evidentiary hearing

> without prejudice to its renewal not later than thirty days after completion of Mr. Smith's deposition. In any such renewed motion, Petitioner shall include a list of all persons who he desires to have testify, the substance of their testimony, and any necessary showing under *Keeney*.

(Decision and Order of June 14, 2004, Doc. No. 37, PageID 524.) Hasan appealed (Doc. No. 39). While he did not expressly complain of denial without prejudice of his evidentiary hearing request, he did argue that "*Schlup* survives AEDPA's § 2254(e)(2)." While we now know that proposition is correct because of the Supreme Court's later holding in *House*, at the time that was not clear. On Hasan's request, the Magistrate Judge (however result-oriented he may have been), stayed the discovery order pending the appeal (Not. Ord. granting Doc. No. 45). The District Court overruled the appeal (Doc. No. 46) and the Magistrate Judge extended the discovery cut-off (Doc. No. 47).

Hasan promptly moved for reconsideration based on the *en banc* Sixth Circuit decision in *House v. Bell*, 386 F.3d 668 (2004), which recognized the continued vitality of the Schlup actual innocence gateway (Motion, Doc. No. 48). In reconsidering the decision but denying the requested relief, the Magistrate Judge wrote:

> The Sixth Circuit did not have before it the question whether House

should have been granted an evidentiary hearing on his actual innocence claim – he had already been granted a full hearing in the district court and the Court of Appeals was weighing the evidence presented in that hearing without considering the propriety of the trial court's having heard it in the first instance.

*A fortiori*, the Sixth Circuit was not ruling on the propriety of any request for discovery. While both opinions refer extensively to "newly-discovered" evidence, they do not advert to the process by which the evidence was discovered, whether formal Rule 6 discovery from the State or by House's counsel's investigations. Thus *House v. Bell* does not contain any holding or even dictum on either the appropriate scope of discovery under Rule 6 or of evidentiary hearings under 28 U.S.C. § 2254(e)(2). It does not consider, much less reject, this Court's reading of *Michael Williams v. Taylor's* express language that § 2254(e)(2) "eliminat[es] the freestanding miscarriage of justice exception" to *Keeney*.

(Decision, Doc. No. 53, PageID 686-687.) Hasan again appealed (Doc. No. 54) and his objections were overruled (Doc. No. 57).

On November 17, 2004, Hasan noticed the deposition of Timothy Smith for November 23, 2004 (Doc. No. 56), and the deposition was actually taken on that day (Doc. No. 58). This made Hasan's motion for evidentiary hearing due December 23, 2004, in accordance with the prior scheduling order (Doc. No. 37). **No such motion was ever filed**, as the Magistrate Judge noted in the Scheduling Order setting the briefing schedule (Order of February 28, 2005, Doc. No. 59).

More than a year later and well after briefing on the merits was complete, Hasan filed a Second Motion for Discovery (Doc. No. 72) which the Court denied because the request did not satisfy *Bracy v. Gramley,* 520 U.S. 899 (1997), and because it was "very untimely." (Order of May 31, 2006, Doc. No. 75, PageID 1021).

It was on the basis of this procedural history that the Magistrate Judge concluded Hasan had "abandoned" his request for an evidentiary hearing (R&R, Doc. No. 81, PageID 1086, n. 7.) The

Scheduling Order is simple and direct: when discovery is complete, file a motion for evidentiary hearing setting forth the witnesses you intend to call. This is consistent with the Magistrate Judge's consistent practice in both capital and non-capital habeas corpus cases and parallels the usual development of any federal civil case for trial. No authority cited by Hasan even suggests that a district court is barred, in exercising its discretion on granting an evidentiary hearing, from asking a petitioner what witnesses he intends to call and explaining why an evidentiary hearing is warranted.

In recommending that relief be denied on Hasan's Eighth Ground for Relief, the Magistrate Judge recognized his duty to assess the reliability of Hasan's actual innocence evidence whether or not it was presented at an evidentiary hearing (R&R, Doc. No. 81, PageID 1092-1093). The R&R describes the evidence and evaluates it as follows:

> Hasan supports his two-part claim of actual innocence and ineffective assistance of trial counsel with the affidavits, or excerpts from interviews, depositions, or trial testimony in other Lucasville cases from nineteen individuals, most of them inmates [at] Lucasville during the prison riot. (Appendix, Vol. VI-A at 178-95, 199-205, 252-70; Vol. VI-B at 76-116; Vol. VI-C at 118-19.) Those documents were originally submitted to the state courts in support of Hasan's second petition for post-conviction relief. (Appendix, Vol. VI-A at 38-163.)
>
> The affidavits and excerpts from interviews are uncross-examined, and the excerpts from the depositions and trial testimony do not include any cross-examination. In addition, some of the deposition and testimony excerpts do not even identify the witness testifying. (See Appendix, Vol VI-B at 76-87, 88, 113-16.) Several of the documents contain hearsay, speculation, conjecture, and opinion of the type not admissible at trial, in part because of its inherent unreliability. (Appendix, Vol. VI-A at 179, 182-84, 189-91, 201-2); Ohio R. Evid. 701. Finally, none of the affidavits, or excerpts from depositions or interviews have been authenticated in any way. See Fed. R. Evid. 901, 902; see also Fed. R. Evid. 1101(e).

