IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SIDDIQUE ABDULLAH HASAN, | : | Case No. 1:03-cv-288 |
| fka CARLOS SANDERS, | : | |
| | : | |
| Petitioner, | : | Chief Judge Susan J. Dlott |
| v. | : | |
| | : | |
| TODD ISHEE, WARDEN, | : | ORDER GRANTING HASAN LEAVE |
| | : | TO OBTAIN LIMITED DISCOVERY |
| Respondent. | : | |

On April 22, 2003, Petitioner Siddique Abdullah Hasan filed a Petition for Writ of

Habeas Corpus ("Habeas Petition").  (Doc. 16.)  Magistrate Judge Merz has recommended

denying the Habeas Petition.  Pending before the Court are Magistrate Judge's Report and

Recommendations on the Merits ("R&R") (doc. 81); the Magistrate Judge's Supplemental

Report and Recommendations ("Supp. R&R") (doc. 119); and Petitioner's Objections to the

R&R and Supp. R&R (docs. 91, 122).

Petitioner raises certain discovery and evidentiary-related issues in his Objections.  This

Court held an oral argument hearing to discuss the discovery and evidentiary issues on October

20, 2011.  The discovery and evidentiary issues relate to two sets of claims.  The first set of

claims—the Eighth, Ninth, and Tenth Grounds for Relief asserted in the Habeas Petition—were

procedurally defaulted by Hasan in state court.  The second set of claims—the Third, Fourth, and

Nineteenth Grounds for Relief asserted in the Habeas Petition—were denied on the merits in

state court.  Each set of claims will be addressed separately below.

I.      STANDARDS FOR DISCOVERY IN HABEAS CASES

A habeas petitioner is not entitled to discovery as a matter of course.  *Bracy v. Gramley*,

520 U.S. 899, 904 (1997); *see also Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Discovery is available only at the discretion of the court and for good cause shown.  Rule 6(a),

Rules Governing § 2254 Cases in the U.S. Dist. Cts., 28 U.S.C. foll. § 2254 ("Habeas Rules").

Habeas Rule 6 is consistent with the principle that a court must provide discovery in a habeas

proceeding only "where specific allegations before the court show reason to believe that the

petitioner may, if the facts are fully developed, be able to demonstrate that he is . . .  entitled to

relief."  *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see*

*also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (same).  "The burden of

demonstrating the materiality of the information requested is on the moving party."  *Williams,*

380 F.3d at 974 (quoting *Stanford*, 266 F.3d at 460).  Although a petitioner is not required to

demonstrate that discovery would unquestionably lead to relief, "vague and conclusory

assertions are not sufficient under Rule 6 and a petitioner may not embark on a fishing

expedition intended to develop claims for which there is no factual basis."  *Payne v. Bell*, 89 F.

Supp. 2d 967, 970 (W.D. Tenn. 2000); *see also Williams*, 380 F.3d at 974 (stating that Rule 6

does not sanction fishing expeditions).

## II.    PROCEDURALLY DEFAULTED CLAIMS

Petitioner seeks discovery and an evidentiary hearing to support his Eighth, Ninth, and

Tenth Grounds for Relief.  Petitioner alleges as follows in the Habeas Petition:

**<u>Eighth Ground for Relief</u>**
Trial counsel were ineffective for failing to investigate and present witnesses
which [sic] could have affirmatively confronted the state's case that Petitioner
orchestrated the 1993 prison riot and ultimately maintained a leadership role
throughout its course and ordered the killing of a guard in violation of the Sixth
and Fourteenth Amendments.

**<u>Ninth Ground for Relief</u>**

Petitioner's attorney's [sic] were ineffective when they failed to investigate and cross[-]examines [sic] state's witnesses which would have dispelled the state's theory that Petitioner orchestrated the 1993 prison riot and ultimately maintained a leadership role throughout its course and ordered the killing of a guard in violation of the Sixth and Fourteenth Amendments.

**Tenth Ground for Relief**
The trial prosecutors suppressed exculpatory evidence by failing to disclose to trial counsel the change in testimony by numerous inmate witnesses in violation of the Fourteenth Amendment.

(Doc. 16 at 43, 57, 64.)

