# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

SIDDIQUE ABDULLA HASAN,
 Formerly known as Carlos Sanders,

        Petitioner,     :    Case No. 1:03-cv-288

  - vs -                   District Judge Susan J. Dlott
                                    Magistrate Judge Michael R. Merz

TODD ISHEE, Warden

                                  :

        Respondent.

## DECISION AND ORDER

      This capital habeas corpus case is before the Court on Petitioner's Objections (ECF No. 203) to the Magistrate Judge's Decision and Order ("Decision" ECF No. 190) which denied Petitioner's Motion to Amend, for Additional Discovery, an Evidentiary Hearing, or to Stay and Abeyance of Proceedings to Allow Exhaustion of Newly Discovered Claim (ECF No. 185).

      The Motion at issue was filed by Attorney Lawrence Komp who, on the same day he filed it (August 3, 2017), moved to withdraw as counsel in the case (ECF No. 186).  The Objections were filed by newly-appointed counsel Shawn Nolan and, because of extensions of time for briefing, did not become ripe for decision until December 7, 2018 (Reply, ECF No. 207).

      All the matters covered by the Decision are non-dispositive pre-trial matters on which a Magistrate Judge has authority to make an initial decision.  Such decisions are reviewed by the assigned District Judge for clear error as to matters of fact and de novo for asserted errors of law. Fed.R.Civ.P. 72(a).

1

**Applicability of *Martinez* and *Trevino* to Ohio Ineffective Assistance of Trial Counsel Claims**

Petitioner's First Objection is that the Magistrate Judge did not apply *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), in deciding the Motion (Objections, ECF No. 203, PageID 14083-94, 14127-30).

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In *Martinez* the Supreme Court created an equitable exception to *Coleman*, holding:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (describing standards for certificates of appealability to issue).

566 U.S. at 14. In *Trevino*, the Court extended *Martinez* to the Texas system, holding that Texas effectively, albeit not expressly, requires ineffective assistance of trial counsel claims to be brought

2

in post-conviction. 569 U.S. at 429.

Hasan seeks an evidentiary hearing in this case to show that his post-conviction counsel provided ineffective assistance (ECF No. 185, PageID 13921-22). In fact, in the Objections Hasan argues at length how his post-conviction counsel was ineffective (ECF No. 203, PageID 14090-92). However, that ineffectiveness is material only if *Martinez* and *Trevino* apply to the Ohio system of raising ineffective assistance of trial counsel claims. Hasan complains that the Magistrate Judge made no determination of whether post-conviction counsel performed deficiently or whether that deficient performance included not raising a substantial claim of ineffective assistance of trial counsel (Objections, ECF No. 203, PageID 14088).

While that is true, the Magistrate Judge's reason for not reaching those questions is that the Sixth Circuit has never decided whether *Martinez* and *Trevino* apply to the Ohio system. As the Magistrate Judge noted, the Sixth Circuit in *Hill v. Mitchell*, 842 F.3d 910, 937-38 (6th Cir. 2016), discussed the possible applicability of *Martinez/Trevino* and expressly declined to decide the question as it had previously refused to do in *McGuire v. Warden,* 738 F.3d 741 (6th Cir. 2013), and *Williams v. Mitchell*, 792 F.3d 606, 615 (6th Cir. 2015). After *Hill* it again declined to decide the question in *Moore v. Mitchell*, 848 F.3d 774, 777 (6th Cir. 2017), a case in which certiorari was denied only a month before the Magistrate Judge's decision.

Hasan objects that this Court should not wait for the Sixth Circuit, but has a "duty to determine in the first instance whether *Martinez* applies in Ohio." (Objections, ECF No. 203, PageID 14083.) He points to no authority from the Sixth Circuit imposing this duty on the District Courts. Instead, he cites cases arising under 28 U.S.C. § 2255, the habeas-like remedy in federal criminal cases, where the federal appellate courts have spoken of the need to add evidence to the

3

appeal record in those cases.[1] That authority is inapposite here because the federal courts, unlike Ohio, do not require ineffective assistance of trial counsel claims to be raised on direct appeal even if the claim is apparent on the face of the record. *Massaro v. United States,* 538 U.S. 500 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999). There are also no federalism concerns involved in assigning all federal ineffective assistance of trial counsel claims to § 2255 proceedings.

