# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

SIDDIQUE ABDULLAH HASAN,
Formerly known as Carlos Sanders,

    Petitioner,  : Case No. 1:03-cv-288

 - vs -       District Judge Susan J. Dlott
            Magistrate Judge Michael R. Merz

TODD ISHEE, Warden

            :

    Respondent.

# DECISION AND ORDER

  This capital habeas corpus case is before the Court on Petitioner's Motion to Amend Claim Thirty-One (ECF No. 210). Respondent opposes the Motion (Warden's Opposition, ECF No. 211) and Petitioner has filed a Reply in support (ECF No. 212). At Petitioner's request, the Motion was argued orally on May 15, 2019 (Transcript, ECF No. _____); Stuart Lev and Maura McNally represented Petitioner and Stephen Maher represented Respondent.

  Amendment of a habeas corpus petition is governed by 28 U.S.C. § 2242 which incorporates the standards from Fed.R.Civ.P. 15. As a nondispositive pretrial matter, a motion to amend is within the decisional authority of a Magistrate Judge, subject to review under Fed.R.Civ.P. 72(a) for clear error on factual matters and de novo review on questions of law. (Order, ECF No. 213); *McKnight v. Bobby*, No. 2:09-cv-59, 2017 U.S. Dist. LEXIS 63861 (S.D. Ohio Apr. 27, 2017) (Dlott, J.); *Monroe v. Houk*, No. 2:07-cv-258, 2016 U.S. Dist. LEXIS 38999 (S.D. Ohio, Mar. 23, 2016) (Sargus, J.).

  The general standard for considering a motion to amend under Fed. R. Civ. P. 15(a) was

enunciated by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of any allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

371 U.S. at 182. *See also Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997)(citing *Foman* standard).

In considering whether to grant motions to amend under Rule 15, a court should consider whether the amendment would be futile, i.e., if it could withstand a motion to dismiss under Rule 12(b)(6). *Foman*, 371 U.S. at 182; accord *Parchman v. SLM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018); *Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003); *Consumers Petroleum Co. v. Texaco, Inc.*, 804 F.2d 907, 913 (6th Cir. 1986).

The Respondent argues that proposed amended Claim Thirty-One would be subject to dismissal on the basis of two affirmative defenses, the statute of limitations and procedural default. He also asserts the Motion has been brought after undue delay and with dilatory motive. These arguments are considered in turn.

**The Statute of Limitations**

Respondent opposes the Motion on the ground that the amendment would be futile because it is barred by the one-year statute of limitations in 28 U.S.C. § 2244(d). The timeliness of the original Petition, filed April 22, 2003, has not been questioned. The issue here is whether

the amendment would relate back to the filing date of that original Petition under Fed.R.Civ.P. 15(c)(1).

Anticipating a statute of limitations defense, Hasan argues in the Motion that the facts he seeks to plead in his amended Claim Thirty-One relate back to the facts supporting his original Claim Thirty-One, bringing the amendment within the rule of *Mayle v. Felix*, 545 U.S. 644 (2005), as interpreted in *Watkins v. Deangelo-Kipp*, 854 F.3d 846 (6th Cir. 2017), and *Cowan v. Stovall*, 645 F.3d 815 (6th Cir. 2011).

The Petition amplifies Claim Thirty-One by complaining that only seven witnesses were presented in mitigation. *Id.* Trial counsel are criticized for not employing a psychologist or psychiatrist to evaluate Hasan. The Petition alleges facts about Hasan's childhood: a largely absent father who was violently abusive when at home; a mother who worked long hours at several jobs to support the four children she had had by age nineteen; an older brother who mentored him into a life of crime, including robbery and drug dealing. *Id.* at PageID 2146-47. In contrast to his upbringing, the Petition asserted that Hasan's deeply held Islamic religious beliefs "bespeak an absence of violence when dealing with confrontational situations. Petitioner has the ability to function appropriately in an institutional environment." *Id.* at PageID 2145. The original Ground Thirty-One comprises four pages, PageID 2145-48; the proposed amended Claim Thirty-One comprises ninety-three pages (ECF No. 210-2, PageID 14505, et seq.)

