# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

SIDDIQUE ABDULLAH HASAN,
 f/k/a Carlos Sanders,

                    Petitioner,          :    Case No. 1:03-cv-288

    - vs -

                                           District Judge Susan J. Dlott
                                         Magistrate Judge Michael R. Merz

TIMOTHY SHOOP, Warden,
  Chillicothe Correctional Institution

                    Respondent.        :

---

# ORDER ADOPTING REPORTS AND RECOMMENDATIONS

---

      This capital habeas corpus case is before the Court for decision on the merits on the Petition

for Writ of Habeas Corpus under 28 U.S.C. § 2254 of Petitioner Siddique Abdullah Hasan, f/k/a

Carlos Sanders (ECF No. 16). In the Petition, Hasan raised thirty-five claims. However, in his

Traverse, he withdrew claims Eighteen, Twenty-Two through Twenty-Five, and Thirty-Four (ECF

No. 22, PageID 107, 113, 162). The case was referred to the Magistrate Judge for a Report and

Recommendations, 28 U.S.C. § 636(b)(1)(B), which he filed on August 14, 2006 (Report, ECF

No. 81)[1]. Hasan objected (ECF No. 91) and the undersigned recommitted the matter (Recommittal

Order, ECF No. 100). The Magistrate Judge filed a Supplemental Report and Recommendations

---

[1] The Magistrate Judge extensively and accurately set forth the factual background and procedural history of the case (Report, ECF No. 81, PageID 1052, 1058-61), which the Court adopts in full.

(ECF No. 119), to which Hasan objected (Supp. Objections, ECF No. 122)[2], and the Respondent Warden filed a cursory Response (ECF No. 123). On March 28, 2019, in denying Hasan's Motion to Amend to add a Claim Thirty-Six, the undersigned concluded that: "Petitioner's Objections to the Magistrate Judge's Decision having been overruled, the case remains pending for decision on the Report and Recommendations of August 14, 2006 (ECF No. 81) and the Supplemental Report and Recommendations of December 29, 2010 (ECF No. 119)." (Decision and Order, ECF No. 213, PageID 15020-21).

On October 18, 2019, the Sixth Circuit held that the exception to the procedural default doctrine set forth in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013) ("*Martinez-Trevino*") applied to Ohio law. *White v. Warden*, 940 F.3d 270 (6th Cir. 2019). Subsequently, the Court granted Hasan leave to conduct discovery and for an evidentiary hearing on Claims Eight, Nine, and Thirty-One (Orders, ECF Nos. 238, 243), which are not addressed in this Order.

For the reasons set forth below, the Reports are ADOPTED, Hasan's Objections are OVERRULED, and the Petition is DENIED except as to Claims Eight, Nine, and Thirty-One.


## I.     LEGAL STANDARDS

### A.     28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b)

A District Judge may, as the undersigned has here, refer a dispositive matter to a Magistrate

---

[2] For reasons that are beyond the scope of the instant Order, on February 14, 2013, Hasan's Supplemental Objections were overruled without prejudice to refiling pending the completion of discovery (Order, ECF No. 144). On February 25, 2018, Hasan was granted an extension of time to file supplemental objections up to and including May 1, 2018 (Notation Order, ECF No. 192), but did not file new supplemental objections. Out of an abundance of caution and fairness to Hasan, the Court has considered the initial Supplemental Objections (ECF No. 122) in considering the Petition.

Judge "to submit to a judge of the court proposed findings of fact and recommendations for the disposition[.]" 28 U.S.C. § 636(b)(1)(B).

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

**B.     28 U.S.C. § 2254**

As Hasan is imprisoned based on a state court judgment, he may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition:

> [S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented[.]

28 U.S.C. § 2254(d). A habeas corpus petitioner must also satisfy additional procedural requirements, including but not limited to exhaustion of state court judicial remedies. 28 U.S.C. § 2254(b). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214, this Court's review of a claim adjudicated on its merits in a state court proceeding is sharply circumscribed: the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application

of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. A determination of a factual issue made by a State court is presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court may be found to have acted "contrary to" federal law in two ways: (1) if the state court's decision is "substantially different from the relevant precedent" of the United States Supreme Court; or (2) if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the United States Supreme] Court and nevertheless arrives at a result different from [United States Supreme Court] precedent[.]" *Williams v. Taylor*, 529 U.S. 362, 405 (2006). A state court does not act contrary to federal law simply because its application of federal law was incorrect. Rather, the decision must have been "mutually opposed[,]" *id.*, to "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), which encompasses only the holdings of Supreme Court decisions, and not their dicta. *Williams*, 529 U.S. at 412.

The "unreasonable application" standard is distinct from and more deferential than that of "clear error." "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court decision was erroneous. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75, 76 (2003) (internal quotation marks omitted). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have

in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (internal citation omitted). However, this deferential standard applies only when the state court has addressed the merits of a claim raised on appeal; "[w]here a state court has not adjudicated a claim on the merits, the issue is reviewed *de novo* by a federal court on collateral review." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015).

### C.      Exhaustion, Procedural Default, and *Res Judicata*

A federal habeas corpus petitioner must exhaust his claims in the state court before he may bring those claims before this Court. 28 U.S.C. § 2254(b)(2). This can be shown by demonstrating that: (1) the highest court of a state has adjudicated the merits of the claim; or (2) under state law, the claims are procedurally barred. *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996). "[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). However, if a claim is procedurally barred under state law because "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, [then] federal habeas review of the claims is barred." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Under Ohio law, failure to make timely objections at trial or to raise the issue on direct appeal from the trial court, if possible, bars a petitioner from raising that claim in a federal habeas corpus petition. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000), citing *State v. Perry*, 10 Ohio St. 2d 175, 176 (1967), paragraphs eight and nine of the syllabus; *see also*, *e.g.*, *Coleman v. Mitchell*, 244 F.3d 533, 538-39 (6th Cir. 2001) ("*Coleman I*"), *superseded by statute on other grounds as stated in Stewart v. Winn*, 967 F.3d 534, 540 (6th Cir. 2020) (holding that the "*Perry* rule" regarding *res judicata* was an adequate and independent state law ground upon which to find a claim procedurally defaulted, and thus, bar its consideration of claims by district courts); *Wong*,

142 F.3d at 322 (emphasis added) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of *res judicata*."). A claim of ineffective assistance of counsel—*e.g.* for failure to make timely objections at trial—normally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 489 (1986); *accord: Edwards v. Carpenter,* 529 U.S. 446, 452-53 (2000).

Further, in raising the claims in the state court, a petitioner must set out why he believes his federal constitutional rights have been violated to avoid procedural default. 28 U.S.C. § 2254; *Gray*, 518 U.S. at 162-63. The procedural default analysis focuses on the "last explained state court judgment." *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). Therefore, a decision by a state supreme court in which the court declines to exercise jurisdiction over an appeal from an intermediate appellate court, but that does not provide reasons for that decision, does not constitute the "state judgment" upon which this Court resolves the procedural default question. *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004), citing *Ylst, supra*. However, the threshold for what constitutes an "explained state court judgment" is modest—an order from a state supreme court stating nothing more than "that the petitioner had failed to meet the burden of establishing entitlement to relief under [Michigan Rule of Criminal Procedure] 6.508(D) – though brief – constituted the last explained state court decision in the case." *Id*. (internal quotation marks omitted), quoting *Simpson v. Jones*, 238 F.3d 399, 407-08 (6th Cir. 2000). A decision by a state court to review the merits of an otherwise-defaulted claim, as an act of grace to an appellant, does not save that claim from being procedurally defaulted in the federal District Court. *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001) ("*Coleman II*"), quoting *Amos v. Scott*, 61 F.3d 333, 342 (5th Cir. 1995). Finally, a District Court's review "is limited to the record that was before the

state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180, 181 (2011).

A State's procedural default defense must clear four hurdles. *First*, a petitioner must have actually violated the state procedural rule; a state court's mistaken interpretation of a rule in finding that the petitioner violated that rule will not suffice. *Lee v. Kemna*, 534 U.S. 362, 376-77, 387 (2002); *Trevino v. Texas*, 503 U.S. 562, 567 (1992) (*per curiam*). *Second*, the case must not fall within an exception to the state procedural rule which the petitioner is alleged to have violated; *e.g.*, if the gravamen of a petitioner's ineffective assistance of counsel claim is based on evidence outside the trial court record, then failure to raise that claim on direct appeal does not constitute a procedural default. *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007). *Third*, the state court, in its last explained decision, must expressly state that a claim has been procedurally defaulted by failing to comply with a procedural rule; otherwise, "[w]hen a federal claim has been presented to a state court[,] and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication [of such a holding] or state-law procedural principles to the contrary." *Harrington*, 562 U.S. at 99. *Finally*, the state procedural rule must be "adequate"—that is, it must have been clearly announced, "firmly established[,] and regularly followed" by the State. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991).