(R&R, Doc. No. 81, PageID 1093-1094.) Hasan objects to the Magistrate Judge's reference to rules of evidence, but they certainly speak to evaluating the quality of evidence.

As the Warden notes in responding, the Objections contain little argument about how this material constitutes "trustworthy eyewitness accounts" which purport to show Hasan's innocence. Instead he argues conclusorily there is "overwhelming new evidence that the state's key witness Anthony Lavelle committed these murders." (Objections, Doc. No. 91, PageID 1387.) As the Warden notes, "[t]his is not new news. Hasan himself testified at his own trial that Lavelle was the hands-on killer of Vallandingham. ... [t]he State never contended that Hasan was the hands-on killer of Vallandingham ..." (Response, Doc. No. 102, PageID 1453). Rather, the State's contention which the jury accepted beyond a reasonable doubt is that Hasan was in charge of the Muslim inmates and ordered Vallandingham's murder.

The Magistrate Judge understands his responsibility to consider the proffered new evidence of innocence in conjunction with the evidence offered at trial. See *House*, 547 U.S. at 538. Hasan urges the Court to disregard the testimony offered at trial because it is all "bargained for snitch testimony," provided by "the school of snitches presented by the state" who testify from "Pavlovian response ... to consideration." (Objections, Doc. No. 91, passim.) The rhetoric presumably means the Court is supposed to disregard any testimony by a "snitch," but a prison riot situation is hardly likely to feature Learned Hand's proverbial twenty bishops[2] as witnesses. Hasan had ample opportunity to discredit these witnesses at trial but the jury believed them. The Magistrate Judge is not persuaded that adding the additional inmate testimony now proffered would make the record as a whole such that no reasonable juror would find Hasan guilty beyond a reasonable doubt.

---

[2]*Hotchkiss v. National City Bank of N.Y.*, 200 F. 287, 293 (2nd Cir. 1911).

Arguments by Amicus Curiae Ohio ACLU Foundation for reopened discovery and an evidentiary hearing should be rejected for the reasons set forth above.

The Eighth Ground for Relief should be dismissed as procedurally defaulted.

## Ninth Ground for Relief

In his ninth ground for relief, Hasan contends his trial counsel were ineffective as evidenced by their failure to adequately cross-examine prosecution witnesses Reginald Williams, Kenneth Law, Miles Hogan, David Lomache, Anthony Lavelle, and Stacey Gordon. (Petition, Doc. No. 16 at 57-64.) The R&R recommends denying this claim for the same reasons that the Eighth Ground was denied. In his Objections, Hasan incorporates by reference his objections on the Eighth Ground. For the reasons given above as to the Eighth Ground, the Magistrate Judge again recommends the Ninth Ground be denied.

## Tenth Ground for Relief

Petitioner's Tenth Ground for Relief is a claim under *Brady v. Maryland*, 373 U.S. 83 (1963). (Petition, Doc. No.16 at 48-49.) The R&R recommends dismissing this claim for (1) lack of fair presentation to the state courts, (2) some of the material assertedly not disclosed was available in the public record, (3) the affidavits relied on do not show the prosecutor had any withheld exculpatory evidence, and (4) actual innocence sufficient to overcome procedural default had not been shown (R&R, Doc. No. 81, PageID 1096-1098).

-22-

Petitioner first objects that he made a fair presentation of this claim by referring the state courts to "[a]ll exhibits referenced in the petition." (Objections, Doc. No. 91, PageID 1389.) Bo further analysis is needed on this point beyond what is contained in the R&R.

Hasan concedes (*Id.*, PageID 1390) there is Sixth Circuit authority holding that material available in public records is not disclosable under *Brady*, but claims this point is overruled by *United States v. Agurs*, 427 U.S. 97 (1976); *Kyles v. Whitley*, 514 U.S. 419 (1995); and *Banks v. Dretke*, 540 U.S. 696 (2004). None of those three cases discusses the status of public records as *Brady* material.