## A.     Actual Innocence Gateway

Petitioner concedes that these claims are procedurally defaulted.  However, he argues that he is actually innocent of the murder of correctional officer Robert Vallandingham ("CO Vallandingham") and that his actual innocence serves as cause to excuse his procedural default. Habeas petitioners in federal court can use actual innocence as a gateway to excuse procedural default arising at the state level.  *House v. Bell*, 547 U.S. 518, 536–37 (2006); *Schlup v. Delo*, 513 U.S. 298, 315–16 (1995).  "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt . . . ."  *House*, 547 U.S. at 538.  "[I]f a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims."  *Schlup*, 513 U.S. at 316.  The district court is not to make "an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors."  *House*, 547 U.S. at 538.

The Supreme Court took care to emphasize in *House* that the actual innocence procedural

3

gateway required "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House*, 547 U.S. at 537 (quoting *Schlup*, 513 U.S. at 324).  However, a district court's review is not limited to the new evidence.  *Id.*  Rather, the district court should consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."  *Id.* at 538 (quotations omitted).

**B.**     **Evidence in the Record Concerning Actual Innocence Gateway**

Petitioner relies on evidence attached to the Appendix to the Return of Writ ("ROW Apx.") in support of his actual innocence gateway claim.  The evidence consists primarily of affidavits and excerpts from the testimony of other Lucasville prison inmates.  (ROW Apx. Vol. VI-A at 169–71, 178–205, 252–70, 448; *Id.* Apx. Vol. VI-B at 76–116; *Id.* Apx. Vol. VI-C at 118–19; Doc. 28 Exs. A, B, and D; Doc. 84 Ex. 2 at 19–20; *Id.* Ex. 5 at 8–12; *Id.* Ex. 6 at 7–15; *Id.* Ex. 9 at 1–4.)  Hasan contends that this evidence supports a finding that inmate Anthony Lavelle, a leader of the Black Gangster Disciples, and two other inmates, Alvin Jones and Kenneth Law, killed CO Vallandingham.  (Doc. 110 at 7–9 (summarizing evidence).)  In particular, Petitioner points to affidavits in which inmate Kenneth Law, who testified against Hasan at his trial, recanted his trial testimony that Hasan had directed the murder of CO Vallandingham.  Instead, Law pinned the murder on inmate Lavelle in a post-trial affidavit. (Doc. 28-3.)  Hasan contends further that the evidence already in the record supports a finding that he did not control or lead the riot from its inception through the time of the murder of CO Vallandingham.  (Doc. 110 at 10–11.)  Finally, he asserts that the record establishes that the State used coercive techniques to secure testimony from other inmates against him.  (*Id.* at

11–13.)  The Court need not and does not at this time make a determination of whether this evidence already in the record is reliable and sufficient to establish the actual innocence gateway.

## C.    Discovery Sought Regarding Actual Innocence Gateway

Hasan also seeks to conduct additional discovery to support his actual innocence gateway claim.  He seeks the following discovery:

> The deposition of Mark Piepmeier, Lead Special Prosecutor, regarding how decisions were made as to offering deals, what deals were made, what deals were rejected, and efforts made on behalf of testifying witnesses after entering into the agreement with the State of Ohio;
>
> The deposition of Richard Gibson, Petitioner's Trial Prosecutor (same as above);
>
> The deposition of Gerald Krumpelbeck, Petitioner's Trial Prosecutor (same as above);
>
> Records deposition of the Office of Special Prosecutor for any and all records related to the offer of any deal whether accepted or rejected, and any documents related to the Special Prosecutor's actions as a result of any accepted deal. Further, the grand jury testimony of any testifying witness -- co-defendants, coconspirators, and complicitors;
>
> Records deposition of the Ohio State Highway Patrol ("OSHP") to obtain the computer generated index of witness statements and trial testimony, created and maintained by OSHP, and the computer list of the tunnel tapes showing when they were made and maintained by OSHP;
>
> Records deposition of the Ohio Department of Rehabilitation and Correction ("ODRC") regarding Rule Infraction Board ("RIB") hearings files of the individuals who testified at Petitioner's trial;
>
> The database be burned to a CD and delivered to his counsel by the OSHP;
>
> Access to the original version of the database be provided by the OSHP;
>
> Upon request, access to the interview summaries and transcripts still maintained by the OSHP at their facilities on Alum Creek Dr., Columbus, Ohio;