Hasan also cites cases from other circuits holding *Martinez* and *Trevino* apply to other state systems for litigating ineffective assistance of trial counsel claims. (ECF No. 203, PageID 14084, citing *Fowler v. Joyner*, 753 F.3d 446, 462-63 (4th Cir. 2014) (North Carolina); *Brown v. Brown*, 847 F.3d 502, 506, 508–11 (7th Cir. 2017) (Indiana); and *Lafferty v. Crowther*, No. 2:07-CV-322, 2016 WL 5848000, *2 (D. Utah 2016). Of course, the United States Court of Appeals for the Sixth Circuit has itself held the *Martinez/Trevino* exception applies in Kentucky, *Woolbright v. Crews*, 791 F.3d 628 (6th Cir. 2015), and in Tennessee, *Sutton v. Carpenter,* 745 F.3d 787, 789 (6th Cir. 2014). But Hasan cites no case where any court has applied *Martinez* and *Trevino* to the Ohio system, and indeed, the Sixth Circuit has expressed doubt that such application would be appropriate. *See Henness v. Bagley*, 766 F.3d 550, 557 (6th Cir. 2014), citing *Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir. 2013) ("this court has concluded that *Martinez* does not apply in Ohio because Ohio permits ineffective-assistance-of-counsel claims on direct appeal.").

The Court is persuaded that application of *Martinez* and *Trevino* to Ohio must await a decision of the Sixth Circuit. Given that the appellate court has had the question presented many times and eluded it on each occasion, this Court should not proceed until the circuit court decides.

---

[1] Objections, ECF No. 203, PageID 14083-84, citing *Massaro v. United States*, 538 U.S. 500, 505 (2003); *United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004); and *United States v. Brown,* 332 F.3d 363, 368-69 (6th Cir. 2003); *United States v. DeRewal,* 10 F.3d 100, 103-04 (3rd Cir. 1993).

To do so would involve this Court in conducting extensive proceedings in this and many other habeas corpus cases which might well be held for naught. The Magistrate Judge's refusal to apply *Martinez* and *Trevino* in this case is not contrary to law.

**Hasan's Actual Innocence Claim**

The Magistrate Judge declined to allow an evidentiary hearing for the presentation of Hasan's claim of actual innocence on the ground that the new evidence he had submitted was not of the quality required by *Schlup v. Delo*, 513 U.S. 298 (1986) (Decision, ECF No. 190, PageID 14025-26). Hasan objects that

> [The Magistrate Judge's] application of *Schlup* was unduly narrow and restrictive. . The evidence of actual innocence before the Magistrate Judge meets the probabilistic *Schlup* standard because it raises "sufficient doubt about [Petitioner's] guilt to justify the conclusion that his execution would be a miscarriage of justice unless his conviction was the product of a fair trial."

(Objections, ECF No. 203, PageID 14095, quoting *Schlup,* 513 U.S. at 316).

A habeas petitioner's burden at the *Schlup* gateway stage "is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). Petitioner objects that on occasion in the Decision the Magistrate Judge, in stating the actual innocence standard, omitted the "more likely than not" language.

On examination, the Court finds the Magistrate Judge twice stated the standard in full in correcting Hasan's misstatement of the standard. Two pages later the Magistrate Judge omitted the "more likely than not" language twice in the same paragraph. (Decision ECF No. 190, PageID 13984, 13986). Petitioner calls this omission "repeated" and infers from it that the Magistrate Judge required Hasan to prove his innocence "not by a preponderance standard, but to an absolute certainty." (Objections, ECF No. 203, PageID 14098.)