The Warden details the differences between the original Claim Thirty-One and the proposed amended claim (Warden's Opposition, ECF No. 211, PageID 14964-73). He notes that the original Claim Thirty-One asserted that trial counsel at the penalty phase provided ineffective assistance by not presenting evidence in support of the eventual opinion of Monica Coleman, Psy. D., "that Hasan would be compliant and non-violent during future incarceration, leading to a

plausible theory that incarceration, as opposed to the death penalty, would be an appropriate sentence." *Id.* at PageID 14967, citing Coleman Affidavit (Return of Writ[1], ECF No. 160-3). That opinion appears at ¶ 52 of Dr. Coleman's Affidavit, along with her opinion that an expert on the Islamic faith "could have assisted in humanizing Mr. Hasan and perhaps dispelling preconceived notions involving Muslim extremists." *Id.* at PageID 6725. In addition to those conclusions, Dr. Coleman recites in some detail the background of Hasan's psychosocial development, including adverse family history and incarceration. *Id.*

Comparing Dr. Coleman's opinion with the extensive social history and psychiatric/psychological evidence presented in support of the Motion to Amend, the Magistrate Judge concludes that the amended Claim Thirty-One, if allowed, would relate back to the filing date of the original Petition. The Respondent reads the original claim too narrowly. The original and amended claims are both that Hasan received ineffective assistance of trial counsel in the penalty/mitigation phase of his capital trial in that trial counsel performed deficiently in not obtaining and presenting expert opinion about the impact of his psychosocial history, and underlying lay testimony to explicate that psychosocial history.

In opposing relation back, the Warden relies on *Hill v. Mitchell,* 842 F.3d 846 (6th Cir. 2016), and *Watkins v. Deanangelo-Kipp*, 854 F.3d 846 96th Cir. 2017). In *Hill* the United States Court of Appeals for the Sixth Circuit held that a claim of suppression of very specific evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), would not relate back to a sweeping claim made three years earlier that the police had probably suppressed other exculpatory evidence. In *Watkins*, the Sixth Circuit held that a claim of ineffective assistance of trial counsel for failure to seek an evaluation based on conduct that occurred **during** trial, made in a supplemental habeas

---

[1] The Return of Writ was originally filed before this Court adopted electronic filing on September 1, 2003. For ease of reference both in this Court and on appeal, the Magistrate Judge ordered the record digitized and the digitized Return is docketed at ECF No. 160.

petition, did not relate back to a claim of ineffective assistance of trial counsel for failure to investigate or present a defense **before** trial made in the original petition.

Both *Hill* and *Mitchell* are sound applications of the rule in *Mayle, supra*. There are many possible ways for an attorney to provide ineffective assistance and there are many types of exculpatory evidence that can be withheld by the prosecution in violation of *Brady*. To allow a habeas petitioner to plead merely that he received ineffective assistance of trial counsel or that *Brady* material was suppressed and then specify the particular instances after the statute has run would defeat the purpose of the statute of limitations and of the specificity in pleading rules for habeas corpus.

This case, however, is different. The original petition claims that trial counsel provided ineffective assistance in not obtaining a psychological or psychiatric or psychosocial evaluation and presenting the results and the underlying evidence. It is not merely a claim that Hasan would perform well in prison, but rather an appeal for empathy from the jury based on Hasan's childhood. The proposed amended claim would merely add additional evidence to support the same mitigation claim. It thus comes within the holding of *Cowan v. Stovall*, 645 F.3d 815 (6th Cir. 2011), in that the proposed amended claim "merely add[s] more detail with respect to who the witnesses [could have been] and what they woul[d] have said." *Id..* at 819.

> An amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.

*Mayle*, 545 U.S. at 650. Relation back depends on a "common core of operative facts" between the new claim and the claim made in the original petition. *Cowan,* 645 F.3d at 818 (quoting *Mayle*, 545 U.S. at 664). If permitted, the amendment would relate back and not be barred by the statute of limitations because it adverts to unpresented evidence of the same type and relating

5

to the same time in the proceedings as the original Claim Thirty-One. The Warden's statute of limitations defense is not well founded.

**Procedural Default**

The Warden also asserts that the amendment would be futile because amended Claim Thirty-One would be subject to dismissal as procedurally defaulted.

The original Thirty-First Ground for Relief states: "Trial counsel were ineffective for failing to investigate and present witnesses at the mitigation phase in violation of the Sixth and Fourteenth Amendments." (Petition, ECF No. 81, PageID 2145).