The Sixth Circuit adopted a four-part test in *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), in which the District Court must examine whether: (1) a petitioner failed to comply with a procedural rule; (2) the state court enforced the procedural sanction; (3) the state procedural bar is "an adequate and independent ground" upon which the state can foreclose federal review; and (4) a petitioner can demonstrate good cause for not complying with the procedural rule, and actual prejudice from enforcement of the default. *Id*. at 138. A petitioner may circumvent the procedural

default bar by showing cause for the default and actual prejudice as a result of the alleged violation of federal law, "or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 749-50; *McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991). A petitioner must show that an objective factor, external to petitioner, prevented him from complying with the procedural rule, *Murray*, 477 U.S. at 488, and that his trial was "infected with error so 'plain' that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *U.S. v. Frady*, 456 U.S. 152, 163 (1982), citing FED.R.CRIM.P. 52(b). Similarly, ineffective assistance of counsel in failing to raise a claim in postconviction can be considered good cause to set aside the procedural default and examine the claim on its merits. *Trevino v. Thaler*, 569 U.S. 413 (2013); *Martinez v. Ryan*, 566 U.S. 1 (2012).

Procedural default may also be excused if a Petitioner can show, by a preponderance of the evidence, that he is "actually innocent," such that "a court cannot have confidence in the outcome of the trial[,]" *Lott v. Coyle*, 261 F.3d 594, 602 (6th Cir. 2001), quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995), and thus, his conviction constituted a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. at 750.

## II.   **ANALYSIS**

### A.   **Ineffective Assistance of Counsel Claims for Relief**

Hasan raised several claims of ineffective assistance of trial and appellate counsel. The Court examines them in turn, noting that when the issue is ineffective assistance of counsel, the federal court is required to be doubly deferential as to any claim adjudicated by the state courts. *Harrington*, 562 U.S. at 105.

1.      **Claim One:  Failure to *Voir Dire* Potential Jurors on Issues of Race and Religion**

"Hasan contends his trial counsel were ineffective for failing to question prospective jurors about their thoughts on Hasan's race, African-American, and his religion, Muslim."  (Report, ECF No. 81, PageID 1066, citing Petition, ECF No. 16, PageID 2051-52).  The initial Report concluded that "Hasan offers no evidence that any of the jurors in his case harbored any latent, or patent for that matter, racial prejudices, and his suppositions and conclusion that his jury was 'potentially prejudiced' are not enough to overcome the dual requirements of *Strickland* and 28 U.S.C. § 2254(d)(1)."  *Id*. at PageID 1070-71, citing *Strickland v. Washington*, 466 U.S 668, 694 (1984).  Hasan raised three objections initially.  *First*, he objected to the Magistrate Judge's "reliance on the Ohio Supreme Court's *ad hoc* determination that counsel were in the best position to determine whether such voir dire was necessary[,]" given that Timothy A. Smith, one of Hasan's trial attorneys, testified that there was no tactical reason not to challenge on race (Objections, ECF No. 91, PageID 1367-68, quoting Smith Depo., ECF No. 58, PageID 810; citing Report, ECF No. 81, PageID 1068).  *Second*, the Magistrate Judge's theory that it would have been ill-advised to *voir dire* on racial bias and conclusion that there was no prejudice shown are directly contrary to *Turner v. Murray*, 476 U.S. 28 (1986).  *Id*. at PageID 1369, citing 476 U.S. at 35.  *Third*, while the Magistrate Judge stated that little evidence had been provided to think that *voir dire* of the jury was appropriate, Smith's testimony rebutted the Supreme Court of Ohio's similar finding.  *Id*. (citation omitted).

The Magistrate Judge noted that Smith's deposition, although taken pursuant to this Court's Order (ECF No. 37), was not in evidence, and that

> [T]he Supreme Court did not hold in *Turner* that it is *per se* ineffective assistance of trial counsel to fail to voir dire jurors on racial bias when 'race is a factor.' What it held was that a trial judge committed constitutional error when he refused to ask questions in

*voir dire* related to this point.

(Supp. Report, ECF No. 119, PageID 1645).  Smith objected that his filing of the Smith deposition and request that the Magistrate Judge use his discretion to expand the record to include the deposition were sufficient to place the deposition into evidence by the Court.  Additionally, "Respondent relied on Tim Smith's deposition to argue against Petitioner's habeas claims.  It simply is an unfair process that one party can rely on a piece of evidence, and another cannot." (Supp. Objections, ECF No. 122, PageID 1703-04 (citations omitted)).  He also claims that the Magistrate Judge relied on Smith's deposition when it was detrimental to Hasan's position, and discounted the deposition as not in evidence when it was favorable to Hasan's position.  *Id*. at PageID 1704-05, quoting Supp. Report, ECF No. 119, PageID 1648-49.

Hasan directs the Court to a prior version of S.D. Ohio Civ.R. 5.4(b) (Supp. Objections, ECF No. 122, PageID 1704), which stated that depositions "shall be filed electronically if a party reasonably anticipates that they will be needed as evidence relating to a forthcoming motion or other proceeding." S.D. Ohio Civ.R. 5.4(b).  Further, the Magistrate Judge ordered merits briefing on his Petition (Supp. Objections, ECF No. 122, PageID 1704, citing Order, ECF No. 59), and Hasan relied on the deposition in his merits brief (ECF No. 60, citing Smith Depo., ECF No. 58). Hasan argues the submission, order, and reliance are sufficient to admit the deposition (Supp. Objections, ECF No. 122, PageID 1704, citing S.D. Ohio Civ.R. 7.2(e)).

There are two problems with Hasan's position.  *First*, the designation of a deposition and reliance upon it, without more, is analogous to introducing and designating an exhibit at trial—by itself, that does not put the deposition or exhibit into evidence.  *Second*, the deposition does not contain the signature of the court reporter or the stamp of the notary public in front of whom she signed, and Hasan does not argue that he made other attempts to authenticate the deposition.  Thus, even if Hasan's above-described efforts were sufficient to put *a document* in evidence, it was not

sufficient to put *this deposition* into evidence. As the Magistrate Judge's determination that the deposition was not in evidence is correct, the Court will not consider it or Hasan's arguments relying on the deposition. Also, the Court will not consider the Magistrate Judge's conclusions to the extent he relied upon the Smith deposition.

The last reasoned state court decision on this claim, as with many others, is *State v. Sanders*, 92 Ohio St. 3d 245 (2001). Therein, the Supreme Court of Ohio held that "trial counsel, who saw and heard the jurors, were in the best position to determine whether such *voir dire* was needed." *Id*. at 274. Absent the Smith deposition, the Magistrate Judge's conclusion that the state court decision was neither contrary to law nor unsupported by the record was proper. Moreover, *Turner* did nothing more than "hold that a capital defendant accused of an interracial crime is *entitled* to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." 428 U.S. at 36-37 (emphasis added). The Magistrate Judge was thus correct in concluding that there was no clearly established law *mandating* that Hasan's counsel conduct *voir dire* on the issue. Hasan's objections are overruled.

>    **2.      Claim Two: Failure to Request Curative Instruction After Religiously Biased and Racially Charged Comments During *Voir Dire***

During *voir dire*, venire member Martin Robin remarked that Hasan, an African-American man dressed in traditional Islamic attire, reminded Robin of Louis Farrakhan, leader of the Nation of Islam, a group that to Robin "represented anti-Semitism, hatred of white people, and black separatism." (Traverse, ECF No. 22, PageID 40 (citations omitted)). Hasan's trial counsel moved to dismiss the entire panel; the trial judge denied that motion but dismissed Robin from the venire. Counsel undertook no further action, such as requesting a curative instruction based on Robin's comments. Hasan claims he was prejudiced because the comments were made in the presence of

11

four people who ultimately served as jurors. *Id.* at PageID 40-41. The Supreme Court of Ohio concluded that "at trial he did not ask the court to take such measures. Thus, he has waived his claim that such measures should have been taken." *Sanders*, 92 Ohio St. 3d at 249.

However, the propositions of law, as discussed by the *Sanders* Court, concerning ineffective assistance did not appear to cover counsel's failure to request a curative instruction. Nowhere in the Petition or Traverse does Hasan identify where in the record the issue was raised in postconviction, and it is axiomatic that this Court need not scour the record (especially when, as here, the state court record runs to thousands of pages) to determine whether and how the claim was raised. Rather, the claim appears to be procedurally defaulted. Moreover, the claim is meritless. As the Magistrate Judge pointed out, three of the four purportedly affected jurors had already stated that they had no issue with the Islamic faith, and the fourth stated that he had no reason to believe he could not be an impartial, fair juror. "There is no suggestion in the record that any of the four jurors were anything but honest and truthful in their answers, and no evidence whatsoever that any of them were swayed by Robin's comments into a bias against Islam or Hasan himself." (Report, ECF No. 81, PageID 1075-76). Thus, even if it was deficient performance for trial counsel not to request a curative instruction, there was no prejudice. Hasan's objections are overruled.