As to the third point, Hasan claims if he had just been given the discovery he wanted, he could have proved the prosecutors had this material. This amounts to a concession that the evidence he did present does not prove the prosecutors had the material.

The tenth ground for relief should be denied as previously recommended.

## Eleventh Ground for Relief

No additional analysis is needed on this claim.

## Twelfth Ground for Relief

No additional analysis is needed on this claim.

## Thirteenth Ground for Relief

No additional analysis is needed on this claim.

## Fourteenth Ground for Relief

No additional analysis is needed on this claim.

## Fifteenth Ground for Relief

No additional analysis is needed on this claim except to note that Timothy Smith's deposition was never admitted in evidence.

## Sixteenth Ground for Relief

No additional analysis is needed on this claim.

## Seventeenth Ground for Relief

No additional analysis is needed on this claim, except to note the following authority on plain error review:  Reservation of authority to review in exceptional circumstances for plain error is not sufficient to constitute application of federal law.  *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).  A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008);

*Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F. 3rd 239 (6th Cir. 2001), citing *Seymour v. Walker*, 224 F. 3rd 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).

## Eighteenth Ground for Relief

This claim was withdrawn in the Traverse (Doc. No. 22 at 83.)

## Nineteenth Ground for Relief

In his nineteenth ground for relief, Hasan contends his appellate counsel were ineffective on direct appeal. (Petition, Doc. No. 16 at 85-89.)  In recommending that this claim be denied, the Magistrate Judge noted that discovery on this claim had been denied because the claim itself was without merit (Doc. No. 37, quoted in R&R at PageID 1120.)  Petitioner's sole objection is that the discovery was not granted (Objections, Doc. No. 91, PageID 1398).  Hence no further analysis is needed on this claim beyond what is given in the R&R.

## Twentieth Ground for Relief

No further analysis is needed on this claim.

-25-

**Twenty-First Ground for Relief**

In his twenty-first ground for relief, Hasan contends his trial counsel were deficient in failing to object to a jury instruction that permitted the jury to return a guilty verdict on the aggravated murder offense without finding an essential element of the offense, that being the purpose to kill. (Petition, Doc. No. 16 at 94.)  No further analysis is needed on this claim.

**Twenty-Second to Twenty-Fifth Grounds for Relief**

These claims have been withdrawn (Traverse, Doc. No. 22, at 89).

**Twenty-Sixth Ground for Relief**

No further analysis is needed on this claim.

**Twenty-Seventh Ground for Relief**

No further analysis is needed on this claim.

**Twenty-Eighth Ground for Relief**

No further analysis is needed on this claim.

## Twenty-Ninth Ground for Relief

In addition to the analysis given in the R&R, the Magistrate Judge notes that his recommendations on the same point of law have been adopted by the District Judges in *Palmer v. Bagley*, No. 1:00-cv-00882 (Order, 4/17/2006, Doc. No. 117)(Rose, J.), *aff'd.*, 2009 U.S. App. LEXIS (6th Cir. May 29, 2009), *cert. denied,* 2010 U.S. LEXIS 2222 (Mar.8, 2010); *Fears v. Bagley*, (Order, 7/15/2008, Doc. No. 134)(Beckwith, Ch. J.); and *Sheppard v. Bagley,* (Order, 3/04/2009, Doc. No. 131)(Frost, J.).

## Thirtieth Ground for Relief

No further analysis is needed on this claim.

## Thirty-First Ground for Relief

As noted in the R&R, this ground for relief is procedurally defaulted. Hasan's attempt to excuse that default with proof of actual innocence is discussed under Grounds Eight and Nine.

## Thirty-Second Ground for Relief

No further analysis is needed on this claim. Assuming the District Court accepts Hasan's argument that this Ground for Relief properly pled both ineffective assistance of trial counsel and

trial court error, the Magistrate Judge's analysis of the trial court error claim is not an "advisory" opinion as characterized by Hasan, but an alternative analysis of the merits.

## Thirty-Third Ground for Relief

No further analysis is needed on this claim.

## Thirty-Fourth Ground for Relief

This claim was withdrawn in the Traverse (Doc. No. 22, at 138).

## Thirty-Fifth Ground for Relief

No further analysis is needed on this claim.

## Conclusion

Based on the foregoing analysis, it is again respectfully recommended that the Petition be dismissed with prejudice.  However, should the District Judge decide that additional discovery and an evidentiary hearing are warranted in this case on the basis of the Objections and the Amicus Curiae Brief, it is not necessary that additional evidence be taken before the District Judge as the Magistrate Judge is fully prepared to manage any additional discovery and an evidentiary hearing.

December 29, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).