Copies of video depositions and transcripts of same in the possession of the OSHP;

Transcripts and/or tape recordings of RIB Hearings in the possession of DRC;

Any reports sent to the Ohio Parole Board by the Special Prosecutor in the possession of either the Ohio Parole Board or the Special Prosecutor regarding Lucasville witnesses or defendants;

The State of Ohio and/or the Special Prosecutor to Answer an Interrogatory Identifying Each Individual Who Contributed to the Creation of Tunnel Tape 61;

Upon request, access to and copies of the varying drafts and any notes still maintained by the OSHP at their facilities on Alum Creek Dr., Columbus, Ohio, regarding Tunnel Tape 61;

Copies of the video depositions of each of the witnesses that testified at Petitioner's trial, including: John Fryman, Interview No. 1210, Tape No. D006; David Lomache, Interview No. 1330, Tape No. D030; Stephen Macko, Interview No. 1255, Tape No. D036; Reggie Williams, Interview No. 1253, Tape No. D026;

Copies of the audio tapes of each of the witnesses that testified at Petitioner's Trial, including: Stacey Gordon, Interview No. 1326, Tape No. A194; Miles Hogan, Interview No. 1139, Tape No. A173; Kenneth Law,  Interview No. 1245, Tape No. A189; David Lomache, Interview Nos. 807, 1243, Tape Nos. A014, A187; Stephen Macko, Interview Nos. 842, 890, 901, Tape Nos. A119, A138, A901; Roger Snodgrass, Interview No. 1289, Tape No. A192;

Copies of any audio or video tapes prepared by the special prosecutor or the OSHP during the Lucasville Investigation;

Records Deposition of the ODRC of the correction file of Stacy Gordon, #151-919;

Records deposition of the Ohio Adult Parole Authority regarding the parole granted to Stacy Gordon, #151-919;

Records deposition of the ODRC of the correction file of Roger Snodgrass, # 141-472;

Records deposition of the Ohio Adult Parole Authority regarding the parole granted to Roger Snodgrass, # 141-472.

(Doc. 110 at 2–3, 5–6; Doc. 136 at 1.)

At the oral argument held on October 20, 2011, the Warden argued that the standards set forth in Habeas Rules 6–8 do not apply to the issue of whether the Court can order discovery on procedurally defaulted claims.  Petitioner responded that the Court retains discretion to order discovery.  The Court finds that the discovery standards set forth in the Habeas Rules are at least persuasive authority that can guide the Court's discretion.

The Court finds that Petitioner has established good cause to obtain further discovery on his actual innocence gateway claim.  To begin, affidavit testimony from multiple inmates, including the recantation by Kenneth Law, suggests that Lavelle, not Hasan, controlled the riot and ordered the murder of CO Vallandingham.  Also, in regards to a question about a database created and maintained by the State during their investigation of the riot, Lt. Howard Hudson of the Ohio State Highway Patrol testified that the database had exculpatory materials in it:

> The database contained all the information we received.  To my knowledge nothing was ever deleted from the database.  It just kept getting bigger.  Information was provided to the prosecutors and then to defense counsel.  Obviously not every statement matched.  There was exculpatory information in the database.  It was all kept together.  No one ever sorted it or deleted it or no one ever deleted anything based on an opinion that it was bad information.

(Doc. 72-2, Hudson Dep. at 151.)[1]  Finally, a special prosecutor in the Lucasville cases testified that the State utilized a narrow *Brady* standard.  (Doc. 110-1, Piepmeier Dep. at 16–17.)[2]  He testified, as an example, that because so many assaults during the riot were committed by more than one person, the fact that a witness testified that "inmate X" committed an assault for which

---

[1] The Hudson deposition originally was filed in the case of *Robb v. Ishee*, No. 2:02-cv-535 (S.D. Ohio).

[2] The Piepmeier deposition originally was filed in the case of *Lamar v. Houk*, No. 1:04-cv-541 (S.D. Ohio).