5

The Court is not persuaded the Magistrate Judge applied the wrong standard. Under *Schlup*, the new evidence offered to show actual innocence must be considered together with the evidence presented at trial. *Schlup*, 513 U.S. at 330-32. That is exactly what the Decision says it will do: "the Court will summarize the testimony of each witness who testified at Hasan's trial along with any new evidence he has presented that challenges the witnesses' testimony or credibility." (ECF No. 190, PageID 13988). The Decision then continues for more than twenty-five pages summarizing the evidence both at trial and submitted after trial on the issue of Hasan's guilt or innocence. *Id*. at PageID 13988-14015.

Having summarized the evidence, the Decision proceeds to evaluate it (ECF No. 190, PageID 14015, *et seq.*) The Magistrate Judge notes that some of the new evidence consists of affidavits recanting trial testimony and notes that courts treat such affidavits with great caution. Some of the new evidence is the results of polygraph examinations; the Decision notes that the Sixth Circuit has repeatedly expressed its opinion that the polygraph is inherently unreliable. *Id*. at PageID 14020, citing numerous cases.

Hasan argues that some inmates received consideration for their testimony, but cites to his trial transcript to show that this is so (Decision, ECF No. 190, PageID 14021). The Magistrate Judge found this was not new evidence. *Id.* at PageID 14022.

Finally, the Magistrate Judge noted that none of the proffered new evidence was of a type listed in *Schlup* – exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence (Decision, ECF No. 190, PageID 14023, citing *Schlup*, 513 U.S. at 324).

The Decision states and then applies the correct *Schlup* standard to all of the evidence, both trial and post-trial and finds it wanting. Hasan objects that a credibility finding as to the new evidence should not be made without an evidentiary hearing at which the credibility of witnesses

could be judged live. But to do that with all of the witnesses Hasan has named would essentially be to retry the case, hearing live both the trial witnesses and the persons who have provided testimony post-trial. The Court is persuaded that no evidentiary hearing is required. The nature of the new evidence – recanting affidavits, polygraph results, etc. – is such that no full-blown repeat of the trial is necessary to conclude they do not satisfy the *Schlup* standard.

**Fourth Ground for Relief**

Hasan's Fourth Ground for Relief asserted his trial counsel were ineffective for not pursuing further a challenge to the composition of the grand jury that indicted Hasan:

> Petitioner's right to effective assistance of counsel was violated when his trial counsel abandoned their claim of grand jury bias, thereby violating Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments.

(Petition, ECF No. 16, PageID 2061.) The Petition alleges that trial counsel had "evidence to suggest that four members of the pool from which the grand jury was selected signed a petition supporting a lockdown at SOCF and the use of the death penalty in riot-related cases. *Id.* According to the Petition, the trial court held a hearing on this issue, but the witnesses called did not provide proof of the allegation and no other evidence was ever presented. *Id.* The Fourth Ground for Relief continues:

> The Fifth Amendment requires that an indictment be returned by a legally constituted and unbiased grand jury. If a member of the grand jury that indicted Petitioner signed this petition, he or she was not unbiased. Instead, that juror was predisposed on the issue of the culpability of the inmates, established by the petition's support of a lockdown of SOCF inmates, and guilt, established by the petition's encouragement of the use of the death penalty in cases resulting from the riot. Trial counsel had an obligation to fully develop these facts in the court Counsels' [sic] failure to do so rendered them ineffective and deprived him of his rights to indictment by an unbiased grand jury and due process in violation of the Fifth, Sixth, and Fourteenth Amendments.

7

*Id.* at PageID 2062.

In recommending that the Fourth Ground for Relief be dismissed, the Magistrate Judge noted that Hasan had never produced any of the facts that he claims would have proven this grand jury bias claim and which his counsel could allegedly have gathered (Report and Recommendations of August 14, 2006, ECF No. 81, PageID 1078). Hasan had been granted discovery on this claim before the Report was filed. His trial attorney Timothy Smith testified at deposition that the decision not to pursue this claim was made by his deceased co-counsel Dave Otto for reasons Smith did not know (Smith Depo., ECF No. 58-1, PageID 743-44). The Report concluded this did not show any deficient performance on Otto or Smith's part, especially without a showing of what a further investigation would have revealed (ECF No. 81, PageID 1078-79).