The Magistrate Judge's Report and Recommendations (the "Report") (ECF No. 81) recommended dismissal of this original Ground as procedurally defaulted because it had been rejected by the Ohio state courts on the basis of an adequate and independent state procedural rule[2]. Hasan had conceded the procedural default, but argued it was excused by his actual innocence. The Report concluded Hasan had presented no convincing evidence of actual innocence of the quality required under *Schlup v. Delo*, 513 U.S. 298, 319 (1995), to excuse procedural default either as to the guilt phase or the penalty phase. The Report also noted that Hasan had waived the opportunity to present evidence of actual innocence in this Court by failing to renew his motion for evidentiary hearing within the time the Court had allowed (Report, ECF No. 81, PageID 1141-43).

---

[2] Hasan raised this claim on direct appeal, but failed to show what additional mitigation evidence could have been presented. *State v. Sanders, nka Hasan*, 92 Ohio St. 3d 245, 274 (2001). He raised it again in his initial post-conviction petition under Ohio Revised Code § 2953.21, but the trial court held the claim barred by *res judicata* and Hasan did not appeal that ruling. He raised it again in his successive post-conviction petition, but both the trial and appellate courts found he had not met the jurisdictional requirements for a successive petition under Ohio Revised Code § 2953.23. (Return, ECF No. 17, PageID 2305).

6

Hasan argues he can now show excusing cause and prejudice on two different theories, either under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), or under an assertedly different theory relying *Maples v. Thomas*, 565 U.S. 266 (2012).

**Excusing Cause under *Martinez* and *Trevino***

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87; *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000) (citation omitted). *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

Attempting to avoid the procedural default defense, Hasan relies for excusing cause on the poor performance of Chuck Stidham, his attorney in his first post-conviction proceeding

(ECF No. 210-1, PageID 14481-97). There is, of course, no constitutional entitlement to appointed counsel in post-conviction and therefore ineffective assistance of post-conviction counsel does not violate the Sixth Amendment. *Coleman*, 501 U.S. at 753.

As a legal basis for using this excuse, Hasan relies in part on *Martinez* and *Trevino*. In *Martinez* the Court held:

> [W]hen a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U. S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. Cf. *Miller-El v. Cockrell*, 537 U. S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

566 U.S. at 14. The Court did not hold that a person is constitutionally entitled to the effective assistance of counsel in post-conviction proceedings. Instead it created an equitable exception to the procedural default doctrine in *Coleman*. In *Trevino* the Court extended *Martinez* to the Texas system for raising ineffective assistance of trial counsel claims. 569 U.S. at 425.

The Sixth Circuit has declined on repeated occasions to decide whether *Martinez* and *Trevino* apply to the Ohio system of adjudicating claims of ineffective assistance of trial counsel. Although previously urged to make that decision itself, this Court has declined to apply *Martinez* and *Trevino* to the Ohio system without express guidance from the Sixth Circuit (Order, ECF No. 213). That is now the law of this case which the Magistrate Judge declines to reconsider.

8

**Excusing Cause Apart from *Martinez* and *Trevino***

Hasan argues he can establish cause and prejudice entirely apart from *Martinez* and *Trevino* by showing a complete breakdown in the attorney-client relationship between Hasan and his post-conviction counsel, Chuck Stidham. He details at length the difficulties Stidham experienced in his professional and personal life during the period when he represented Hasan in post-conviction (Motion, ECF No. 210-1, PageID 14484-92.) The Magistrate Judge is familiar with much of this history because of Stidham's involvement in other capital cases in this Court; repeating it here would serve no useful purpose.

For legal authority Hasan relies on *Maples v. Thomas* (Motion, ECF No. 210-1, PageID 14482-84, citing 565 U.S. 266 (2012)). In that case the Supreme Court found cause to excuse a procedural default which occurred when a capital inmate failed to appeal denial of his state post-conviction petition. He had been represented in that proceeding *pro bono* by two associates at Sullivan and Cromwell who filed the petition on his behalf in 2001. The post-conviction petition was not decided until 2003, by which time these attorneys had left Sullivan without withdrawing and without notifying Maples. Later efforts to reopen the appeal period were unsuccessful. The Supreme Court found cause to excuse the failure to appeal in what it characterized as the abandonment of Maples by his New York counsel. 565 U.S. at 270-71. Hasan argues by analogy that Stidham's failures in post-conviction were so severe as to constitute abandonment.