### 3. Claim Four: Abandonment of Grand Jury Bias Claim

Hasan claims that counsel improperly withdrew his claim, without explanation, that there were four biased members of the grand jury that indicted him (Petition, ECF No. 16, PageID 2061-62). This withdrawal, along with counsel's failure to develop additional evidence supporting the claim, caused Hasan to be deprived of "his rights to an unbiased jury and due process in violation of the Fifth, Sixth, and Fourteenth Amendments." *Id.* at PageID 2061. It is undisputed that the

evidence Hasan claims counsel should have developed was never presented to the state courts, rendering the claim procedurally defaulted (Report, ECF No. 81, PageID 1079). This Court recently held that *Martinez-Trevino* could not be used to cure the procedural default for Claim Four (Order, ECF No. 236, PageID 15247-48), and the undersigned has no reason to depart from that holding. Hasan's objections are overruled.

### 4. Claim Five: Failure to Object to Trial Court's Failure to Hold a *Remmer* Hearing

Jurors during the trial were exposed to anti-death penalty demonstrators. The trial judge brought two of the demonstrators into court and admonished them for making jurors feel intimidated. The judge subsequently questioned the jurors, who stated that they were prepared to move forward with the trial (Petition, ECF No. 16, PageID 2063-65, quoting Trial Tr., ECF No. 163-4, PageID 9530-36, ECF No. 163-5, PageID 9704). However, the judge did not hold an evidentiary hearing under *Remmer v. United States,* 347 U.S. 227 (1954), to determine whether there had been any influence on the jurors. Hasan argues that counsel violated *Strickland* in not asking for such a hearing and not objecting to the judge's failure to hold a hearing. *Id.* at PageID 2062-63, 2065-6, citing *Remmer*.

The Supreme Court of Ohio found that the trial judge did not abuse his discretion by not conducting a *Remmer* hearing or *voir dire* of individual jurors beyond the two that he questioned.

> Here, in contrast, the trial judge asked the jurors whether the incident with the demonstrators had affected them. Moreover, he acted to allay possible prejudice by warning the demonstrators not to speak to the jurors, by telling the jurors he had done so, and by informing the jurors that the demonstrators had no connection to either party in the case.

*Sanders*, 92 Ohio St. 3d at 252.

It is well-established "that at least in the Sixth Circuit, the burden of proving prejudice

from extraneous information lies at the feet of the petitioner, as Hasan acknowledges." (Report, ECF No. 81, PageID 1080-82, citing *Smith v. Phillips*, 455 U.S. 209, 215 (1982); *Remmer*, 347 U.S. at 229-30; *United States v. Pennell*, 737 F.2d 521, 532 (6th Cir. 1984); *United States v. Walls*, No. 95-2373, 162 F.3d 1162 (TABLE), 1998 WL 552907, *8 (6th Cir. Aug. 11, 1998); Traverse, ECF No. 22, PageID 49-50). The Magistrate Judge concluded that even if counsel's acquiescence to the trial judge's questioning of the jurors was ineffective assistance, Hasan had failed to show how he was prejudiced by this, and recommended that Claim Five be denied (Report, ECF No. 81, PageID 1086, citing Trial Tr., ECF No. 163-4, PageID 9533).

There is considerable uncertainty whether Hasan's claim arises under *Remmer*, *Strickland*, or both. *Sanders*, 92 Ohio St. 3d at 251-52; Report, ECF No. 81, PageID 1086; Objections, ECF No. 91, PageID 1378-79; Supp. Report. ECF No. 119, PageID 1650-51; Supp. Objections, ECF No. 122, PageID 1707-08. Yet, that uncertainty is ultimately immaterial, as his claim is not viable under either *Remmer* or *Strickland*. The Supreme Court of Ohio held that the trial judge did not violate *Remmer* by not holding a separate evidentiary hearing, *Sanders*, 92 Ohio St. 3d at 251-52; that holding is entitled to deference. Absent a *Remmer* violation, there can be no *Strickland* violation for failing to object. Thus, even if Hasan is correct that no prejudice need be shown for failure to conduct a *Remmer* hearing (Objections, ECF No. 91, PageID 1378-79, citing *Wisehart v. Davis*, 408 F.3d 321 (7th Cir. 2005)), he has still failed to meet the *Remmer* standard *or* prong one of *Strickland*. Hasan's objections are overruled.


### 5.    Claim Seven:  Failure to Request Removal of Sleeping Juror

During his trial, counsel brought to the trial judge's attention that a juror, Mary McHale, had been sleeping for over an hour during the prosecution's case-in-chief. The trial judge admonished the jury and made the courtroom cold, but counsel never moved to excuse McHale,

and the trial judge did not do so (Petition, ECF No. 16, PageID 2067-68, quoting Trial Tr., ECF No. 163-9, PageID 10734-35, ECF No. 164-2, PageID 11501; Traverse, ECF No. 22, PageID 54, citing *Irwin v. Dowd*, 366 U.S. 717, 722 (1961)). Hasan claims that trial counsel's failure to take any action with respect to McHale amounted to a constructive denial of his right to trial by jury. *Id*. at PageID 2068. The Supreme Court of Ohio rejected the claim, concluding that counsel's bringing McHale's sleeping to the trial court's attention was sufficient for *Strickland* purposes. *Sanders*, 92 Ohio St. 3d at 274-75.

The Magistrate Judge recommended that the claim be denied, concluding that the Supreme Court of Ohio's decision was not contrary to clearly established federal law (Report, ECF No. 81, PageID 1089). He concluded that *Irwin* was inapposite, as "*Irwin* relates to juror impartiality, not juror misconduct, and sleeping is a form of juror misconduct." *Id*. at PageID 1090, citing *United States v. Sherrill*, 388 F.3d 535, 537-38 (6th Cir. 2004). Further, Hasan had failed to show a reasonable probability that the trial court would have been receptive to a motion to excuse or *voir dire* McHale, and that the removal or *voir dire* would have resulted in a different outcome. *Id*. at PageID 1090-91, quoting *United States v. Tierney*, 947 F.2d 854, 868-69 (8th Cir. 1991); citing *Strickland*, 466 U.S. at 694.

Hasan raises two main objections, neither of which is persuasive. *First*, while he claims that the Magistrate Judge's reliance on the Supreme Court of Ohio's decision was misplaced, because the court rejected the claim with just one sentence of analysis (Objections, ECF No. 91, PageID 1380, citing Report, ECF No. 81, PageID 1089), one sentence of analysis is sufficient to constitute a reasoned decision on the merits. *Munson*, 384 F.3d at 314 (citation omitted). *Second*, he claims that "outcome-determinative" prejudice is not required; "Petitioner need only demonstrate that had his counsel acted, he would have received a fair trial – as opposed to one

impinged by, as the trial court found, 'too much sleeping.'" (Objections, ECF No. 91, PageID 1381). Yet, as the Magistrate Judge noted, outcome-determinative prejudice *is* the required showing (Supp. Report, ECF No. 119, PageID 1656, quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996); *United States v. Morrow,* 977 F.2d 222, 229 (6th Cir. 1992); citing *Mickens v. Taylor,* 535 U.S. 162, 166 (2002); *Lockhart v. Fretwell*, 506 U.S. 364 (1993)). Hasan's objections are overruled.

### 6.     Claim Thirteen:   Failure to Subpoena and Authenticate Evidence Material to Hasan's Defense

Hasan's counsel served a subpoena *duces tecum* upon the Federal Bureau of Investigation seeking certain investigative materials relating to the riots, including "Tunnel Tapes 60 and 61." The United States moved to quash the subpoena, Hasan's counsel allegedly failed to respond to the motion, and the trial court granted the government's motion (Petition, ECF No. 16, PageID 2093, citing Trial Tr., ECF No. 164-4, PageID 11722-27). Hasan claims that the materials would have helped his counsel prove that the State had doctored the evidence and would have been admissible to prove that. He also argues that counsel were ineffective in failing to subpoena someone to testify as to the authenticity of his copy of Tunnel Tape 61, which the trial court refused to allow to be played because the copy was not properly authenticated. *Id*. at PageID 2093-94.