"inmate Y" was charged was not considered to be exculpatory as to "inmate Y" unless the witness specifically excluded "inmate Y" as an assailant. (*Id.*)[3]

The Warden responds that the inmate affidavits, particularly recantations, lack reliability. The Warden contends that the fact that the state court records contain some exculpatory materials does not establish that the materials are exculpatory for Hasan, nor that the State failed to produce the exculpatory materials.

The Court does not determine at this juncture that all of the aforementioned evidence is reliable, that the evidence establishes as a matter of law that the State withheld exculpatory evidence from Hasan, or that Hasan is actually innocent. However, the evidence does tend to suggest that Hasan's request for discovery on his actual innocence gateway claim is not a mere fishing expedition at least insofar as he requests discovery as to inmate witness testimony.

Accordingly, the Court grants leave to Hasan to obtain the following discovery:[4]

_____

[3] Though not dispositive of the Court's determination to permit limited discovery, the Court notes that Judge Marbley has granted discovery to inmate Jason Robb in *Robb v. Ishee*, No. 2:02-cv-535, Doc. #34 (S.D. Ohio), of all statements made by other inmates in connection with the Lucasville riot investigation that did not implicate Robb in the murder of CO Vallandingham.

[4] The Court does not grant Petitioner leave to seek other categories of evidence not specifically listed in the text above. For example, grand jury proceedings are presumptively secret. *See* Ohio R. Crim. P. 6(E). Petitioner's trial counsel sought to obtain the requested records during Petitioner's state trial proceedings. The trial judge agreed to conduct an *in camera* review. (Tr. Vol. B at 6–10.) The trial court record is silent as to whether the trial court conducted the *in camera* review. Hasan assumes without evidence that the trial court failed to hold the *in camera* review. However, as Magistrate Judge Merz stated, the Court should presume regularity in the trial court proceedings. *Walker v. Johnston*, 312 U.S. 275, 286 (1941). Hasan is not entitled to discovery in these habeas proceedings of the grand jury records which the trial court is presumed to have reviewed and found to lack exculpatory material.

Likewise, Hasan is not entitled to discovery regarding the tunnel tapes. Hasan has not make specific allegations explaining how the index to the tunnel tapes could help establish his actual innocence. As to Tunnel Tape 61, the tape was not played at trial and the transcript of the

Records deposition of the Ohio State Highway Patrol ("OSHP") to obtain the computer generated index of witness statements and trial testimony, created and maintained by OSHP;.

The [OHSP] database burned to a CD by the OSHP;

Access to the original version of the database be provided by the OSHP;

Upon request, access to the interview summaries and transcripts still maintained by the OSHP at their facilities on Alum Creek Dr., Columbus, Ohio;

Copies of video depositions and transcripts of same in the possession of the OSHP;

Transcripts and/or tape recordings of RIB Hearings in the possession of DRC;

Copies of the video depositions of each of the witnesses that testified at Petitioner's trial, including: John Fryman, Interview No. 1210, Tape No. D006; David Lomache, Interview No. 1330, Tape No. D030; Stephen Macko, Interview No. 1255, Tape No. D036; Reggie Williams, Interview No. 1253, Tape No. D026;

Copies of the audio tapes of each of the witnesses that testified at Petitioner's Trial, including: Stacey Gordon, Interview No. 1326, Tape No. A194; Miles Hogan, Interview No. 1139, Tape No. A173; Kenneth Law, Interview No. 1245, Tape No. A189; David Lomache, Interview Nos. 807, 1243, Tape Nos. A014, A187; Stephen Macko, Interview Nos. 842, 890, 901, Tape Nos. A119, A138, A901; Roger Snodgrass, Interview No. 1289, Tape No. A192; and

Copies of any audio or video tapes prepared by the special prosecutor or the OSHP during the Lucasville Investigation relevant to the murder of CO Vallandingham.

---

tape was not introduced at trial. Also, importantly, no witness testified at trial that Hasan's voice could be heard on Tunnel Tape 61. Given these facts, Hasan has not established good cause to discover the drafts of Tunnel Tape 61 as relevant to prove his actual innocence.