After the Report was filed, the Court permitted extensive additional discovery which, along with discovery in two other Lucasville cases, was managed by District Judge Algenon Marbley. As part of that discovery, Hasan obtained lists of the grand jurors on both the capital and non-capital indictments. A public records request yielded copies of the allegedly offending petitions. As a result,

> Petitioner's counsel has identified that at least three (3) grand jurors (Grand Jurors #7, #10, & #11) that voted to indict on the non-capital offenses signed the petition and at least one (1) grand juror (Grand Juror #9) that voted to indict on the capital offense signed the petition. Compare R. 166-2 p. 1 (Exh. B Sealed SOCF Petitions) PAGEID # 13659 (GJ #7 Column 1, Line 11)6, id. p. 2 PAGEID # 13660 (GJ #10 Column 1, Line 7), id. 3 PAGEID # 13661 (GJ #11 Column 1, Line 16), and id. 4 PAGEID # 13662 (Capital GJ #9 Column 1, Line 27).

(Motion, ECF No. 185, PageID 13855.) In the Motion, Hasan sought to add these facts to his Habeas Petition and to do additional discovery to learn whether other indicting grand jurors signed the petition. *Id.* at PageID 13859. To the extent these facts were not discovered in post-conviction,

8

Hasan argues *Martinez* will excuse that. *Id.* at PageID 13860

The Magistrate Judge's Decision denied those portions of the Motion directed to the Fourth Ground for Relief (ECF No. 190, PageID 13980, *et seq.*)  His rejection of the application of *Martinez* and *Trevino* has been discussed above.  The Decision also notes Hasan makes no claim his attorneys provided ineffective assistance by not raising some issue of state law.[2]  Rather, the claim is only that he is constitutionally entitled to a bias-free grand jury under the Fifth Amendment and his trial attorneys were ineffective for not pursing that claim.  *Id.* at PageID 13982.  The Decision proceeds to note that there is no Fifth Amendment right to a grand jury in state courts. *Id.* at 13982-83, citing *Hurtado v. California*, 110 U.S. 516, 537-38 (1884), and *McDonald v. City of Chicago,* 561 U.S. 742, 810 (2010) (confirming that *Hurtado* is still good law).  Since the underlying claim is without merit, the Decision concluded that there could not be ineffective assistance of trial counsel in failing to pursue it.  *Id.* at PageID 13982-84.

Hasan objects by citing *Williams v. Pennsylvania*, 136 S.Ct. 1899 (2016) (ECF No. 203, PageID 14104).  In that case, the Supreme Court extended *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), to a situation where a person who as district attorney had urged imposition of the death penalty, then declined to recuse himself when the case came before him as an appellate judge.  136 S.Ct. at 1908-09.  The Court declined to consider whether, as one vote on a multi-judge panel, the actually biased[3] judge influenced other judges in reaching a decision. Rather, the presence of an actually biased judge in the decision-making judicial process was a structural error requiring habeas relief.  *Id*. at 1910.  Hasan argues by analogy that the presence of even one biased grand juror is a structural error and not amenable to harmless error analysis.

---

[2] It would of course constitute federally unconstitutional ineffective assistance of trial counsel to fail to raise a controlling issue of state law.
[3] The Court found actual bias resulting from the prior involvement in the case.