The Magistrate Judge is not persuaded the Supreme Court intended to create in *Maples* an exception to *Coleman* distinct from the exception so carefully crafted later in the same Term in *Martinez*. In *Martinez* both the majority and the dissent relied on *Maples* for the proposition that negligence by post-conviction counsel is not excusing cause, although abandonment can be. 566

9

U.S. at 10, citing *Maples*, 565 U.S. at 280; *id.* at 25 (Scalia, J., dissenting) (citing *Maples*, 565 U.S. at 280). In *Martinez* the Court required the level of negligence adequate to excuse a default to rise to the same level as the negligence which would constitute deficient performance under *Strickland v. Washington*. *Id.* at *14 (citing 466 U.S. 668 (1984)). Had the Court intended *Maples* as starting a line of precedent in which the lower courts could find counsel's conduct sufficiently like abandonment to count or insufficiently like abandonment as not to count, it seems unlikely they would have incorporated the *Strickland* test into *Martinez*.

Stidham did not abandon Hasan in the same way the Sullivan and Cromwell associates abandoned Maples. He did not withdraw from the case or move out of state with no forwarding address. Counsel conceded at oral argument that Stidham had no conflict of interest arising from his representing other clients. Rather, it was conflict with his own interest in his health on which they relied. Taken to its extreme, this line of reasoning would count as excusing cause any failure of an attorney-agent to devote as much time to his or her principal-client's matter as the client demanded. That is, there is always an inherent conflict of interest between a principal who wants as much from an agent as possible and an agent who wants to be paid for whatever work he or she has done. This possibility is especially poignant with a client who has no costs. Assuming arguendo that Stidham was negligent, that negligence is sufficient cause only if *Martinez* and *Trevino* apply, and not under an alternative disruption of agency relationship theory.

**Prejudice**

To excuse a procedural default, a habeas petitioner must show both excusing cause and prejudice, as Hasan concedes. Prejudice in this context means

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

*Strickland*, 466 U.S. at 694; *see also Darden v. Wainwright*, 477 U.S. 168, 184 (1986), *citing Strickland, supra.*; *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), *citing Strickland, supra*; *Blackburn v. Foltz*, 828 F.2d 1177, 1180 (6th Cir. 1987), *quoting Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), *quoting Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

The Magistrate Judge is unpersuaded that Hasan has shown prejudice. The Appendix to the Motion contains voluminous materials about Hasan's difficult home life, including a

physically abusive father. (Summarized in the Motion at ECF No. 210-2, PageID 14508-18. It proceeds to document the bad conditions in the correctional facilities in which Hasan was confined. *Id.* at PageID 14508-28. It then provides reports of two experts, James Aiken and Stuart Grassian, M.D., about those conditions, and two other experts, Richard Dudley, M.D., and Daniel Martell, Ph.D., about the likely effects of those conditions on Hasan. Summarized *id*. at PageID 14528-38.

Both experts examined Hasan before reaching their conclusions. Dr. Dudley concluded "that Hasan has suffered from trauma-related psychiatric difficulties since he was a young child, and that his trauma-related psychiatric difficulties were further exacerbated by the traumas he endured during his adolescent and young adult years." *Id.* at PageID 14536 (internal quotation marks and citation omitted). Dr. Martell concluded that while Hasan possesses "normal intelligence," he exhibits "diffuse neurobehavioral deficits primarily involving (1) language; (2) frontal lobe/executive functioning; (3) some aspects of memory; and (4) sensorimotor and spatial skills." *Id.* at PageID 14537 (citation omitted). Both doctors, although offering their opinions in 2018, believe they are consistent with what professional opinion would have been at the time of trial. *Id*. at PageID 14536-38.

The Magistrate Judge credits the general opinion of these experts that childhood trauma can have significant impact on adult mental health. *See, e.g.*, "The Causes and Context of Sexual Abuse of Minors by Catholic Priests and Deacons in the United States, 1950-2010" by the John Jay College of Criminal Justice[3]; RICHARD P. KLUFT, M.D., PH.D., SHELTER FROM THE STORM: PROCESSING THE TRAUMATIC MEMORIES OF DID/DDNOS PATIENTS (2013).