The Supreme Court of Ohio rejected this claim, holding that Hasan did "not show how this lapse [in attorney judgment] was prejudicial." *Sanders*, 92 Ohio St. 3d at 274. Further, in his Traverse, Hasan seeks only discovery of Tunnel Tape 61,which this Court denied (Report, ECF No. 81, PageID 1100, citing Traverse, ECF No. 22, PageID 79-80; Order, ECF No. 75). In his Objections, Hasan argues that the only reason he could not prove prejudice was because the Magistrate Judge refused to allow him access to the only piece of evidence that could prove the

claim—Tunnel Tape 61. (Objections, ECF No. 91, PageID 1392). Objections are not the proper vehicle to relitigate discovery decisions, and they are overruled.

### 7.    Claim Fifteen:  Failure to Object to Cumulative Prejudicial Evidence

Hasan claims that "during its case in chief, the State . . . presented testimony related to numerous uncharged crimes, including crimes it did not even allege that Petitioner committed." (Petition, ECF No. 16, PageID 2096). Counsel failed to object, supposedly allowing this inflammatory evidence to shock the jury at both the guilt and penalty phases of the trial. *Id*. at PageID 2098-99. The Supreme Court of Ohio "determined without elaboration that defense counsels' failure to object to the evidence in question was a tactical decision, and that Hasan had shown neither attorney error nor prejudice in his presentation of his claim." (Report, ECF No. 81, PageID 1103-04, citing *Sanders*, 92 Ohio St. 3d at 274).

The Magistrate Judge noted that while Hasan claims that he was prejudiced by the failure to object to allegedly cumulative testimony regarding the chaos and destruction from the riot, Hasan's defense was that he had no control over the prisoners. "Evidence that violence and destruction were widespread and uncontrolled during the riot was just as likely, and maybe even more likely to add potency to Hasan's defense as it was to cause a reasonable juror to hold Hasan responsible for the acts of the other inmates." *Id*. at PageID 1104-05, citing Petition, ECF No. 16, PageID 2096-98; Traverse, ECF No. 22, PageID 82-83. Further, Hasan was acquitted of killing Corrections Officer Bruce Harris, despite the jury's being shown numerous crime scene and autopsy photographs, undercutting Hasan's argument that the cumulative evidence would shock a reasonable jury. *Id*. at PageID 1105. Finally, Hasan's argument that pictures of Vallandingham were unnecessary, as the latter's death was undisputed, was unavailing, given the State's requirement to prove every element of a crime irrespective of any concession. . *Id*. at PageID

1106, citing *Estelle v. McGuire*, 502 U.S. 62, 69 (1991); *Strickland*, 466 U.S. at 694; Petition, ECF No. 16, PageID 2098.

Hasan further objects to the Magistrate Judge supposedly giving short shrift to Tim Smith's testimony as to the lack of strategy or plan in not objecting to the cumulative evidence: "four miniscule cites in a 5,000 page transcript." (Objections, ECF No. 91, PageID 1394, citing Report, ECF No. 81, PageID 1105). Again, Smith's deposition is not in evidence, and objections based on the deposition are unavailing. Moreover, the Supreme Court of Ohio's decision, although brief, was not unreasonable or contrary to law, which was Hasan's other objection. Hasan's objections are thus overruled in full.

### 8. Claim Sixteen: Failure to Object to Introduction of Victim Impact Statement

Hasan claims that "the State elicited overwhelming victim impact evidence during its case-in-chief[,]" despite not being proper guilt phase evidence (Petition, ECF No. 16, PageID 2099-2100). Further, "[t]hat evidence was unrelated to the crimes or to the issues to be resolved at trial and was inflammatory." Thus, the admission of the evidence deprived Hasan of his right to a fair trial, and counsel's failure to object to such evidence was ineffective assistance. *Id*. at PageID 2101. The Magistrate Judge concluded that the introduction of such testimony was not prosecutorial misconduct in violation of *Payne v. Tennessee*, and thus, failure to object could not have violated *Strickland* (Report, ECF No. 81, PageID 1110, citing *Payne*, 501 U.S. 808 (1991)).

In his objections, Hasan claims that *Payne* "specifically limited itself to the admission of victim impact evidence at the phase where it was 'relevant to the jury's decision as to whether or not the death penalty should be imposed.'" (Objections, ECF No. 91, PageID 1395, quoting *Payne*, 501 U.S. at 827). *Payne* held no such thing:

> We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

501 U.S. at 827. Further, the Supreme Court expressly contemplated instances in which such testimony could be introduced in the guilt phase. *Id*. at 823. Thus, there is no federal constitutional issue as to the introduction of victim impact testimony, and absent such a constitutional issue, Hasan's objections are overruled.

### 9.      Claim Nineteen:  Failure to Assign as Error Hasan's Denial of Access to Grand Jury Transcripts

The trial judge refused to allow Hasan to inspect the grand jury transcripts of "co-defendants, co-conspirators, and complicitors." (Petition, ECF No. 16, PageID 2111). Despite the trial court's granting in part Hasan's motion for *in camera* inspection and the importance of such evidence to Hasan's defense, *id*. at PageID 2111-15, appellate counsel did not raise the trial court's refusal as an assignment of error. Hasan claims that "[t]here is a reasonable probability that if appellate counsel had raised this error that Petitioner's convictions would have been reversed." *Id*. at PageID 2115. However, in his Traverse, Hasan seeks only discovery (ECF No. 22, PageID 108), which this Court denied previously (Report, ECF No. 81, PageID 1120, quoting Order, ECF No. 37, PageID 515-16). Hasan objects that he "could not establish prejudice due to the refusal to grant discovery. This demonstrates that Petitioner previously correctly argued that the discovery requested may establish his entitlement to relief under *Bracy*." (Objections, ECF No. 91, PageID 1398, citing *Bracy v. Gramley*, 520 U.S. 899 (1997)). Yet, objections are not the proper vehicle to relitigate a discovery decision. Hasan's objections are overruled.

**10.      Claim Twenty-One:  Failure to Object to Erroneous Jury Instruction**

Hasan claims that the jury instruction on complicity "was inaccurate and incomplete[,]" and that trial counsel's failure to object meant that the jury was able to convict Hasan of aggravated murder "without a finding of a purpose to kill, an essential element of aggravated murder." (Petition, ECF No. 16, PageID 2120, citing Ohio Rev. Code § 2903.01(D)).  He "argues that the complicity instruction unconstitutionally shifted the burden of proof on the intent element of the aggravated murder offense to him because the trial court did not emphasize that intent is an essential element at the time the complicity instruction was given."  (Report, ECF No. 81, PageID 1123, citing Traverse, ECF No. 22, PageID 109-12).  The Supreme Court of Ohio held that "his claims were not supported by existing law at the time of the trial, and counsel had no duty to press 'untested or rejected legal theories.'"  *Sanders*, 92 Ohio St. 3d at 275, quoting *State v. McNeill* 83 Ohio St.3d 438, 449 (1998).

In his Report, the Magistrate Judge noted the heavy burden a habeas petitioner faces in obtaining relief based on a jury instruction:  "Errors in jury instructions do not rise to the level of a constitutional violation unless the habeas petitioner can establish that the 'instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  (Report, ECF No. 81, PageID 1123, quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Buell v. Mitchell*, 274 F.3d 337, 365 (6th Cir. 2001)).  As "the jurors were repeatedly instructed that Hasan could not be found guilty of aggravated murder unless the state proved beyond a reasonable doubt that he did so purposely[,]" *id*. at PageID 1124 (citations omitted), Hasan is unable to prove prejudice—that is, that had his attorneys objected, the objection would have been sustained and "that there is a reasonable probability that the outcome of his trial would have been different as a result[.]"  *Id*.

Hasan raises two closely-related objections.  *First*, he claims that the Magistrate Judge erred in finding that the Supreme Court of Ohio's decision was not unreasonable, as "[t]he United

States Supreme Court does not allow burden shifting." (Objections, ECF No. 91, PageID 1400, citing *Sandstrom v. Montana*, 442 U.S. 510 (1979); *Houston v. Dutton*, 50 F.3d 381, 385 (6th Cir. 1995); Report, ECF No. 81, PageID 1122, 1124-25). *Second*, contrary to the Magistrate Judge's conclusion, a reasonable juror could understand the instruction as presuming that intent already existed. *Id.*, citing Report, ECF No. 81, PageID 1124. Neither is persuasive. As discussed above, the trial judge repeatedly instructed the jury that Hasan could only be convicted if the jurors concluded that he acted purposely, and defined purposely for the jury (*See, e.g.,* Trial Tr., ECF No. 164-9, PageID 12906). No reasonable reading of the instructions suggests that the trial judge shifted the burden of proof to Hasan, and the supposedly erroneous instruction certainly does not raise a reasonable probability of a different outcome. Hasan's objections are overruled.