Finally, Hasan is not entitled to discovery regarding deals offered to or accepted by inmates from the State for testimony. He offers only speculation that the State withheld information about deals.

## III.    GROUNDS FOR RELIEF DETERMINED ON THE MERITS IN STATE COURT

### A.    Discovery Sought for the Third Ground for Relief

**<u>Third Ground for Relief</u>**
Petitioner's venire was skewed in a racial fashion thereby depriving him of his rights to
trial by an impartial jury, equal protection, and due process in violation of the Sixth and
Fourteenth Amendments.

Petitioner seeks to conduct depositions of Fritz Meyer and Robert Grauvogel from the
Hamilton County Jury Commissioners Office regarding alleged racial disparity in the venire.
(Doc. 136 at 1; Doc. 110 at 6–7 (citing Tr. 95, 503, and 708).)

Petitioner alleges that the racial composition of the jury venire was skewed by the fact
that only African-American jurors had their juror questionnaires returned to them for further
completion, which resulted in those jurors being placed at the back of the venire.  The Ohio State
Supreme Court denied this claim on the merits during the direct appeal.  *State v. Sanders*, 92
Ohio St. 3d 245, 250–51, 750 N.E.2d 90 (2001).  "We . . . reject Sanders's claim that the system
used by the jury commissioner precluded the possibility of securing a representative jury."  *Id.* at
251.  Magistrate Judge Merz also recommended denying the Third Ground for Relief on the
merits.

Magistrate Judge Merz summarized this Ground for Relief as follows:

The crux of Hasan's claim is that "nearly all of the prospective African-American [sic]
jurors were in the last one-third of the panel making their service unlikely," and that such
a phenomenon defies statistical probability absent intentional discrimination.  (Petition,
Doc. No. 16 at 29, 31.)  The order of the venirepersons corresponded to the order in
which the individuals returned their completed jury questionnaires.  (Trial Tr. at 68,
1078, 1082, 1091.)  Some of the prospective jurors failed to complete their questionnaires
and were asked to do so, which resulted in their being placed farther back in the venire.
(*Id.* at 1082.)  The alleged discrimination was accomplished by returning the
questionnaires to African-Americans so as to result in their placement near the end of the
venire, according to Hasan.  (Petition, Doc. No. 16 at 33-35.)  He concedes, however,
that there is no evidence of the race of those individuals who were given their

> questionnaires back to complete, nor is there any evidence of how many questionnaires were returned for completion.  (Petition, Doc. No. 16 at 34.)  Hasan's claim is consequently reduced to conjecture and supposition.

(Doc. 81 at 26.)

The Court adds a few additional facts.  Hasan was given the opportunity at his trial to substantiate this claim by questioning Robert Grauvogel.  Regarding the initial questionnaires that were returned, the venire members had failed to complete basic sections such as their phone number or signature.  (Tr. 1082, 1089.)  Neither the questionnaires nor the jury cards specified a juror's race.  (Tr. 1090, 1096–97.)  The evidence did not support an inference that the jury commissioners could have purposely skewed the racial composition of the jury by returning only the questionnaires of black venire members.

Hasan points out that three white venire members were asked during voir dire about questions they failed to answer on juror questionnaires.  (Tr. 95, 503–04, 708.)  He implies that the white venire members were not reshuffled to the back of the venire.  However, the question that one white juror failed to answer almost certainly came from the supplemental death penalty questionnaire, (Tr. 95), not from the initial questionnaire upon which the juror sorting was conducted, (Tr. 1087–89).  The second juror provided some, but not all information, concerning his educational background.  (Tr. 503–04.)  Finally, the third venire member indicated on the questionnaire that he was employed, but didn't state where.  (Tr. 708.)  It is not clear from this voir dire question whether the venire member failed to answer a specific question on the questionnaire or if he merely failed to volunteer the information.  Accordingly, the evidence from the trial did not establish that these white venire members failed to complete basic intake information such as their signature or phone number.