9

The analogy fails. The Supreme Court has held for almost one hundred years that involvement of a biased judge requires reversal of a criminal conviction. In *Tumey v. Ohio*, 273 U.S. 510 (1927), it held the Due Process Clause incorporates the common-law rule requiring recusal when a judge has a direct, personal, substantial, pecuniary interest in a case. That tradition continued through *Caperton* and *Williams*; the most recent precedent is *Rippo v. Baker*, 137 S.Ct. 905, 907 (2017) (per curiam). The need to avoid even the appearance of decision by a judge with a possible bias led the Supreme Court in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), to grant relief from judgment under Fed.R.Civ.P. 60(b)(6) when it was learned, post-judgment, that the trial judge in the case was a trustee for a university that had a piece of land that would be affected by the judgment. Relief under Rule 60(b)(6) is granted only in extraordinary circumstances.

In contrast, the Supreme Court has never held that a criminal defendant is entitled to a grand jury comprising entirely persons with no possible bias. While the courts, both state and federal, employ questionnaires and sometimes extensive voir dire to remove possibly biased petit jurors and allow peremptory challenges just on the hunch that a venireperson may be biased, no such process exists or is constitutionally required to exist for selecting grand jurors.

Hasan relies on *Vasquez v. Hillery*,[4] 474 U.S. 254 (1986). There the Supreme Court upheld an equal protection challenge to a conviction on an indictment returned by a grand jury from which African-Americans had been systematically excluded. Justice Marshall relied on case law going back more than one hundred years reversing state convictions on indictments from grand juries from which African-Americans had been excluded. *Vasquez*, 474 U.S. at 261, citing *Strauder* v. *West Virginia*, 100 U.S. 303, 308 (1880); *Neal* v. *Delaware*, 103 U.S. 370, 396 (1881); *Bush* v.

---

[4] Misspelled "Hillary" in the Objections, ECF No. 203, PageID 14106.

*Kentucky*, 107 U.S. 110 (1883); *Gibson* v. *Mississippi*, 162 U.S. 565 (1896); *Carter* v. *Texas*, 177 U.S. 442 (1900); *Rogers* v. *Alabama*, 192 U.S. 226 (1904); *Pierre* v. *Louisiana*, 306 U.S. 354 (1939); *Smith* v. *Texas*, 311 U.S. 128 (1940); *Hill* v. *Texas,* 316 U.S. 400 (1942)*; Cassell* v. *Texas*, 339 U.S. 282 (1950); *Reece* v. *Georgia*, 350 U.S. 85 (1955); *Eubanks* v. *Louisiana*, 356 U.S. 584 (1958); *Arnold* v. *North Carolina*, 376 U.S. 773 (1964); *Alexander* v. *Louisiana*, 405 U.S. 625 (1972); and *Rose* v. *Mitchell*, 443 U.S. 545 (1979).[5] In contrast, there is no precedent cited by Hasan for overturning a conviction on the basis that some of the grand jurors may have been biased.

Hasan counters the Decision's point that there is no constitutional right to a grand jury with the argument that once a State elects to have a grand jury, "the process needed to accord with the Constitution," (Objections, ECF No. 203, PageID 14106, citing *Evitts v. Lucey*, 469 U.S. 387 (1985)). In *Evitts*, the Supreme Court held that the right of effective assistance of counsel extends to a first criminal appeal of right. 469 U.S. at 394. But the Court has never extended that right even to require effective assistance of counsel in post-conviction.[6] It certainly has never held that there is a constitutional right to a grand jury from which all possibly biased persons have been excluded.

The Magistrate Judge's Decision that the proposed amendments to Ground for Relief Four should be denied is AFFIRMED because it is not contrary to law.

**Eighth and Ninth Grounds for Relief**

In his Eighth Ground for Relief, Petitioner claims

> Trial counsel were ineffective for failing to investigate and present witnesses which could have affirmatively confronted the state's case that Petitioner orchestrated the 1993 prison riot and ultimately maintained a leadership role throughout its course and ordered the

---

[5] Citations in same order as given in *Vasquez* opinion.

[6] The Court in *Martinez* emphasized it was not recognizing such a constitutional right, but merely an equitable exception of procedural default.

11

> killing of a guard in violation of the Sixth and Fourteenth Amendments.

(Petition, ECF No. 16, PageID 2069.)