The question, however, is not whether the experts' theory is credible to this or any other judicial officer. Instead, the question is whether the theory would have been sufficiently credible

---

[3] Available at www.usccb.org, visited May 17, 2019.

to persuade the jurors who had just convicted Hasan of aggravated murder. The State's theory at trial, which the jury believed beyond a reasonable doubt, is that Hasan ordered the murder of Robert Vallandingham in order to enhance the credibility of the rioting prisoners in negotiations with state authorities. If capital punishment is to be reserved for the worst of the worst murders, it is hard to imagine one worse than this. It was not an act of passion, but of calculation. No suggestion has been made to this Court that Vallandingham was chosen because he was a particularly reprehensible guard. This is not murder in a domestic violence or drug dealing transaction gone bad. It seems very unlikely that a jury which had convicted Hasan of ordering this particular murder would have mitigated his punishment on the basis of childhood and adolescent trauma.

The gravamen of the claim is that somehow the childhood and adolescent trauma Hasan suffered contributed to causing this crime. In addition to overcoming reluctance to accept such excuses in the general population, trial counsel would have had to deal with the fact that Hasan himself does not believe the theory. In his evaluation with Dr. Dudley, he denied that he had suffered abuse in the Georgia prisons or even been threatened with it. (Motion, ECF No. 210-3, PageID 14675.) Hasan's admissions surely would have come out on cross-examination of an expert in Dr. Dudley's position. While Dr. Grassian opined that Hasan may have forgotten these incidents (Motion, ECF No. 210-2, PageID 14533-34), that is in the nature of explaining away Hasan's actual state of mind in the face of what the theory says his state of mind should have been, given the trauma. The Magistrate Judge is unpersuaded there is a substantial likelihood that presenting this evidence would have resulted in a non-capital verdict.[4]

---

[4] The Magistrate Judge of course understands that one steadfast juror can prevent a capital verdict. But that steadfast juror would have to come from a pool of twelve death-qualified jurors who had found Hasan guilty and maintain his or her position over the course of deliberations.

**Undue Delay in Presenting the Excusing Cause and Prejudice Argument**

A motion to amend may also be denied if it is brought after undue delay or with dilatory motive. *Foman v. Davis*, 371 U.S. 178 (1962); *Prather v. Dayton Power & Light Co.*, 918 F.2d 1255, 1259 (6th Cir. 1990); *see also Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (amendment should be denied if it "is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.").

In *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994), the court repeated and explicated the *Foman* factors, noting that "[d]elay by itself is not a sufficient reason to deny a motion to amend. Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Id.* at 130, quoting *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989). These considerations apply as well in capital habeas corpus cases. *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998), quoting *Brooks*.

"[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)). "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.* at 662–63.

Hasan's Motion to Amend seeks to add substance to Claim Thirty-One, but also seeks to add the new excusing cause and prejudice discussed above, effectively amending the Traverse by

adding a new response to the procedural default affirmative defense.

As noted above, Respondent relied on Hasan's procedural default in not appealing from denial of his post-conviction petition when he first filed the Return of Writ July 1, 2003 (ECF No. 17, PageID 2305-06). At that time (sixteen years ago), Hasan sought to excuse the default by showing actual innocence (Traverse, ECF No. 22, PageID 139-52.) He did not at that time claim Stidham's poor performance excused the default although, of course, his counsel knew the facts about that performance. Of course, the law at the time was that poor attorney performance in post-conviction, even rising to the level of *Strickland* deficient performance, would not excuse a procedural default. *Coleman, supra*. But by Hasan's argument, that law changed when *Maples* was decided (January 18, 2012) or *Martinez* was decided (March 20, 2012).

Hasan was at that time represented by Lawrence Komp and Alan Freedman. These experienced capital attorneys had represented him continuously for almost ten years, since the Petition was filed. Nor was their representation anything like Stidham's in post-conviction; they very vigorously pursued discovery in the case from the time they received authorization in November 2011 (Order, ECF No. 139) until the time they withdrew—September 6, 2017, for Mr. Komp (Notation Order granting Motion to Withdraw); and June 4, 2018, for Mr. Freedman (Decision and Order, ECF No. 197).