### 11.      Claim Twenty-Eight: Failure to Object to Jury Instruction

Hasan argues that the jury instruction improperly defined "mitigating factors," and counsel's failure to object caused jurors to be unduly restricted in their consideration of mitigation evidence, as they were not instructed that they could "consider Petitioner's history, character, and background when reaching its sentencing determination." (Petition, ECF No. 16, PageID 2137, quoting Trial Tr., ECF No. 165-2, PageID 13268). The Supreme Court of Ohio rejected this claim, concluding that "his claims were not supported by existing law at the time of the trial, and counsel had no duty to press untested or rejected legal theories." *Sanders*, 92 Ohio St. 3d at 275 (internal quotation marks and citation omitted). The Magistrate Judge recommended that the claim be denied, concluding that: (1) the state court decision was not contrary to existing Supreme Court precedent; (2) Hasan had alleged but not demonstrated prejudice from the allegedly faulty jury instruction; and (3) "even if he had demonstrated prejudice, the Ohio Supreme Court's independent weighing of the aggravating circumstances and mitigating factors, in which it fully considered and

gave some weight to Hasan's history, character, and background, likely cured the prejudice."

(Report, ECF No. 81, PageID 1136, citing *Sanders*, 92 Ohio St. 3d at 279-81).

Hasan's entire objections are as follows:

> Petitioner objects to the MJ's denial of Petitioner's claim and the conclusion that the Ohio Supreme Court's decision was not contrary to or unreasonable. Petitioner also objects to the MJ's proposition that an appellate court's reweighing can constitutional [*sic*] fix and substitute for the required constitutional analysis for an error recognized years later.

(Objections, ECF No. 91, PageID 1404). Only specific objections are preserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987). The district court need not provide *de novo* review where objections to a Magistrate Judge's report and recommendations are frivolous, conclusive, or general. Parties have a duty to pinpoint portions of the report that the Court should consider. *Mira v. Marshall,* 806 F.2d 636 (6th Cir. 1986). As the first objection states nothing about why the Magistrate Judge's decision was incorrect, and the second objection is dealt with extensively *infra* in Claims Twenty-Six and Twenty-Seven, Hasan's objections are overruled.

### 12.     Claim Twenty-Nine:   Failure to Object to Improper Penalty Phase Instructions

Hasan claims that the jury instructions were improper in that they stated that unanimity was required for any verdict the jurors returned, rather than stating that any one of them could prevent the imposition of the death penalty (Petition, ECF No. 16, PageID 2139-40 (citations omitted)). He argues that "there is a reasonable probability that if counsel had objected to the improper instructions a member of Petitioner's jury could have considered a life sentence and Petitioner would not have been sentenced to death." *Id*. at PageID 2141. The Magistrate Judge recommended that the claim be denied, noting that the Supreme Court had held that such

instructions were acceptable so long as there is no requirement of unanimity as to a particular mitigating factor (Report, ECF No. 81, PageID 1137, citing *McKoy v. North Carolina*, 494 U.S. 433 (1990); *Mills v. Maryland*, 486 U.S. 367, 373-75 (1988); *Roe v. Baker*, 316 F.3d 557 (6th Cir. 2002); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000); *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998)). "Furthermore, Hasan's counsel cannot have been ineffective by failing to object when the objection would have been overruled." *Id*. at PageID 1138.

Hasan's sole specific objection is that the Magistrate Judge failed to follow *Davis v. Mitchell* (Objections, ECF No. 91, PageID 1404-05, citing *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006); *Davis*, 318 F.3d 682 (6th Cir. 2003). In *Davis*, the Sixth Circuit held that the instructions were unconstitutional in part because "the jury was never told, either expressly or impliedly, that individual jurors may consider mitigating circumstances in the weighing process regardless of the lack of agreement with other jurors as to the presence of that factor." *Id*. at 689-90. In this case, "Hasan does not contend that the jurors in his case were instructed that existence of any mitigating factor must be unanimously found, only that they were instructed that any life sentence verdict must be unanimous." (Report, ECF No. 81, PageID 1137). Further, the jury instructions in Hasan's case were not "acquittal first"— the decisions as to whether to impose the death penalty or a life imprisonment sentence were to be considered contemporaneously, rather than a rejection of the death penalty first. Thus, assuming that Hasan is right as to *Davis* controlling in this Court, the instructions in this case would still comply with binding precedent. Hasan's objections are overruled; however, because reasonable jurists could disagree with this conclusion, Hasan is granted a certificate of appealability with respect to this issue.

### 13. Claim Thirty-Two: Failure to Object to Improper Victim Impact Opinion Testimony

During the penalty phase of the trial, Vallandingham's mother testified that the proper punishment for someone killing her son "should be punished with an automatic death penalty." (Petition, ECF No. 16, PageID 2148, citing Trial Tr., ECF No. 165-3, PageID 13295-97). Hasan claims that, had counsel objected to this testimony, he "would not have been convicted of capital murder and sentenced to death." *Id.* In his Traverse, Hasan "drop[ped] his ineffectiveness arguments under his Thirty-Second Habeas Ground. However, he continues to assert as error the trial court's improper consideration of the victim opinion evidence." (ECF No. 22, PageID 153). However, as noted by the Magistrate Judge, Hasan had never actually raised an independent improper testimony claim (Report, ECF No. 81, PageID 1144, citing Rules Governing Section 2254 Cases 2(b)). "That Hasan has withdrawn the claim asserted in his petition, and has not sought to amend his petition through proper channels leaves this Court with nothing to address with respect to Hasan's thirty-second ground for relief. The claim should be denied on that basis." *Id.*

Hasan objects that he did fairly raise the claim , noting that he stated both that the testimony violated the Eighth Amendment and that the trial court erred in considering such testimony (Objections, ECF No. 91, PageID 1406, citing Petition, ECF No. 16, PageID 2148). Moreover, Hasan claims, the Warden's response on the merits to the underlying claim shows that he was on notice that Hasan had raised such a claim. *Id.*, citing Return of Writ, ECF No. 17, PageID 2309. Yet, the Warden couched his merits analysis only in the alternative, and stated in bold type his position that "[t]his claim 'on the record' is procedurally defaulted[.]" (Return of Writ, ECF No. 17, PageID 2308-09). Raising a potential alternative ground out of an abundance of caution is not the equivalent of being on notice of the gravamen of a claim. As the claim is procedurally defaulted, Hasan's objections are overruled. However, because a reasonable jurist could disagree

with this conclusion, Hasan is granted a certificate of appealability on this issue.

### 14. Claim Thirty-Three: Prosecutorial Misconduct During Penalty Phase

Hasan argues that the State engaged in myriad instances of misconduct during the penalty phase of the trial, and that had trial counsel objected to this misconduct, "Petitioner would not have been convicted of capital murder and sentenced to death. Trial counsel's failure to do so violated his Eighth and Fourteenth Amendment rights." (Petition, ECF No. 16, PageID 2152). Like Claim Thirty-Two, it is unclear whether Hasan intends to bring a prosecutorial misconduct or ineffective assistance claim. Yet, the distinction is ultimately immaterial. If this is a prosecutorial misconduct claim, then counsel's failure to object contemporaneously has defaulted the claim. If Hasan is raising an ineffective assistance claim or using ineffective assistance as cause to set aside that procedural default, the Supreme Court of Ohio rejected the ineffective assistance claim (Report, ECF No. 81, PageID 1145-46, citing *Sanders*, 92 Ohio St. 3d at 274-75). While Hasan objects that the Magistrate Judge erred in not considering cause arguments pursuant to *Murray*, he does not explain, much less demonstrate, how the Supreme Court of Ohio's ruling was unreasonable or contrary to law. Consequently, Hasan's objections are overruled.

### B. Pretrial, Trial, and Sentencing Claims for Relief

### 1. Claim Three: Venire was Racially Skewed, Resulting in an Unfair Jury

Hasan claims that "[a]s a result of state action, the vast majority of prospective African-American jurors were located at the end of Petitioner's venire. This structuring all but precluded the possibility of securing a representative jury." (Petition, ECF No. 16, PageID 2055). However, in his Traverse, Hasan concedes that he "is not requesting a decision on the merits of his ineffective assistance of counsel claim, but rather is arguing that ruling on this claim is premature because

discovery has not been completed in habeas." (Traverse, ECF No. 22, PageID 45). Yet, as the Magistrate Judge correctly notes, "a traverse is not the proper vehicle for requesting discovery." (Report, ECF No. 81, PageID 1076, citing Rules Governing Section 2254 Cases 5 and 6). Hasan argues that there is nothing in the Habeas Rules or Supreme Court precedent that prohibits him from taking such discovery (Objections, ECF No. 91, PageID 1374). However, he cites no authority by which requesting discovery through a traverse is proper, and the mere absence of contrary Supreme Court authority or rule does not dictate such a request would be proper. Further, the request is inconsistent with the fact that, on the same day the Traverse was filed, Hasan sought discovery on Claim Three in his Motion to Conduct Discovery and Request for an Evidentiary Hearing (ECF No. 21, PageID 20), which this Court denied (Order, ECF No. 37, PageID 520; Order Affirming Mag. Judge Decision, ECF No. 46). The request is no better taken here. Hasan's objections are overruled and Claim Three is denied.

### 2.    Claim Six:  Erroneous Denial of Jury View

Hasan claims that he was deprived of a fair trial when the trial court denied counsel's motion for a jury view of the L-block, where the murder of Robert Vallandingham occurred (Petition, ECF No. 16, PageID 2067, citing Trial Tr., ECF No. 162-7, PageID 8741-43). The Supreme Court of Ohio rejected this claim, concluding both that the denial had a rational basis—"that the premises had changed so much since then that a jury view would not be helpful"—and that "[d]enial of a view did not 'significantly [undermine] fundamental elements of the defendant's defense.'" *Sanders*, 92 Ohio St. 3d at 255-56 (brackets in original), quoting *United States v. Scheffer*, 523 U.S. 303, 315 (1998); citing *State v. Zuern*, 32 Ohio St. 3d 56, 58 (1987).

The Magistrate Judge recommended that the claim be denied, noting that a nearly-identical claim had been raised in a case involving another inmate who participated in the riots (Report,

ECF No. 81, PageID 1087-89, quoting *Zuern v. Tate*, 101 F. Supp. 2d 948, 980-81 (S.D. Ohio 2000 (Rice, C.J.)), *rev'd in part on other grounds at* 336 F.3d 478 (6th Cir. 2003)). Then-Chief Judge Walter H. Rice rejected Zuern's claim, noting that "[u]nder the law of Ohio, a jury view is not evidence[,]" meaning that "by denying the Petitioner's request for a jury view, the trial court did not prevent him from presenting *evidence* to support his defense." *Zuern*, 101 F. Supp. 2d at 980 (emphasis in original). Further, the decision to deny a jury view was within the trial court's discretion; even if that discretion had been abused, that abuse could not establish a federal constitutional violation. *Id*. at 981.

Hasan objects to the Magistrate Judge's reliance on a District Court case, and claims that "[t]he jury view would have illuminated the significance and the distance between these two points. This also forms a basis of the prejudice that inures." (Objection, ECF No. 91, PageID 1379-80). Neither objection is persuasive.

District Court decisions, even published decisions of judges of the same Court, do not *bind* this Court in subsequent cases. *Threadgill v. Armstrong World Industries, Inc.,* 928 F.2d 1366, 1371 (3rd Cir. 1991). See also *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1124 (7th Cir. 1987) (district judges should not treat decisions of other district judges as controlling unless doctrines of *res judicata* or collateral estoppel apply). However, there is no bar to one District Judge's considering decisions of her colleagues for their persuasive value. The similarities of the claim and factual circumstances, along with respect for the reputation of the deciding judge , commend *Zuern* to this Court as persuasive authority.

More importantly, Hasan has pointed to no Supreme Court or Sixth Circuit case that would justify departing from *Zuern*. As to the prejudice from the lack of jury view, again, what the jurors see in a jury view is not evidence. Finally, in the Supplemental Objections, Hasan argues that the

Magistrate Judge's reliance on the Supreme Court of Ohio's upholding of the denial of a jury view was improper, as it "omits mention that in the retrial of James Were in 2003 the trial court ordered a jury view." (Supp. Objections, ECF No. 122, PageID 1708, citing *Chambers v. Mississippi*, 410 U.S. 284 (1972)). Such an order is irrelevant in light of the broad discretion afforded trial judges in whether to grant jury views; the fact that a jury view was granted elsewhere, without more, does not suggest that the trial judge's denial was an abuse of that discretion. Hasan's objections are overruled.

### 3. Claim Ten: Improper Withholding of *Brady* Material

Hasan notes that "numerous inmates gave either recorded statements, testimony in multiple trials, and recorded polygraph exams. Those same inmates were used by the state to convict Petitioner." (Petition, ECF No. 16, PageID 2090). Hasan argues that those statements and testimonies contained numerous inaccuracies and contradictions, but the State did not disclose those exculpatory materials to Hasan, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* at PageID 2090-91. The Magistrate Judge recommended dismissing for: (1) procedural default due to lack of fair presentation; (2) some material not disclosed was in the public record; (3) affidavits do not establish that evidence was withheld; and (4) actual innocence evidence presented was insufficient to overcome procedural default (Supp. Report, ECF No. 119, PageID 1663, citing *Brady*, 373 U.S. 83; Report, ECF No. 81, PageID 1096-98).

Hasan objects that "[t]he state court record indicates what he relied on in support of his allegation: 'All exhibits referenced in this petition.'" (Objections, ECF No. 91, PageID 1389, quoting State Court Record, ECF 160-2, PageID 6202). Yet, the *Brady* claim that Hasan references was only raised in his second postconviction petition (State Court Record, ECF No. 160-2, PageID 6081, 6200-02), which the state court denied for "fail[ing] to satisfy the mandatory requirements

of R.C. 2953.23(A)(1) and (2). Specifically, the Court finds defendant cannot satisfy the provisions of either (A)(1) or (A)(2)." (State Court Record, ECF No. 160-4, PageID 7042). The Supreme Court of Ohio did not exercise jurisdiction. *State v. Sanders*, 98 Ohio St. 3d 1423, 2003-Ohio-259. Thus, the Magistrate Judge's conclusion that the claim is procedurally defaulted is correct. While Hasan asked for reconsideration of Claims Four, Eight, and Nine, and to amend Claim Thirty-One, in light of *White v. Warden*, 940 F.3d 270 (6th Cir. 2019), applying *Martinez-Trevino* to Ohio law (Motion for Leave to Amend, ECF No. 210; Motion for Reconsideration, ECF No. 231), he did not do so with respect to Claim Ten. Hasan's statement that he "incorporates his objections to the Eighth Ground for Relief in their entirety" (Objections, ECF No. 91, PageID 1391) is insufficient to set aside the procedural default. Moreover, the Magistrate Judge is correct that the evidence designated by Hasan to show actual innocence—that is, "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial[,]" *Schlup*, 519 U.S.at 316—is insufficient to excuse the procedural default. Thus, without opining on the existence of a public records exception to *Brady*, Hasan's objections must be overruled.

### 4. Claims Eleven and Twelve: Improper Withholding of Materials for Cross-Examination and Refusal to Appoint Expert for Tape Analysis

Hasan argues that: the State improperly refused to disclose documents and necessary evidence for cross-examining the other inmates that were called as State's witnesses at trial; the trial judge erred in refusing to order the State to review and disclose any such material; and the trial judge erred in refusing to appoint an expert to help Hasan's counsel analyze the tunnel tapes (Petition, ECF No. 16, PageID 2091, 2092). Hasan did not argue the merits of the claims in his Traverse, instead merely asking for discovery, which this Court denied (Orders, ECF Nos. 37, 46, 53, 57, 75). Absent any other reason why the claims may be meritorious, the Magistrate Judge

recommended that they be denied (Report, ECF No. 81, PageID 1098-99). In his Objections, Hasan alleges that he never abandoned the claims, and that "the erroneous denial of discovery disposed of and lead [*sic*] to the denial of the claim[s] for failing to establish prejudice." (Objections, ECF No. 91, PageID 1391, 1392). As Objections are not the proper vehicle to relitigate a discovery decision, they are overruled.

### 5.    Claim Fourteen:  Refusal to Allow Hasan to Introduce Tunnel Tapes and Records of Islamic Service

Hasan attempted to introduce Tunnel Tapes 60 and 61 and a record of attendance at Islamic services for the purpose of impeaching four State witnesses (Petition, ECF No. 16, PageID 2094-95). As the trial court did not allow the introduction of either the tapes or the service record, the testimony and reputations of the witnesses went unimpeached, severely damaging his defense. *Id*. at PageID 2095. The Supreme Court of Ohio rejected this claim on several grounds. As to Tape 61, the Court held that the trial judge did not abuse his discretion because he allowed the tape to be played, but did not allow Hasan to *opine* as to whether the tape had been altered or faked, as he is not an expert. *Sanders*, 92 Ohio St. 3d at 258. "Furthermore, Sanders did not attempt to authenticate the tape by proffering 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Id*., quoting Ohio Evid.R. 901(A). As to Tape 60, the Court noted that:

> [A]lthough the tape itself was excluded, the defense was allowed to confront [fellow SOCF inmate David] Lomache on cross-examination with a transcript of the tunnel tape. Indeed, defense counsel got Lomache to admit that he made a "pep rally" speech at the meeting and that he had feared that these statements might cause him to be prosecuted for his involvement in the riot. Since Lomache's testimony was subjected to adversarial testing, we reject Sanders's Sixth Amendment claim.

*Id*. at 259. Finally, Hasan had hoped to use the service records to show that two inmates had lied

about being Muslim.  Yet, because Hasan "never identified the inmates in question, we are unable to determine whether it had any impeachment value as to those inmates. In any event, because the exhibit covered only a limited period (December 1992–March 1993), it did not show that any given inmate *never* attended services."  *Id*. (emphasis in original).  The Magistrate Judge, concluding that no evidentiary rules were arbitrarily violated and that Hasan's Sixth Amendment right to put on a complete defense was not violated, recommended the claim be denied (Report, ECF No 81, PageID 1102-03 (citations omitted)).

Hasan objects[3] that the Supreme Court of Ohio's ruling on Tape 61 is an unreasonable determination of the facts, as it was a State objection, rather than counsel not playing the tape (Objections, ECF No. 91, PageID 1393, citing Trial Tr., ECF No. 164-4, PageID 12409-10).  Yet, an inspection of the transcript shows that the Supreme Court described the exchanges and outcome accurately, and that  Court's decision was not contrary to law.[4]  Nor was the Court's decision unreasonable or contrary to law as to Tape 60 or the attendance record, which was Hasan's sole objection to those decisions.  *Id*. at PageID 1394.  Hasan's objections are overruled.


### 6.        Claim Twenty-Six:  Improper Exclusion of Mitigation Evidence

Hasan argues that the trial court's refusal to allow Hasan to raise the riot as a mitigating factor or defense expert Joseph Rowan to testify deprived him of a fair mitigation phase and thus, his Eighth Amendment right to an individualized sentencing (Petition, ECF No. 16, PageID 2132-34).  The First District Court of Appeals affirmed the trial court's ruling that Rowan's testimony

---

[3] Hasan also argues that he is not merely challenging state evidentiary issues, but making a constitutional claim under *Crane v. Kentucky*, 476 U.S. 683 (1986) (Objections, ECF No. 91, PageID 1392-93).  The Court assumes for purposes of this Order that Hasan was attempting to make such a claim.

[4] Hasan objects to the Magistrate Judge's reliance upon the Supreme Court of Ohio's conclusion that Hasan did not authenticate Tape 61 (Objections, ECF No. 91, PageID 1393).  The Court need not reach this issue in overruling his objections for Claim Fourteen as a whole.

was not relevant (Report, ECF No. 81, PageID 1126, citing *State v. Sanders*, 1st Dist. Hamilton No. C-960253, 1998 WL 212756, *10 (Ohio App. May 1, 1998)). The Supreme Court of Ohio found that Rowan's testimony would have been relevant, but rather than remanding for a new sentencing hearing, the Court considered the proffer made by Rowan in its independent sentencing review. *Sanders*, 92 Ohio St. 3d at 266-67. Therein, the Court "conclude[d] that the mitigation here, though significant, is outweighed beyond a reasonable doubt by the three proven aggravating circumstances." *Id*. at 280.

The Magistrate Judge notes that Hasan contests only that the Supreme Court of Ohio's consideration of Rowan's proffer as part of its independent weighing was sufficient to "cure the trial court's error in excluding the testimony[.]" (Report, ECF No. 81, PageID 1128). He further concludes that Hasan's statement of the governing law was incorrect. *Id*., citing Traverse, ECF No. 22, PageID 115. While Hasan cites *Hitchcock v. Dugger*, 481 U.S. 393 (1987), and *Williams v. Taylor*, 529 U.S. 362 (2000), both cases are inapposite. In *Hitchcock*, the trial court instructed the jury that it was precluded from considering non-statutory mitigation factors. In the absence of a showing of harmless error, remand for new sentencing was the only remedy. In *Willliams*, *trial counsel* failed to introduce all relevant mitigation evidence (Report, ECF No. 81, PageID 1128-29, citing *Williams*, 529 U.S. at 397-98; *Hitchcock*, 481 U.S. at 398-99). Moreover, *Williams* rejected the idea that remand was the only remedy in that situation. "Instead, the Court considered whether the state supreme court's independent weighing of the aggravating circumstances and mitigating factors, including the erroneously omitted mitigation evidence, had cured the error." *Id*. at PageID 1129, citing *Williams*, 529 U.S. at 398; *Clemons v. Mississippi*, 494 U.S. 738, 751-52 (1990). So long as all relevant mitigation evidence is reviewed, remand is not necessary. *Id*. at PageID 1129-30.

The Magistrate Judge further rejected Hasan's claim that deviating from Ohio's statutory scheme had deprived him of his liberty interest in a jury determination of whether mitigating factors outweighed the aggravating circumstances. He noted that the *Clemons* Court had considered and rejected a similar claim; consequently, "Hasan has not demonstrated how the Ohio Supreme Court's resolution of his claim was contrary to or an unreasonable application of the federal law discussed[.]" (Report, ECF No. 81, PageID 1131, quoting *Clemons*, 494 U.S. at 746-47).

Hasan objects that the refusal to allow Rowan's testimony was a structural error, which no independent reweighing by the Supreme Court of Ohio can cure. Thus, he asserts, *Clemons* and its progeny do not control (Objections, ECF No. 91, PageID 1401-03, citing *Deck v. Missouri*, 544 U.S. 622 (2005); *Penry v. Johnson*, 532 U.S. 782 (2001); *Clemons*, 494 U.S. 738; *Hitchcock*, 481 U.S. 393; *Skipper v. South Carolina*, 476 U.S. 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Lockett v. Ohio*, 438 U.S. 586 (1978). Hasan does not have pinpoint citations for any of these cases, and on their faces, none of them suggests that the trial court's disallowance of Rowan's testimony was structural error, nor that the Supreme Court of Ohio's consideration of the evidence was insufficient to cure the error. Hasan also objects that the Supreme Court of Ohio imposed the initial death sentence upon him, which violated the Ohio and United States constitutions. *Id*. at PageID 1402, citing Ohio Const., art. IV, §§ 2-3; *Hicks v. Oklahoma*, 447 U.S. 343 (1980). This argument cannot be squared with *Clemons*, in which the Supreme Court discussed how a state appellate court's independent weighing and affirmance of a death sentence, even when there was a sentencing error in the lower court, did *not* constitute a due process violation. The Court so held because there was not a constitutional right to a jury finding when that finding could also be made by an appellate court. 494 U.S. at 747. Hasan's objections are overruled.

### 7. Claim Twenty-Seven: Insufficient Consideration of Mitigation Evidence and Consideration of Non-Statutory Aggravating Factors

Hasan claims that the "trial court erred in failing to consider relevant mitigating evidence, and concomitantly inappropriately relied upon non-statutory aggravating circumstances in its independent weighing of the aggravating circumstances and mitigating factors." (Report, ECF No. 81, PageID 1132, citing Petition, ECF No. 16, PageID 2134; Traverse, ECF No. 22, PageID 124-26). Hasan's objections are virtually identical to those for Claim Twenty-Six: that the trial court's errors were structural and could not be remedied by the Supreme Court of Ohio's independent analysis; and that a due process violation occurred by the appellate court's imposition of a death sentence (Objections, ECF No. 91, PageID 1403, citing *Hicks*, 447 U.S. 343). The Supreme Court of Ohio rejected this claim, *Sanders*, 92 Ohio St. 3d at 279-80, and for the same reasons set forth in Claim Twenty-Six, the state court decision was not contrary to or an unreasonable application of state court law. 28 U.S.C. § 2254(d)(1). Hasan's objections are overruled.

### 8. Claim Thirty: Instructions Improperly Diminished Jury's Sentencing Responsibility

"In his thirtieth ground for relief, Hasan contends that the trial judge improperly emphasized that the jury's sentencing recommendation was just that, a recommendation." (Report, ECF No. 81, PageID 1138, citing Petition, ECF No. 16, PageID 2142-44). Counsel failed to object contemporaneously, rendering the claim procedurally defaulted . As the trial court instruction complied with the statute, the Supreme Court held that the trial court did not commit plain error. *Sanders*, 92 Ohio St. 3d at 269. Further, while Hasan argues that trial counsel's failure to object constituted cause to set aside the procedural default, the Supreme Court of Ohio also rejected this

argument, holding that counsel was under no obligation to object based on "untested legal theories." *Id*. at 275. While Hasan "objects to the MJ's failure to consider cause arguments pursuant to *Murray*[,]" (Objections, ECF No. 91, PageID 1405), he does not identify what cause arguments the Magistrate Judge should have considered; nor, more importantly, does he explain how the Supreme Court of Ohio's decisions were unreasonable or contrary to law. Hasan's objections are overruled.

### C.   Other Claims

#### 1.   Claim Seventeen:  Prosecutorial Misconduct and Failure to Object by Defense Counsel

Hasan claims that the State engaged in myriad misconduct that deprived him of his procedural and substantive due process rights, and that trial counsel's failure to object to those instances deprived him of ineffective assistance of counsel (Petition, ECF No. 16, PageID 2102-10). "Hasan seems to concede that his entire claim is procedurally defaulted, but urges this Court to address it *de novo*, contending that his trial counsels' ineffectiveness provides cause for his default." (Report, ECF No. 81, PageID 1111, citing Traverse, ECF No. 22, PageID 89-91). Yet, the Supreme Court of Ohio found that the decisions by Hasan's counsel not to object to instances of supposed misconduct were strategic and that Hasan had not shown the requisite prejudice. *Sanders*, 92 Ohio St. 3d at 274-75. "Hasan does not challenge that determination in these habeas proceedings, so this Court has no occasion to review the correctness, or incorrectness, as Hasan asserts, of the state court's decision." (Report, ECF No. 81, PageID 1111). In other words, the state court foreclosed claims of alleged misconduct by an adequate and independent state ground— enforcement of the contemporaneous objection rule, *Sanders*, 92 Ohio St. 3d at 270-72—and the state court also held that counsel was not ineffective in failing to object, *id*. at PageID 274-75, thus

depriving Hasan of the good cause necessary to set aside the procedural default. As the entire claim has been procedurally defaulted, without good cause to set aside the default, the Court must deny this claim irrespective of its merits. Hasan's objections are overruled.

### 2. Claims Eighteen, Twenty-Two through Twenty-Five, and Thirty-Four: Withdrawn

In his Traverse, Hasan withdrew these claims (ECF No. 22, PageID 107, 113, 162). Accordingly, the claims are dismissed with prejudice.

### 3. Claim Twenty: Inadequate Preparation by Trial Counsel due to State Interference with Representation

Hasan claims that as a result of an inadequate budget set by and delinquent payments by Scioto County, along with a constant reshuffling of appointed counsel, his trial attorneys could not adequately represent him at trial, and consequently, he was denied "his rights to confrontation, to present a defense, and due process, rendering counsel ineffective and Petitioner's trial unfair." (Petition, ECF No. 16, PageID 2120). The Supreme Court of Ohio held that inadequate compensation is not an independent ground upon which an ineffective assistance of counsel claim could be based. *Sanders*, 92 Ohio St. 3d at 275-76. That Court also held that Hasan's transfer from Warren Correctional Institution to Mansfield Correctional Institution was insufficient to render assistance inadequate, because the transfer did not cut off attorney-client communication, and Hasan was transferred back to Warren prior to trial. *Id*. at 276, citing *Geders v. United States*, 425 U.S. 80 (1976). As to the shuffling of attorneys, the Court noted that Hasan's co-counsel had been on the case continuously for fifteen months prior to trial, and held that the trial court's denial of a continuance was not an abuse of discretion. *Id*. Finally, the Court held that any interference by the State was not so severe as to presume prejudice "without inquiry as to actual conduct during

the trial. *Id.* at 277-78, quoting *United States v. Cronic*, 466 U.S. 648, 660 (1984).

Hasan concedes that his claim arises under *Cronic* (Objections, ECF No. 91, PageID 1400). In that case, the Supreme Court held that certain circumstances are so egregious that a petitioner is relieved of showing prejudice, for example, when there "the complete denial of counsel . . . at a critical stage of his trial." *Cronic*, 466 U.S. at 659. The Magistrate Judge concluded that "Hasan has not explained how the state court's decision was contrary to or an unreasonable application of *Strickland* or *Cronic*[,]" and recommended that the claim be denied. (Report, ECF No. 81, PageID 1122). Hasan objects that Smith's testimony provides the factual basis that the Magistrate Judge thought was lacking (*Id.*; Objections, ECF No. 91, PageID 1399); yet, Smith's deposition is not in evidence, and Hasan does not identify other such evidence. Rather, he claims that he "can point to no other legal case on point because no other defendant his [*sic*] been saddled with such a bereft process geared towards conviction and death sentences." *Id.* at PageID 1400. Such circular hyperbole is not a substitute for proving how the Supreme Court of Ohio's rejection of his *Cronic* claim was contrary to law. Hasan's objections are overruled.


### 4. Claim Thirty-Five: Cumulative Error

Hasan argues that "[t]he cumulative errors in this case indicated that there is a reasonable probability that Petitioner would not have been convicted and/or sentenced to death." (Petition, ECF No. 16, PageID 2152). This claim fails for two reasons. *First*, as the Magistrate Judge points out, cumulative error is not a cognizable claim in habeas (Report, ECF No. 81, PageID 1147 (citations omitted). *Second*, "having found no error in Hasan's first through thirty-fourth grounds for relief, there is nothing to cumulate in the thirty-fifth." *Id.* at PageID 1147-48. Hasan makes only a cursory, detail-free objection to this claim (Objections, ECF No. 91, PageID 1407), and for the reasons set forth by the Magistrate Judge, the objection is overruled.

### 5.      General Objections

Hasan raises three general objections.  "First, he objects to the statement of facts and a reliance on the state court's finding of facts as it relates to his allegations of actual innocence as cause for a procedural default. The United States Supreme Court unmistakably held this is error." (Objections, ECF No. 91, PageID 1366-67, citing *House v. Bell*, 547 U.S. 518 (2006)).  "Third, Petitioner objects to the MJ's recognition of the actual innocence standard as if it had been applicable to this habeas proceeding from its inception." *Id*. at PageID 1367.  As Hasan's claims of actual innocence pertain to Claims Eight and Nine, which are not addressed in this Order, the objections are overruled as moot.  "Second, to the extent the Magistrate Judge[] . . . relies on this summarization of trial testimony as historical fact-findings, Petitioner objects." *Id*.  A detailed reading of both the Report and Supplemental Report shows no such reliance by the Magistrate Judge; thus, Hasan's objection must be overruled.

In his Supplemental Objections, Hasan further objects to:  any conclusion made by the Magistrate Judge that Hasan abandoned any claim or discovery sought[5]; the Magistrate Judge's consideration of actual innocence; and the inadmissibility of the deposition of Timothy Smith (ECF No. 122, PageID 1697-1705).  The undersigned has addressed and rejected the substance of these objections *infra*; to the extent further necessary, these objections are overruled.

## III.    CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report (ECF No. 81) and Supplemental

---

[5] Hasan notes that the Magistrate Judge denied his Second Motion for Discovery (Order, ECF No. 75, citing Motion, ECF No. 57), and that his appeal from that denial remains pending before the Court (Supp. Obj., ECF No. 122, PageID 1699, citing Appeal, ECF No. 76).  As the Magistrate Judge's decision was neither clearly erroneous nor contrary to law, 28 U.S.C. § 636(b)(1)(A), Hasan's appeal is denied and the Magistrate Judge's order denying discovery remains in effect.

Report (ECF No. 119) are ADOPTED in full except as where expressly set forth below.  Hasan's Objections (ECF No. 91) and Supplemental Objections (ECF No. 122) are DENIED.  The Petition (ECF No. 16) is DENIED and DISMISSED WITH PREJUDICE as to all claims except Claims Eight, Nine, and Thirty-One.  Judgment shall ultimately enter in favor of the Warden and against Hasan on the remaining thirty-two claims.

No reasonable jurist would find that Hasan "has made a substantial showing of the denial of a constitutional right[,]" 28 U.S.C. § 2253(c)(2), or would disagree with the undersigned's conclusions with respect to Claims One through Seven, Ten through Twenty-Eight, Thirty, and Thirty-Three through Thirty-Five, and Petitioner is denied a certificate of appealability on those claims.  However, as reasonable jurists could disagree with the undersigned's conclusions as to Claims Twenty-Nine and Thirty-Two, Hasan is granted a certificate of appealability only as to those claims.  Because Hasan's appeal on these issues do not lack a basis in law or fact, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Coppedge v. United States*, 369 U.S. 438, 445 (1962), Hasan will ultimately be permitted to proceed *in forma pauperis*.

Claims Eight, Nine, and Thirty-One remain pending before this Court.

*IT IS SO ORDERED.*

April 28, 2021.

S/Susan J. Dlott
Susan J. Dlott
United States District Judge