11

Hasan concedes in his Traverse that he cannot prove the merits of this claim without discovery.  (Doc. 22 at 21–22.)  However, he fails to provide good cause to conduct discovery. He fails to provide specific allegations, beyond the insufficient facts testified to by Robert Grauvogel during the trial proceedings, which would establish a constitutional error entitling him to relief.[5]  For these reasons, the Court will not permit Hasan to conduct additional discovery on the Third Ground for Relief.

**B.      Fourth Ground for Relief**

> **Fourth Ground for Relief**
> Petitioner's right to effective assistance of counsel was violated when his trial counsel abandoned their claim of grand jury bias, thereby violating Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments.

Petitioner seeks to conduct a records deposition of the Scioto County Jury Commissioner for the list of grand jurors that capitally indicted Petitioner.  (Doc. 136 at 1; Doc. 110 at 7.)

---

[5] Hasan contends that Grauvogel's testimony that jurors were selected in the order in which they turned in their completed juror questionnaires is contradicted by the testimony of Fritz Meyer, another jury commissioner for Hamilton County, in a different case.  Meyer testified on November 9, 1994, in the case of *Ohio v. Moore*, Nos. B9400481, C9500009 (Hamilton Cty. C.P.), that jurors were chosenly randomly from the jury pool to sit in each case's venire.  He testified as follows:

> The jurors initially check in, fill out a questionnaire.  They also have a card with their name on it that we use.  Then we shuffle the cards and randomly select whatever the Court requests.  In this case, I believe they wanted fifty jurors.  We randomly selected those fifty jurors and selected them.

*Moore v. Mitchell*, No. 1:00-cv-023, Doc. 31 Apx., Tr. Vol. 2 at 221.

This apparent contradiction in whether jury venires were selected randomly or in the order they completed their questionnaires does not constitute good cause to conduct discovery. Grauvogel's testimony that neither the jury card nor the questionnaire specified the potential juror's race is uncontradicted.  (Tr. 1090, 1096.)  Hasan has not provided specific allegations of fact which could lead to a finding that the jurors were selected on the basis of their race, regardless of the procedure by which or order in which they were chosen.

Hasan alleges in this claim that his trial counsel had evidence to suggest that four members of the pool from which the Hasan grand jury was selected signed a petition supporting a lockdown at SOCF and the use of the death penalty in riot-related cases.  (Doc. 16 at 35–36; Doc. 28-6.)  Hasan's attorneys attempted to prove this allegation at a pretrial hearing by presenting two witnesses.  (Feb. 18, 1994 Tr. 41–67.)  The witnesses, two grand jury commissioners, testified that they did not know which members of the grand jury venire were selected for the grand jury.  (Feb. 18, 1994 Tr. 44, 48, 56.)  The trial court held the motion in abeyance, but it appears that Hasan did not substantiate the claim to the state court.  (Feb. 18, 1994 Tr. 64–65.)    The Ohio State Supreme Court determined a claim of ineffective assistance of counsel based on grand jury bias and denied it on the merits.  *Sanders*, 92 Ohio St. 3d at 274.[6]  The Supreme Court stated as follows:

> Sanders's counsel filed pretrial motions challenging the jury selection process and claiming bias in the grand jury.  At hearings on these motions, counsel presented witnesses but were unable to prove key factual claims.  Sanders contends that this was due to inadequate preparation.  It is equally likely, however, that the defense claims were incorrect. There is no way to tell from the record, so the ineffective assistance claim fails.

---

[6] The fact that the claim was determined on the merits in state court has bearing on the evidence this Court may consider when reviewing the claim in habeas.  Relief cannot be granted on any claim that was adjudicated on the merits in state court unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The Supreme Court recently instructed that "evidence introduced in federal court has no bearing on § 2254(d)(1) review."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011); *see also Bray v. Andrews*, 640 F.3d 731, 737 (6th Cir. 2011) (same).  "If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  *Id.*  Nonetheless, *Cullen* does not bar discovery on the claim because the decision "did not, strictly speaking, alter or even speak to the standards governing discovery set forth in Rule 6 of the [Habeas Rules] and *Bracy v. Gramley*."  *Conway v. Houk*, No. 2:07-cv-947, 2011 WL 2119373, at *3 (S.D. Ohio May 26, 2011).

(*Id.*)  Magistrate Judge Merz permitted Hasan to take limited discovery on this claim.  Hasan deposed Timothy Smith, one of his trial attorneys.  Timothy Smith testified that his now-deceased co-counsel, Dave Otto, made the decision to abandon the issue at trial, but Smith did not remember or know why.  (Doc. 58-1, Smith Dep. at 41–42.)  Magistrate Judge Merz found that Smith's testimony did not rebut the strong presumption that trial counsel acted within the bounds of professional reasonableness.  (Doc. 81 at 27–28; Doc. 119 at 8.)  Magistrate Judge Merz then recommended denying the claim on the merits.  (Doc. 81 at 28; Doc. 119 at 8.)

The Court will permit Hasan to obtain the discovery he seeks.  The discovery sought is limited and should definitively establish whether any jurors on Hasan's grand jury signed petitions regarding the response to the Lucasville riot.

## C.     Nineteenth Ground for Relief

**Nineteenth Ground for Relief**
Appellate counsel were ineffective when they failed to allege as error that Petitioner was denied access to the grand jury testimony [of] his alleged co-defendants and alleged co-conspirators in violation of the Fourteenth Amendment.

Petitioner seeks to depose his appellate counsel regarding their failure to raise on appeal a claim that Hasan was wrongfully denied grand jury testimony.  (Doc. 110 at 7; Doc. 136 at 1.)

Petitioner alleges in this claim that he sought at trial to discover the grand jury testimony of other defendants, co-conspirators, and complicitors in the Lucasville riot.  The trial court granted his motions on this issue in part and agreed to conduct an *in camera* review of any testifying witness to determine if the testimony contained exculpatory or inconsistent materials.  (Tr. Vol. B at 6–10.)  The trial court record is silent as to whether the trial court conducted the *in camera* reviews.  Hasan asserts that his appellate counsel should have raised a claim on direct

14

appeal that the trial court erred by not holding the *in camera* reviews.  He concedes that he needs discovery to establish prejudice from the ineffectiveness.  (Doc. 22-1 at 37.)

Hasan raised this issue of ineffective assistance of appellate counsel on direct appeal to the Ohio Supreme Court.  (ROW, Apx. Vol. III-C at 299, 303.)  The Ohio Supreme Court denied the claim on the merits.  The Supreme Court explained as follows:

> [Hasan] lists twenty-two issues that his counsel failed to advance in the court of appeals.  However, raising every possible error is not required for effective appellate assistance.  None of Sander's new claims is so strong that competent counsel would have felt compelled to raise it; indeed they are not notably stronger than the issues that appellate counsel did raise.

*Sanders*, 92 Ohio St. 3d at 275.  Magistrate Judge Merz recommended denying the Ground for Relief on the merits without granting the discovery sought.  Because the state court record is silent, regularity in the trial court proceedings is presumed.  *See Walker v. Johnston*, 312 U.S. 275, 286 (1941).  Therefore, appellate counsel were not ineffective for failing to appeal a claim that would have been without merit.  If Hasan cannot prove ineffectiveness, then it is irrelevant whether he could establish, with the aid of discovery, prejudice from appellate counsel's decision.

Moreover, Hasan has not established good cause to obtain the discovery requested. Hasan stated in his Traverse that he would need to examine the grand jury transcripts to establish whether the failure of appellate counsel to raise this issue on appeal prejudiced him.  (Doc. 22-1 at 37.)  In the most recent discovery briefs, however, Hasan requests to depose his appellate counsel to prove prejudice.  (Doc. 110 at 7; Doc. 136 at 1.)  Hasan has not set forth specific allegations to support his premise that appellate counsel's testimony could help him establish prejudice, even if he could establish a constitutional error.  The Court will not grant Hasan

15

additional discovery in regards to the Nineteenth Ground for Relief.

**IV.     CONCLUSION**

Petitioner Hasan is authorized to conduct discovery as set forth herein as soon as is practicable.  The parties are to file a joint discovery status report or to jointly request a telephonic conference regarding the status of discovery on or before February 28, 2012.

IT IS SO ORDERED.


_____s/Susan J. Dlott_____
Chief Judge Susan J. Dlott
United States District Court