In his Ninth Ground for Relief he asserts:

> Petitioner's attorney's [sic] were ineffective when they failed to investigate and cross examines [sic] state's witnesses which would have dispelled the state's theory that Petitioner orchestrated the 1993 prison riot and ultimately maintained a leadership role throughout its course and ordered the killing of a guard in violation of the Sixth and Fourteenth Amendments.

*Id.* at PageID 2083.

In the August 2006 Report, the Magistrate Judge recommended that these two grounds for relief be dismissed as procedurally defaulted (ECF No. 81, PageID 1094-95). In the instant Motion, Hasan seeks an evidentiary hearing "either on *Schlup* or *Martinez* as a basis to determine whether cause and prejudice exists for the procedural default." (ECF No. 185, PageID 13867.) The Decision rejected that request for reasons the Court has adopted above on the applicability of *Martinez* to Ohio and Hasan's failure to present new evidence that satisfies the *Schlup* standard.

Hasan's Objections present what he describes as "a comprehensive factual analysis." (ECF No. 203, PageID 14107-14126.) He asserts that

> The Magistrate Judge discusses in detail the evidence presented at trial, as well as that proffered during subsequent stages of litigation. Viewed as a whole, and as described with specificity below, that evidence was often contradictory and inconsistent. But rather than conduct an evidentiary hearing to resolve the contradictions and assess witnesses' credibility, the Magistrate Judge assessed the evidence without a hearing, rejected the import of the proffered evidence, and determined that the facts did not meet the *Schlup* standard. Petitioner objects to all of these rulings regarding the evidence, for the reasons discussed below.

(ECF No. 203, PageID 14107-08.) Hasan here admits what he earlier denied, to wit, that the Magistrate Judge considered the proffered new evidence along with the evidence at trial. But the

12

lengthy summary of the evidence makes clear what it is Hasan wants: essentially a full new trial in federal court in which a judge hears all the evidence, old and new, then assesses the credibility of the proffered evidence after that exercise. When that hearing – which would undoubtedly take many weeks – was complete, then the Court could, from Hasan's point of view, decide whether he had met the *Schlup* standard and only then to proceed to consider the merits of his ineffective assistance of trial counsel claims. That is not a process contemplated by the federal habeas corpus statutes. Rather, as the Magistrate Judge concluded, Hasan has not submitted sufficient new evidence of the type required by *Schlup* to meet the actual innocence gateway.

The Objections argue the Magistrate Judge considered only newly discovered evidence as contrasted with evidence that previously existed but had not previously been presented (ECF No. 203, PageID 14131). The Objections contain no citation to any place in the Decision where the Magistrate Judge relied on that distinction. The only place the Decision adverts to this distinction is in a parenthetical explaining the unpublished decision of the Sixth Circuit in *Chavis-Tucker v. Hudson*, 348 F. App'x 125, 133-34 (6th Cir. Oct. 9, 2009), where the court found that new evidence in *Schlup* meant newly discovered evidence. In the subsequently published decision in *Cleveland v. Bradshaw*, 693 F.3d 626 (6th Cir. 2012), the court acknowledged a circuit split on the question and declined to decide it, suggesting it would come down on the side of "newly presented" if required to do so. *Id*. at 633. But the Magistrate Judge did not exclude consideration of proffered evidence on the basis of the distinction and the Decision is therefore not contrary to law on this point.

The Objections argue the Decision applies too high a standard in determining whether to hold an evidentiary hearing, concluding "what effect that evidence might have on a reasonable juror." (ECF No. 203, PageID 14133.) But that is too low a standard. To prevail on his *Schlup*

13

gateway claim, Hasan must show that in light of the evidence it is more likely than not that **no** reasonable juror would convict. *Schlup*, 513 U.S. at 327. Hasan next argues the Magistrate Judge applied the sufficiency of the evidence test adopted in *Jackson v. Virginia*. *Id*., citing 443 U.S. 307 (1979). Hasan is mistaken. The Decision does not reject his claims because there was sufficient evidence to convict, but because Hasan has not presented sufficient evidence of the quality required by *Schlup* to show it is more likely than not that no reasonable juror would have convicted.

Hasan concludes this section of his Objections by citing the recommendation of the Joint Task Force to Review the Administration of Ohio's Death Penalty that the death penalty be precluded when a conviction is based on jailhouse informants that is not independently corroborated by other evidence. (ECF No. 203, PageID 14134.) The Court recognizes the problems associated with jailhouse informants, who are sometimes placed in proximity to accused inmates and given incentives for their testimony. However, a prison riot situation is very different: all of the eyewitnesses, except for guards taken hostages who survive, will unavoidably be convicted felons.

Hasan's Objections to the Magistrate Judge's Decision on the Eighth and Ninth Grounds for Relief are overruled.

**Tenth Ground for Relief**

As pleaded in the Petition, the Tenth Ground for Relief reads "[t]he trial prosecutors suppressed exculpatory evidence by failing to disclose to trial counsel the change in testimony by numerous inmate witnesses in violation of the Fourteenth Amendment." (ECF No. 16, PageID 2090.) The Magistrate Judge's August 2006 Report and Recommendations concluded this claim was procedurally defaulted in that it had never been presented to the state courts (ECF No. 81,

PageID 1096-98). The Report also concluded some of the materials relied on to show a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), were public records. Finally, Hasan had failed to show much of the material relied on was in the possession of the prosecutors.

In the instant Motion, Hasan contends that the materials supporting his Eighth and Ninth Grounds for Relief were *Brady* materials which should have been disclosed to trial counsel. The Decision rejected this claim as procedurally defaulted and declined to apply either *Schlup* or *Martinez* to excuse that default. (ECF No. 190, PageID 14026-30). It also noted that the *Brady* claim as argued in the Motion was far different from the Tenth Ground for Relief as pleaded. *Id.* at PageID 14028.

For the reason already given above as to *Schlup* and *Martinez*, the Court finds the Decision as to Ground Ten is neither clearly erroneous nor contrary to law and the Objections to that portion of the Decision are overruled.

**Proposed New Thirty-Sixth Ground for Relief**

Included in the instant Motion is a request to amend to add a new thirty-sixth ground for relief: "Petitioner's rights to due process were violated when an arm of the Ohio Supreme Court provided legal advice, and that contact was not disclosed to Petitioner." (ECF No. 185, PageID 13219.) This claim is based on consultation between the prosecutors in the case and Warren Bettis, then Disciplinary Counsel for the Ohio Supreme Court. Apparently, some inmates at Lucasville were declining to be interviewed by the prosecutors on the ground they were represented by counsel whom they insisted be present. Evidence of this consultation was uncovered in the so-called Warehouse Discovery undertaken with this Court's permission. Hasan claims that the rendering of this advice by its Disciplinary Counsel disqualified the entire Ohio Supreme Court from hearing the case on appeal.

15

The Magistrate Judge denied the request to amend. He concluded that even if there was an ethical violation in contacting Disciplinary Counsel, there was no evidence that any Justice of the Ohio Supreme Court was ever aware of the contact (Decision, ECF No. 190, PageID 14030-33). The Decision noted that violations of ethical rules for government of the bar do not rise to the level of due process violations. *Id.* Finally, he noted that Sergeant Howard Hudson of the Ohio Highway Patrol had testified at Hasan's trial about the contact between prosecutors and the Supreme Court of Ohio so that any violation arising from the incident was known to counsel at the time of trial and therefore not newly discovered. *Id.*

Hasan's Objections repeatedly mischaracterize what happened as a consultation by the prosecutors with the Supreme Court of Ohio (*See, e.g.*, ECF No. 203, PageID 14143, 14144). There is absolutely no evidence of any ex parte contact between any Justice of the Supreme Court of Ohio and any prosecutor involved in this case. Petitioner is correct that if it were shown that any member of the supreme court advised the prosecutors how to investigate the case that would create serious due process problems. But there is no evidence that happened.

In Ohio the supreme court governs the bar by regulating both admission and discipline. It carries out the disciplinary portion of that role in part by having an Office of Disciplinary Counsel. According to Sergeant Hudson's testimony at trial, what apparently happened in the wake of the Lucasville riot was that the public defender's office[7] assigned counsel to every inmate without their being charged with any offense. It would have been a violation of the Code of Professional Responsibility (as it was then called) for any prosecutor to speak with a represented person without having that person's attorney present. Confronted with this assertion of omnibus representation by the public defender, the prosecutor sought ethics advice from the most competent ethics

---

[7] Hudson's testimony does not indicate whether it was the Ohio Public Defender or a local defender office.

16

authority in the state, the Disciplinary Counsel.

Hasan argued that the pertinent section of the Rules Governing the Bar as of 1993 "did not permit the Disciplinary Counsel to render advisory opinions." (Motion, ECF No. 185, PageID 13917.) But neither does it prohibit him, as the State's principal officer for enforcing the Code of Professional Responsibility, from giving ethical advice to an attorney who requests it. Faced with a volatile situation involving investigation of a major prison riot, what could have been more prudent behavior by the prosecutor than to ask for ethics advice?

Even if giving the requested advice in these circumstances was an ultra vires act by Disciplinary Counsel, a violation of state law does not per se rise to the level of a violation of due process. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995).

Hasan relies on Supreme Court case law from *Tumey v. Ohio,* 273 U.S. 510 (1927), through *Williams v. Pennsylvania,* 136 S.Ct. 1899 (2016), for the proposition that a judge cannot serve as both prosecutor and adjudicator in a case. *Williams* is discussed above. In *Tumey* the Supreme Court found unconstitutional the Ohio mayor's court system as it existed in 1927 whereby a mayor was only paid for his service in a judicial capacity for convictions and was also responsible for municipal revenue. While *Tumey* contains broad language by Chief Justice Taft about the need for judicial impartiality, it certainly does not hold, and no case since it has held, that an entire state supreme court is disqualified as a matter of due process when its ethical officer gives ethical advice on request to an attorney.

Hasan objects that the evidence he has produced is sufficient to warrant "further discovery to determine to what extent the Ohio Supreme Court advised the state during the investigation and prosecution of Hasan's case," claiming his "evidence of judicial bias is much stronger than that in *Bracy* [*v. Gramley*, 520 U.S. 899 (1997)]." (ECF No. 203, PageID 14147). Hardly. In *Bracy* the petitioner claimed he had been treated more harshly because he had not bribed a judge who had been convicted and imprisoned for accepting a bribe from another defendant. Here, Hasan has no evidence that any justice of the Ohio Supreme Court had any ex parte contact with any of the prosecutors. Sergeant Hudson's representation that the investigative procedure had been "upheld by the Supreme Court of the state[,]" (ECF No. 163-10, PageID 10881), constitutes a layman's misunderstanding of what happened.

The Magistrate Judge held the claim was untimely because Sergeant Hudson testified about the advice at trial. Hasan objects that this is not a newly discovered and therefore untimely claim because he has found documentary evidence in discovery to support it – notes about the conversation with Warren Bettis (Objs., ECF No. 203, PageID 14145-46). But the discovery of new evidence in support of a claim does not make the claim itself newly arising.

The Magistrate Judge's denial of the amendment to add the proposed thirty-sixth ground for relief is not contrary to law. The proposed amendment does not state a claim for violation of the Constitution and it is untimely. Hasan's Objections to this portion of the Decision are overruled.

**Conclusion**

Petitioner's Objections to the Magistrate Judge's Decision having been overruled, the case remains pending for decision on the Report and Recommendations of August 14, 2006 (ECF No.

81) and the Supplemental Report and Recommendations of December 29, 2010 (ECF No. 119).

March _28__, 2019.

                                              ___s/Susan J. Dlott_____
                                                     Susan J. Dlott
                                          United States District Judge