To excuse the delay, current counsel blame Messrs. Komp and Freedman to not hiring an investigator or expert to evaluate Hasan (Motion, ECF No. 210-1, PageID 14501). Mr. Komp admits knowledge of Stidham's conduct, but believed at the time of appointment in 2002 that they were confined to the record developed in the state court (Declaration, ECF No. 210-3, PageID 14618.[5]). He and Freedman were aware of *Martinez* and *Trevino*:

---

[5] Mr. Freedman's Declaration says he agrees with everything Mr. Komp says (Declaration, ECF No. 210-3, PageID 14609, ¶ 2).

15

> After Martinez v. Ryan 566 U.S. 1 (2012) and Trevino v. Thaler, 133 S.Ct. 1911 (2013), were decided, we realized that these cases might provide us an opportunity to supplement the record in the district court. We knew that Mr. Hasan's initial state post-conviction lawyer had done a very poor job. Nevertheless, we did not consider whether we should conduct a mitigation investigation, which would have included looking into Mr. Hasan's background and hiring mental-health experts on his behalf. We had no strategic reason for not conducting such an investigation.

*Id.* at ¶ 5 (lack of emphasis in original).

Present counsel argue these facts prevent holding any of the delay against Hasan (Motion, ECF No. 210-1, PageID 14500). They note that other courts have permitted amendments when new counsel enter a case. *Id.*

The Magistrate Judge strongly disagrees with this argument. The Lucasville riot occurred more than twenty-six years ago in April 1993. Hasan's case took ten years to reach this Court and has now been pending for more than sixteen years. He now seeks to present a renewed ineffective assistance of trial counsel claim which, if successful, would result in a new penalty phase trial, delaying finality by an untold number of additional years.

Hasan's case is not unique in its duration. This Court alone had twenty-nine capital habeas corpus cases pending more than three years as of March 31, 2019, with the vast majority pending more than ten years. Nationally, Justice Breyer has commented on the impact of delay in these cases:

> Over the past decade, the percentage of death row prisoners aged 60 or older has increased more than twofold from around 7% in 2008 to more than 16% of the death row population by the most recent estimate. Compare Dept. of Justice, Bureau of Justice Statistics, T. Snell, Capital Punishment, 2008—Statistical Tables (rev. Jan. 2010) (Table 7), with Dept. of Justice, Bureau of Justice Statistics, E. Davis & T. Snell, Capital Punishment, 2016, p. 7 (Apr. 2018) (Table 4) (Davis & Snell). Meanwhile, the average period of imprisonment between death sentence and execution has

> risen from a little over 6 years in 1988 to more than 11 years in 2008 to more than 19 years over the past year. See Dept. of Justice, Bureau of Justice Statistics, T. Snell, Capital Punishment, 2013— Statistical Tables, p. 14 (rev. Dec. 19, 2014) (Table 10); Death Penalty Information Center (DPIC), Execution List 2018, https://deathpenaltyinfo.org/ execution-list-2018; DPIC, Execution List 2017, https:// deathpenaltyinfo.org/execution-list-2017; see also F. Baumgartner et al., Deadly Justice: A Statistical Portrait of the Death Penalty 161, 168, Fig. 8.1 (2018) (analyzing recent data showing that "nationally, each passing year is associated with approximately 125 additional days of delay from crime to execution").

*Jordan v. Mississippi*, 585 U.S. ___, 138 S.Ct. 2567, 2569 (2018) (Breyer, J., dissenting from denial of cert.)

The Supreme Court has recently reminded the lower courts that "Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." *Bucklew v. Precythe,* 139 S. Ct. 1112, 1133 quoting *Hill v. McDonough*, 547 U.S., 573, 584 (2006). Justice Gorsuch went on to caution: "The proper role of courts is to ensure that method-of-execution challenges to lawfully issued sentences are resolved fairly and expeditiously. Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay." *Id*. at 1134. The same caution that applies in capital § 1983 cases must also apply to capital habeas cases. Death row inmates have the same motive to delay in either case. As Justice Breyer's statistics show, in the last ten years far more death row inmates have been successful in avoiding execution, which amounts to reducing their sentences to life without parole one motion at a time.

Each claim made by an inmate facing execution deserves a court's careful consideration. Hasan's claims have received that consideration, including a generous expansion of discovery But capital petitioners are not entitled to vigorously litigate one approach to a writ and then, when that one fails, to change counsel and start over. Hasan has unduly delayed moving to

17

amend to add the matter included in his proposed amended Claim Thirty-One.

**Conclusion**

For the foregoing reasons, the Motion to Amend is DENIED.

May 20, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge